IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| U.S. HOME CORPORATION, | : |
|  | : |
| v. | :   Civil Action No. DKC 2008-1863 |
|  | : |
| SETTLERS CROSSING, LLC, et al. | : |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this breach of contract case are two motions to dismiss.  Defendants have filed a motion to dismiss Counts IV, V and VI of the first amended complaint (Paper 63).  Counter-Defendants U.S. Home Corporation and Lennar Corporation have filed a motion to dismiss the counterclaim (Paper 76).  The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary.  For the reasons that follow, Defendants' motion to dismiss will be denied, and Counter-Defendants' motion to dismiss will be denied.

## I.   Background

### A.   Factual Background

This case involves a commercial real estate transaction gone awry.  Settlers Crossing, LLP ("Settlers Crossing") is a Virginia limited liability company engaged in the business of and investment in real estate.  Washington Park Estates, LLP

("WPE") is a Maryland limited liability company engaged in real estate investment and development.   U.S. Home Corporation ("U.S. Home"), a Delaware corporation with its principal place of business in Florida, is engaged in the business of building and selling residential property.   U.S. Home's stock is solely owned by Lennar Corporation, a Delaware corporation.

During the summer of 2005, Lennar Corporation contacted Settlers Crossing and WPE regarding purchasing a large property consisting of 1250 acres of farmland in three adjacent parcels ("the Property").   (Paper 66 ¶¶ 16-17).   The Property consisted of raw, unfinished and undeveloped land.   (Paper 66 ¶ 22).   In August 2005, Lennar prepared a letter of intent that anticipated purchasing the property and constructing approximately 1867 dwelling units.   (*Id.* at ¶ 17).

On November 15, 2005, Settlers Crossing and WPE (collectively, "Seller") entered into a purchase agreement ("Purchase Agreement") with U.S. Home for purchase and sale of membership interests relating to the Property. (Paper 52 ¶ 18).

Simultaneously, U.S. Home entered into a Contract for Services ("Services Contract") with the Bevard Development Company ("Bevard"), a Virginia corporation, to conduct development activities related to the Property.

The two agreements that U.S Home entered into each required a deposit: a $16 million deposit for the Purchase Agreement and a $4 million Development Fee deposit for the Services Contract. (Paper 52 ¶¶ 19-20).   Under the Purchase Agreement and the Services Contract, U.S. Home tendered a total deposit of $20 million.

The Purchase Agreement that Seller and U.S. Home signed was amended three times: December 31, 2005, May 16, 2007, and June 19, 2007.   (*See* Paper 1, Ex. 3 for Second Amendment).   Under Section 15(b) of the Purchase Agreement, U.S. Home was allowed to "terminate th[e] Agreement and receive return of its deposit" if Seller breached "any of its representations, warranties or covenants" and failed to cure any breach within "10 business days of receiving notice of the breach." (Paper 1, Ex. 1).

The Services Contract was amended on May 17, 2007.   Under that contract, Bevard, for the benefit of U.S. Home and for a fee, was obligated to obtain certain approvals and entitlements and to cover certain costs in connection with the development of the property.   (Paper 1, Ex. 6).

On June 19, 2007, WPE obtained replacement financing from iStar Financial Incorporated ("iStar").   (Paper 66 ¶ 38).   The financing was a one-year bridge loan intended to be repaid at the settlement of the Purchase Agreement.   (*Id.*).

On or about December 2, 2005, Defendant Steven Sandler, a principal at Settlers Crossing, entered into a Guaranty of Refund of Deposit, guaranteeing that the deposit paid in conjunction with the Agreement, $16 million, would be refunded to U.S. Home should an event occur which would entitle U.S. Home to a refund under the Agreement.  On December 5, 2005, Defendant Sandler entered into a second Guaranty of Refund of Deposit for the $4 million Development Fee Deposit U.S. Home paid under the Contract for Services.  This guaranty obligated Bevard to refund the Development Fee Deposit in accordance with the Services Contract.  (Paper 52 ¶¶ 30-31).

The parties set an initial closing date of December 5, 2007, provided that all conditions precedent set forth in Section 11 of the Purchase Agreement had been satisfied.  (Paper 52 ¶ 43).  Section 11 provided that U.S. Home was under no obligation to proceed with settlement unless and until all conditions precedent in Sections 11(a)-(k) were satisfied, including that "WPE and Settlers Crossing shall not be in material default under the Agreement."  (Paper 1, Ex. 1).  In addition, Section 11(a) required that the "representations and warranties set forth in this [A]greement shall be true and correct as of the Settlement. . . .  [T]he satisfaction of said condition[s] [precedent] shall depend on the actual correctness

as of the time of Settlement of the facts stated in all such representations and warranties." (Paper 1, Ex. 1).

The Agreement further provided that if any conditions precedent were unsatisfied as of December 5, 2007, the settlement date would automatically be extended to 30 days after all conditions precedent in Section 11 were satisfied, but no later than March 15, 2009. (Paper 52 ¶ 44).

On November 21, 2007, U.S. Home notified Settlers Crossing and WPE that certain conditions precedent, "including but not limited to certain off-site easements" had not been satisfied and, "[a]s a result, the Settlement Date is automatically extended as provided for in the Agreement." (Paper 1, Ex. 10, Wineman Ltr., at 1-2; Paper 52 ¶ 56). On November 27, 2007, U.S. Home, at Seller's request, identified the particular off-site easements that were allegedly unsatisfied and requested that Seller provide evidence to show that the conditions precedent had been satisfied. (*Id.*, Ex. 11, Wineman Ltr.). U.S. Home also noted that the list it provided in the November 27 letter "was not exclusive, and [did] not represent U.S. Home Corporation's final review of all conditions precedent to Settlement." (*Id.* at 3). Seller did not respond to the November 27 letter and the December 5 settlement did not occur. (Paper 52 ¶¶ 58-60).

On December 6, 2007, Settlers Crossing and WPE filed suit against U.S. Home in the United States District Court for the Eastern District of Virginia seeking a declaratory judgment to determine which conditions precedent remained unsatisfied. That suit has since been dismissed. (*See* DKC 2008-0267, Paper 98).

On January 3, 2008, U.S. Home requested permission to inspect the property pursuant to Section 13(a) of the Purchase Agreement. (Paper 1, Ex. 12, Bass Ltr.). Section 13(a) provides:

> Purchaser shall have the right from the date hereof through 11:00 p.m. Eastern Time on November 18, 2005 (the "Feasibility Study Period"), and . . . thereafter, with the prior approval of WPE, in each instance, until Settlement, to make such investigations, studies and tests with respect to the Property as Purchaser deems necessary or appropriate.

(Paper 1, Ex. 1). In the same letter, U.S. Home stated that it had concerns about the environmental condition of the Property. (Paper 1, Ex. 12, Bass Ltr.).

Seller responded on January 4, 2008, acknowledging that U.S. Home was not in breach of the Purchase Agreement, but denying U.S. Home's request to access the Property. (Paper 1, Ex. 14, Sabourin Ltr., at 1).

U.S. Home made a second request to inspect the property on March 7, 2008. (*Id.*, Ex. 13, Bass Ltr.). By letter dated March

14, 2008, Seller withheld approval for inspection. (*Id.*, Ex. 15, Sabourin Ltr.).

On April 28, 2008, after Seller obtained the four off-site easements enumerated in U.S. Home's November 27, 2007 letter, Seller set a Settlement date of May 26, 2008.[1] (Paper 52 ¶ 83). U.S. Home objected to this settlement date because it still had not been granted access to inspect the Property. (Paper 52 ¶ 84). On May 16, 2008, U.S. Home sent a Notice of Default to Seller based on Seller's refusal to permit an inspection. (Paper 1, Ex. 20, Longwood Ltr.). On May 23, 2008, U.S. Home advised Seller that certain conditions precedent remained unsatisfied and, as a result, U.S. Home was not obligated to proceed to settlement on May 27, 2008. (Paper 52 Paper 1, Ex. 18, Wineman Ltr.).

On May 30, 2008 Seller sent its own notice of default to U.S. Home for failure to go to settlement. (Paper 52 ¶ 87). On July 3, 2008, pursuant to Section 15(b) of the Purchase Agreement, U.S. Home sent a notice of termination to Seller based on breach of Section 13(a) of the Agreement which gives U.S. Home the right to investigate and inspect the Property. (Paper 1, Ex. 22, Israel Ltr.). U.S. Home also demanded the return of $20 million, the sum of the deposits. (*Id.*).

---

[1] This date was later moved to May 27, 2008 due to the Memorial Day holiday.

**B.    Procedural Background**

On July 17, 2008, U.S. Home commenced the instant action by filing a complaint against Settlers Crossing, WPE, Bevard, Sandler, and iStar.  (Paper 1).  This complaint asserted several contractually based claims, and asked the court for a declaratory judgment.  Seller and U.S. Home both filed motions for summary judgment.  (Paper 14 and 32).  The court denied both motions and granted a motion to commence discovery in an order on March 19, 2009.  (Paper 42).  After being granted leave, U.S. Home filed a first amended complaint on May 18, 2009.  (Paper 52).

The first amended complaint adds several fraud-based charges.  It alleges a total of seven counts: (I) breach of contract against Settlers Crossing and WPE; (II) breach of contract against Bevard; (III) breach of guaranty against Defendant Sandler; (IV) fraudulent inducement against Settlers Crossing and WPE; (V) fraud by concealment against Settlers Crossing and WPE; (VI) breach of environmental representations and warranties against Settlers Crossing and WPE; and (VII) judgment declaring that U.S. Home is under no obligation to settle if all conditions precedent have not been met and declaring which conditions precedent have not been met.

Settlers Crossing and WPE filed a motion to dismiss counts IV, V and VI of the first amended complaint on June 30, 2009,

8

(Paper 63) and, joined by Bevard and iStar, filed a counterclaim against U.S. Home on June 30, 2009. (Paper 66). On August 6, 2009, U.S. Home filed a motion to dismiss the counterclaim. (Paper 76). Both motions to dismiss are now fully briefed.

## II.  Standard for a Motion to Dismiss

The purpose of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Nevertheless, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)(internal citations omitted).

In its determination, the court must consider all well-pled allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in

the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). The court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Iqbal*, 129 S.Ct. at 1950, or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). *See also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'" *Iqbal*, 129 S.Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

This case involves an allegation of fraud, which requires a higher showing to survive a motion to dismiss. Rule 9(b) provides that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). "Malice, intent, knowledge, and other condition of mind of a person may be averred

10

generally." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 n.6 (4th Cir., 1999).  Not all the causes of action alleged in the complaint at issue include allegations of fraudulent behavior.  Only causes of action involving fraud must meet the higher standard imposed by Rule 9(b).  *See Balt. County v. Cigna Health*care, 238 Fed. Appx. 914, 922 (4th Cir. 2007)(unpublished)(quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104 (9th Cir. 2003)).

> A plaintiff may choose not to allege a unified course of fraudulent conduct in support of a claim, but rather to allege some fraudulent and some non-fraudulent conduct. In such cases, only the allegations of fraud are subject to Rule 9(b)'s heightened pleading requirements.

*Id.* at 1104.  Rule 9(b) "does not require that allegations supporting a claim be stated with particularity when those allegations describe non-fraudulent conduct."  *Id.* at 1104.

## III. Motion to Dismiss Counts IV, V and VI in the First Amended Complaint

Seller moves to dismiss counts IV, V and VI of the first amended complaint, arguing that the statute of limitations bars the fraud-based claims; that the claims do not meet the requirements imposed by Rule 9(b) of the Federal Rules of Civil Procedure; and that U.S. Home depends on a misreading of the Agreement to support all three claims.

## A.   Fraud-Based Claims: IV (fraudulent inducement) and V (fraudulent concealment)

In the first amended complaint, U.S. Home alleges that the Seller willfully and intentionally misrepresented the environmental condition of the property.  (Paper 52 ¶¶ 123-128).  U.S. Home maintains that the Property had been used for the disposal of sewage sludge for many years and hazardous materials remained on the Property; that the Seller knew its representations concerning the environmental conditions precedent were false (or made with reckless disregard); that the Seller made the false representations to induce U.S. Home's reliance and that U.S. Home relied upon the Seller's statements, investing substantial time and money into development of the Property.  (*Id.*).

U.S. Home also alleges, in Count VI, that Seller owed a duty to ensure the truthfulness of all warranties in the Agreement, and that the Seller intentionally and knowingly misrepresented and warranted that the Property had never been used for the disposal of hazardous materials, and did not contain hazardous materials.  U.S. Home maintains that Seller intentionally failed to disclose and intentionally suppressed the concealed material facts relating to the environmental representations and warranties to continue the false impression that the Property was free from hazardous materials, and that

U.S. Home relied on the reports by entering into and continuing to perform the Agreement.   (Paper 52 ¶¶ 140-146).

### a.   Statute of Limitations

Seller first argues that the fraud counts are barred by the Maryland statute of limitations.   The fraud claims are not protected from dismissal, Seller argues, by tolling of the limitations period under the discovery rule because an inquiry by U.S. Home would have revealed the alleged fraud.

U.S. Home maintains that it only recently became aware of the sludge disposal operate on the Property, and therefore the fraud claims were timely filed.   Specifically, it argues that it did not have express knowledge until recently, and that it could not have had "implied knowledge" based on environmental reports or the information at MDE.   U.S. Home also argues that its March 7, 2008 letter "demonstrates that U.S. Home did not have notice of the sludge disposal operation at that time and had reasonably begun to investigate the possibility that the Property had environmental problems."   (Paper 70, at 7).

A motion to dismiss pursuant to 12(b)(6) does not generally permit an analysis of potential defenses defendants may have to the asserted claims.   However, dismissal may be appropriate when a meritorious affirmative defense is clear from the face of the complaint.   *Brooks v. City of Winston-Salem, N.C.*, 85 F.3d 178, 181 (4th Cir. 1996)(citing *Richmond, Fredericksburg & Potomac*

*R.R. Co. v. Forst*, 250 (4th Cir. 1993); 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357, at 352 (1990)("A complaint showing that the statute of limitations has run on the claim is the most common situation in which the affirmative defense appears on the face of the pleading," rendering dismissal appropriate.)).

The parties agree that the applicable statute of limitations governing this dispute is the three-year statute of limitations set forth in Md. Code Ann., Cts. & Jud. Proc. § 5-101.  In Maryland, courts generally apply the discovery rule in determining when a cause of action accrues.  *Martin Marietta Corp. v. Gould, Inc*., 70 F.3d 768, 771 (4th Cir. 1995).  The discovery rule provides that a cause of action accrues when a plaintiff knew or reasonably should have known of the wrong. *Doe v. Am. Nat'l Red Cross*, 923 F.Supp. 753, 756 (D.Md. 1996). A plaintiff reasonably should have known of the wrong when he had "knowledge of sufficient facts to cause a reasonable person to investigate further." *Pennwalt Corp. v. Nasios*, 314 Md. 433, 443 (1988).  In fraud claims, the "statute of limitations begins to run when the fraud is discovered or should have been discovered by the exercise of due diligence." *Brumbaugh v. Princeton Partners*, 985 F.2d 157, 162 (4th Cir. 1993).

To start the running of the statute of limitations clock, U.S. Home must have had some notice of the fraud.  To satisfy

the discovery rule, a claimant must be found to possess "express knowledge" or "implied actual knowledge," which is "that knowledge that would in all probability have resulted from a reasonably diligent investigation pursued upon awareness of circumstances that would cause a reasonable person to investigate." *Pennwalt,* 314 Md. at 443.

It is not obvious from the face of the complaint that U.S. Home had adequate knowledge of the alleged fraud prior to May 2006.   The parties disagree over when U.S. Home could be considered to have acquired the knowledge necessary for the clock to start running.   Seller asserts that the tolling period for the statute of limitations began the day that the Purchase Agreement was signed: November, 15, 2005, and certainly no later than several months later in May 2006. (Paper 63, at 11).   U.S. Home argues that it did not have knowledge until 2008. (Paper 70, at 6).   The complaint itself alleges conduct to have continued well into 2008, just a year before the amended complaint was filed, and so it is not obvious from the face of the complaint that the statute of limitations would bar any claim.   Therefore, the statute of limitations claim is not appropriate as grounds for dismissal of the claims.

### b.   Fraud Pleading

U.S. Home alleges two counts of fraudulent behavior in its amended complaint: fraudulent inducement (count IV) and

fraudulent concealment (count V).  Seller has moved to dismiss both claims because U.S. Home does not meet the pleading requirements of Fed.R.Civ.P. 9(b).  (Paper 63, at 15).

The tort of fraudulent inducement "means that one has been led by another's guile, surreptitiousness or other form of deceit to enter into an agreement to his detriment." *Capital Source Finance LLC v. Delco Oil Inc.*, 608 F.Supp.2d 655, 666 (D.Md. 2009)(citing *Rozen v. Greenberg,* 165 Md.App. 665, 674 (2005))(internal citations omitted); Paul Mark Sandler & James K. Archibald, Pleading Causes of Action in Maryland §§ 3.25-3.26 (2004)).  In order to recover for either fraud or fraudulent inducement,

> a plaintiff must prove (1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

*Nails v. S & R, Inc.,* 334 Md. 398, 415 (1994)(citing cases); *Rozen,* 165 Md.App. at 674-75 (citing *Hoffman v. Stamper,* 385 Md. 1, 28 (2005)).

The essential elements for a claim of fraudulent concealment include: (1) the defendant owed a duty to the

plaintiff to disclose a material fact; (2) the defendant failed to disclose that fact; (3) the defendant intended to defraud or deceive the plaintiff; (4) the plaintiff took action in justifiable reliance on the concealment; and (5) the plaintiff suffered damages as a result of the defendant's concealment. *Lloyd v. General Motors Corp.*, 397 Md. 108, 138 (2007)(citing *Green v. H & R Block,* 355 Md. 488, 525 (1999)).

U.S. Home bases both of its claims of fraudulent behavior on representations made in §12.2(d) of the Purchase Agreement. Section 12 of the Agreement covers the condition of the Property and various covenants.  Section 12.2(d) reads:

> Prior to the date hereof, WPE has delivered to Purchaser a copy of its existing environmental report(s).  To the best of WPE's and Settlers Crossing's knowledge, except as disclosed in the environmental report(s) delivered to Purchaser, (i) there are not "Hazardous Materials" (defined below) located on or within the Property; (ii) no portion of the Property has been used for the storage, use, generation, treatment or disposal of Hazardous Materials; and (iii) there are no underground fuel tanks located upon the Property.  The term "Hazardous Materials" means (A) hazardous wastes, hazardous substances, and toxic materials prohibited or regulated by federal, state or local law, regulation or order, (B) asbestos, (C) oil petroleum products and their byproducts, and (D) polychlorinated biphynls ("PCBs").

(Paper 1, Ex. 1 at 16).

In its cause of action for fraudulent inducement, U.S. Home alleges that "in the context of negotiating the Purchase Agreement in Maryland and/or Virginia" and "pursuant to Section 12.2(d) of the Agreement, Seller represented and warranted that the Property had never been used for the disposal of Hazardous Materials as defined in the Purchase Agreement and that there were no such Hazardous Materials on the Property." (Paper 52 ¶ 124). U.S. Home alleges that it relied on the representations that there were no hazardous materials on the Property by executing the Purchase Agreement. (*Id.*). In its count for fraudulent concealment, U.S. Home argues that Seller "intentionally and knowingly misrepresented and warranted that the Property had never been used for the disposal of Hazardous Materials and further that the Property did not contain Hazardous Materials. . . ." (Paper 52 ¶ 131).

Seller argues that both claims must be dismissed because U.S. Home has failed to allege that Seller made a "false representation" in the Purchase Agreement, and both causes of action depend upon the existence of a "false representation." Seller argues that no false representation could have occurred in § 12.2(d) because § 12.2(d) is qualified in what it promises. That section represents only that there are no hazardous materials "to the best of Seller's knowledge." Seller argues that for U.S. Home to rely on this representation would have

been unreasonable because it would not have taken into account the limiting qualifications in § 12.2(d) about Seller's knowledge and the enclosed documents given to U.S. Home.

Each party is accusing the other of purposely misreading its intent. Seller argues that U.S. Home is misreading § 12.2(d) to mean that the guarantee contained therein was an absolute guarantee that no hazardous materials were on the property. Similarly, U.S. Home accuses Seller of misreading its argument. It has alleged that Seller had knowledge of the sludge disposal and that when it failed to notify U.S. Home of the disposal, it breached § 12.2(d).

U.S. Home has clearly alleged not only the misrepresentation upon which it bases its claims, but also its reliance and the "time, place and contents" of the false representations, and therefore has met its requirement for pleading under Rule 9(b). In a fraud case, a plaintiff must prove *either* that the defendant had a duty to disclose a material fact to them and failed to do so, *or* that the defendant concealed a material fact for the purpose of defrauding the plaintiff. *See Shaw v. Brown & Williamson Tobacco Corp.*, 973 F.Supp. 539, 551 (D.Md. 1997). In this case, U.S Home is arguing the latter: that Seller omitted important facts about the sludge disposal in its representations to U.S. Home and that it did so with the intent to defraud U.S. Home.

19

Furthermore, Seller is aware of the factual basis of U.S. Home's claims.   The United States Court of Appeals for the Fourth Circuit ("fourth circuit") has held that a court should hesitate to dismiss a complaint under Rule 9(b) "if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).   In the instant action, the parties have been engaged in discovery for months and Seller is aware of and knowledgeable about the allegations and circumstances that it will have to rebut at trial.   Therefore, the motion to dismiss these claims will be denied.

### 2.   Count VI (breach of environmental representations and warranties)

Plaintiff alleges in its amended complaint that Seller has breached the environmental representations and warranties in Section 12.2(d) of the Agreement.   Seller reiterates its arguments concerning the misreading of § 12.2(d) in moving the court to dismiss this cause of action, and U.S. Home again asserts that it is not misreading § 12.2(d).   Though the representation in § 12.2(d) is qualified as being "to the best of [Seller's] knowledge" and "except as disclosed in the

environmental report(s) delivered to [U.S. Home]," it is possible for U.S. Home to prove at some point that the best of Seller's knowledge included information about the sludge disposal operation. Therefore, this cause of action will not be dismissed.

## IV. Motion to Dismiss the Counterclaim

Settlers Crossing and WPE, joined by Bevard and iStar (collectively, "Counter-Plaintiffs"), brought a counterclaim against U.S. Home Corporation and Lennar Corporation (collectively, "U.S. Home") on June 30, 2009. (Paper 66).

In their counterclaim, Counter-Plaintiffs bring three causes of action against U.S. Home: I) Seeking a declaratory judgment that conditions precedent to settlement of the Purchase Agreement were satisfied as of November 25, 2007, April 28, 2007 or March 15, 2009, and that U.S. Home violated its duties of good faith and fair dealing and defaulted on the Agreement and Services Contract; II) Specific Performance against U.S. Home and, III) Specific Performance against Lennar. (Paper 66).

In its motion to dismiss the counterclaim, U.S. Home argues that declaratory judgment and specific performance are not appropriate, and that none of the counter-plaintiffs except iStar is the real party in interest. (Paper 76). For the reasons listed below, the motion to dismiss will be denied.

### A.   Declaratory Judgment

U.S. Home moves to dismiss Counter-Plaintiffs' first cause of action on the grounds that declaratory judgment may not be used as a substitute for a ripe breach of contract claim. (Paper 76, at 6).   U.S. Home argues that because Counter-Plaintiffs' "right to damages" has matured, they are free to pursue a breach of contract claim and the court should dismiss the declaratory judgment action.   U.S. Home argues that Counter-Plaintiffs' rights have "wholly matured" and that defined, ripe, breach of contract claims exist and should be asserted instead of an action for declaratory judgment.   (Paper 76, at 6).

U.S. Home relies on *Newton v. State Farm Fire & Cas. Co.*, a case in which the court dismissed a declaratory judgment claim due to the existence of a parallel claim for breach of contract. (*Id.*, citing *Newton v. State Farm Fire & Cas. Co.*, 138 F.R.D. 76, 79 (E.D.Va. 1991)).   In *Newton*, the plaintiffs filed both a breach of contract claim and sought declaratory judgment against their insurance company for its refusal to indemnify.   The court found that the

> request for declaratory judgment serves no useful purpose and will not clarify the legal rights or obligations.   While the existence of another adequate remedy does not operate as a bar to declaratory relief, plaintiffs' suit presents the type of factual questions more appropriately considered in the companion breach of contract portion of their complaint. . .

> declaratory relief will not terminate the
> dispute as to whether plaintiffs' claim
> requires payment.

*Newton*, 138 F.R.D. at 79-80.  U.S. Home argues that the issue that needs to be resolved is more clearly suited for a breach of contract claim, not a declaratory judgment action.

Counter-Plaintiffs maintain that because a legal controversy exists, the court should exercise its broad discretion and permit the claim for declaratory relief to remain.  (Paper 77, at 6).  Counter-Plaintiffs point out that in its first amended complaint U.S. Home is seeking a declaration that it did not commit a default for failing to settle, and Counter-Plaintiffs are simply seeking the reverse: a declaration that U.S. Home was obligated to settle (on one of three dates). (*Id.*).  Counter-Plaintiffs maintain that the Purchase Agreement needs to be interpreted to define the respective rights and obligations of the parties and that a declaratory judgment action allows the court to do this.  (*Id.*, at 9).  They add that there is no threat of piecemeal litigation because this action will simply round out the litigation so that the court must determine rights and obligations for all parties.  (*Id.*, at 10).

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such a declaration,

23

whether or not further relief is or could be sought." 28 U.S.C. § 2201. The fourth circuit has held:

> it is elementary that a federal court may properly exercise jurisdiction in a declaratory judgment proceeding when three essentials are met: (1) the complaint alleges an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment; (2) the court possesses an independent basis for the jurisdiction over the parties (*e.g.*, federal question or diversity jurisdiction); and (3) the court does not abuse its discretion in its exercise of jurisdiction.

*Volvo Equip. N. Am. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 592 (4th Cir. 2004)(citing 28 U.S.C. § 2201; *Cont'l Cas. Co. v. Fuscardo*, 35 F.3d 963, 965 (4th Cir. 1994)).

There is no dispute that the first and second requirements of a declaratory judgment action are present in the instant action. The court must determine whether to use its discretion to decline to hear the declaratory action. "A federal court has the discretion to decline to entertain a declaratory judgment action, but . . . the court must do so only for 'good reason.'" *Cont'l Cas. Co.*, 35 F.3d at 965 (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 324 (4th Cir. 1937)). "In deciding whether to entertain a declaratory judgment action, a federal court should analyze whether its resolution of the declaratory action will settle all aspects of the legal controversy. . . . [I]t makes no sense as a matter of judicial

economy for a federal court to entertain a declaratory action when the result would be to 'try a controversy by piecemeal, or to try particular issues without settling the entire controversy.'" *Mitcheson v. Harris*, 955 F.2d 235, 239 (4th Cir. 1992)(quoting *Quarles*, 92 F.2d at 325)). Declaratory relief is appropriate when the court finds that (i) it will serve a useful purpose in clarifying and settling the legal relations in issue, and (ii) it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Fuscardo*, 35 F.3d at 965.

In this case, the declaratory judgment action in the counterclaim may help to clarify the legal issues and to resolve the controversy over whether U.S. Home was obligated to settle at some point. The reciprocal declaratory judgment claims will ultimately enable the court to determine whether all conditions precedent to settlement to the Purchase Agreement were met on one of three dates, obligating U.S. Home to settle. (Paper 66, at 28). It is also part and parcel of the specific performance claims asserted in the counterclaim. Here, the declaratory judgment action will serve the purpose of enabling the full rights and obligations of the parties to be conclusively articulated so that full relief can be afforded to the injured party. Accordingly, U.S. Home's motion to dismiss this claim will be denied.

**B.   Specific Performance**

U.S. Home also moves to dismiss Counter-Plaintiffs' two claims requesting specific performance. (Paper 76). Counter-Plaintiffs ask the court to enter an order requiring both Lennar and U.S. Home specifically to perform their obligations to pay the purchase price due under the Purchase Agreement at settlement and to pay the development fee due under the Services Contract to Bevard. (Paper 66, at 29-30). Counter-Plaintiffs allege through their declaratory judgment cause of action that U.S. Home was obligated to settle on December 5, 2007 or May 27, 2008 or April 14, 2009. If U.S. Home was required to settle on one of those dates, then it was in default when it failed to do so and specific performance may be warranted. (Paper 66, at 28-29).

U.S. Home argues that the claims must be dismissed because Counter-Plaintiffs fail to allege facts sufficient to entitle them to relief. (Paper 76, at 9). Specifically, U.S. Home argues that § 15(a) of the Purchase Agreement creates specific steps that Counter-Plaintiffs must take before invoking the contractual remedy for specific performance, and those steps have not been taken. Section 15(a) reads:

> (a)    If Purchaser shall either (i) wrongfully fail to make Settlement hereunder for any reason other than a default by [Seller] under the terms of this Agreement and such failure is not cured within five

(5) business days after written notice from
Settlers Crossing, or (ii) breach any of its
representations, warranties or covenants set
forth . . . , or (iii) otherwise defaults
under this Agreement and such default
continues for a period of ten (10) business
days . . . , then **Settlers Crossing shall
have the right, as its sole and exclusive
remedy, to elect one of the following
remedies: (1) . . . terminate the Agreement
and have the Deposit . . . delivered to
Settlers Crossing . . . , or (2) Settlers
Crossing shall be entitled to specific
performance and injunctive relief against
Purchaser** before a court of competent
jurisdiction to order Purchaser to perform
the obligation which Purchaser is required
to perform hereunder, including without
limitation, in the case of item (i) above,
to compete the Settlement in accordance with
the Agreement and pay the Purchase Price to
Settlers Crossing. . . . This specific
performance may be coupled with an action to
enforce Lennar's Guaranty Obligations. . .

(Paper 1, Ex. 3 at 21-22)(emphasis added). The section goes on
to provide that if the Purchaser defaults beyond the notice and
cure period, Settlers Crossing must elect either (1) or (2)
above and deliver written notice to the Purchaser within 90 days
which election it will make. (*Id.*). If Settlers Crossing fails
to deliver written notice, and Purchaser provides notice that it
has not made an election and Settlers Crossing still does not
make an election within ten days, "Settlers Crossing shall be
deemed to have elected (1)." (*Id.*).

According to § 15(a), in order to elect specific
performance, Counter-Plaintiffs must have (1) issued notice of

default to U.S. Home for failing to settle, (2) provided U.S. Home the required opportunity and time to cure, and (3) timely and properly elect the remedy of specific performance, and provide notice of the election to U.S. Home. (Paper 76, at 10).

U.S. Home maintains that Counter-Plaintiffs do not include any factual allegations in the counterclaim that state the Counter-Plaintiffs took any of the above steps and therefore a claim for specific performance under the Purchase Agreement has not been alleged.

Counter-Plaintiffs use both § 15(a) and the Declaratory Judgment Act to support their claims for specific performance. First, they argue that if the court takes the counterclaim allegations as true, they have adequately alleged all necessary steps for complying with the requirements of § 15(a). Counter-Plaintiffs maintain that the court must rely and accept as true the statement in the counterclaim that "all notices, elections of remedy and other performance required under those agreements have been timely satisfied." (Paper 77, at 13 quoting Paper 66 ¶¶ 69, 75-77). They also point to the letter sent to U.S. Home on May 30, 2008 which notifies U.S. Home that it has wrongfully failed to make settlement and that it is in default. (*See* Paper 1, Ex. 19).

Second, Counter-Plaintiffs base their claim for specific performance on the Declaratory Judgment Act, 28 U.S.C. § 2202,

as well as on §15(a) of the Purchase Agreement.  Even if they have not alleged facts sufficient to satisfy § 15(a), Counter-Plaintiffs argue that if the court finds that U.S. Home was obligated to settle the Purchase Agreement on December 5, 2007, then the court may properly award Counter-Plaintiffs declaratory relief pursuant to its power under the Declaratory Judgment Act.

Specific performance of a contract is a matter of sound judicial discretion controlled by established principles of equity.  To qualify for specific performance, a plaintiff must prove the existence of an agreement between the parties and a breach of that agreement by the defendant. *See Data Consultants, Inc. v. Traywick,* 593 F.Supp. 447, 453 (D.Md. 1983) (citations omitted) (citing *Offutt v. Offutt,* 106 Md. 236, 67 A. 138 (1907)), *aff'd,* 742 F.2d 1448 (1984)(Unpublished Disposition); *see also Namleb Corp. v. Garrett,* 149 Md.App. 163, 174 (2002)("Specific performance may be granted in an appropriate case on the basis of the strength of the circumstances and equities of each party." (citing *Zouck v. Zouck,* 204 Md. 285, 296 (1954))), *cert. denied,* 374 Md. 83 (2003).

In this case, dismissing the counts for specific performance would be premature.  Seller has adequately alleged that it met the requirements in the Purchase Agreement for seeking specific performance for the purposes of surviving a

motion to dismiss, when the court must consider all factual allegations in the light most favorable to the plaintiff. Furthermore, specific performance, when applied, is generally applied in real estate cases where a breach of contract has occurred. *See James v. Pratt & Whitney, United Techs. Corp.*, 126 Fed. Appx. 607, 611 (4th Cir. 2005)(finding that special damages appear to arise in two types of cases other than civil conspiracy: disputes involving real property and causes of action for libel and slander)(Unpublished Disposition); *Baron Fin. Corp. v. Natanzon*, 509 F. Supp. 2d 501, 511 (D.Md. 2007)(Noting that "a reward of specific performance is generally considered an extraordinary remedy, especially outside of the context of contracts for sale of land.").

Moreover, the specific performance claims and the declaratory judgment claim are closely tied together and it would be efficient to permit these claims to go forward so that all pending issues in this case may be resolved simultaneously.

### C.   Real Party in Interest

Lastly, U.S. Home moves to dismiss Settlers Crossing, WPE and Bevard from the counterclaim, contending that they lack any standing to assert any contractual claims arising from the Agreements.   U.S. Home argues that Settlers and WPE assigned their right, title and interest under the Purchase Agreement to

iStar, and Bevard assigned its right, title and interest under the Services Contract to iStar. (Paper 76, at 13).

The assignment contracts ("Assignments") between iStar and the other Counter-Plaintiffs were created because a bridge loan was needed after the delay in settlement between U.S. Home and Seller. (Paper 66 ¶ 37). WPE obtained the new funding from iStar on June 19, 2007, and it was intended to be repaid at settlement. Because of the loan, Settlers Crossing and WPE entered into one "collateral assignment" with iStar, and Bevard entered into another "collateral assignment." (Paper 66 ¶¶ 38-39). Pursuant to the terms of the Assignments, WPE and Settlers Crossing assigned and transferred to iStar all of their rights, title and interest under the Purchase Agreement, and Bevard did the same regarding the Services Contract. (*Id.* ¶ 39). The Assignments provide that upon the occurrence and during the continuation of an "Event of Default" under iStar's loan agreements, "iStar would be entitled, at its option, to exercise all rights in, to and under the Agreement and Services Contract, whether or not iStar took possession of the mortgaged property." (*Id.; See also* Paper 52, Ex. 26 § 5).

U.S. Home argues that because Counter-Plaintiffs allege that an "Event of Default" occurred after July 18, 2008 and continues, "Settlers, WPE and Bevard have no current, legal interest, right or claim that they can assert under the

Agreements.   Therefore, they have no standing to assert any of the counts in the Joint Counterclaim."[2]   (Paper 76, at 14).   U.S. Home cites to cases in which a court has dismissed a case because the party who brought the charge was not the "real party in interest."   *See In re Maco Homes*, 180 F.3d 163 (4th Cir. 1999)(Holding that the case must be dismissed because the appellee had assigned all of its rights away, and the real party in interest did not join in the appeal of the claim.).

Counter-Plaintiffs argue that although iStar does have an interest in the case, Federal Rule of Civil Procedure 17 does not require that one party with an interest pursue an action to the exclusion of others who also have an interest.   They agree with U.S. Home that iStar has broad rights because of the "Event of Default" and that it has the right to exercise all rights and remedies under the loan agreement, including the rights of Settlers Crossing and WPE and of Bevard.   (Paper 77, at 18). Because it has broad rights, Counter-Plaintiffs argue, nothing in the Assignments restricts iStar's ability to jointly seek a remedy from the court.   They argue that § 19 of the Assignments does not mean that iStar can proceed with the counterclaim only

---

[2] Though initially U.S. Home uses the phrases "real party in interest" and "standing" interchangeably, these two concepts are different and present different requirements.   Ultimately, it appears that U.S. Home is arguing that iStar is the only real party in interest.

in its name <u>or</u> only in the name of the Assignors.  Moreover, Counter-Plaintiffs argue that § 19(b) restricts U.S. Home from attempting to enforce the Assignments, and that only iStar may interpret and enforce its rights under the Assignments.  (Paper 77, at 19).

Fed.R.Civ.P. 17(a), which outlines the requirements for parties to a suit, provides

> (a) Real Party in Interest.
>     (1) *Designation in General.* An action must be prosecuted in the name of the real party in interest. The following may sue in their own names without joining the person for whose benefit the action is brought:
>         (A)an executor;
>         (B)an administrator;
>         (C)a guardian;
>         (D)a bailee;
>         (E)a trustee of an express trust;
>         (F)a party with whom or in whose name a contract has been made for another's benefit; and
>         (G)a party authorized by statute. .

Fed.R.Civ.P. 17(a).  The fourth circuit has held that "[t]he meaning and object of the real party in interest principle embodied in Rule 17 is that the action must be brought by a person who possesses the right to enforce the claim and who has a significant interest in the litigation." *Virginia Electric & Power Co. v. Westinghouse Electric Corp.*, 485 F.2d 78, 83 (4th Cir. 1973).  The real party in interest may not necessarily be the person "who will ultimately benefit from the recovery."

*Farrell Construction Co. v. Jefferson Parish, La.*, 896 F.2d 136, 140 (5th Cir. 1990).

The fourth circuit has interpreted Rule 17(a) as a way to protect defendants – in this case U.S. Home and Lennar – from having to defend themselves against a subsequent action brought by the party actually entitled to relief. *Virginia Electric*, 485 F.2d at 84. In this case, all potential parties have jointly filed a counterclaim against U.S. Home and so no danger exists of a "multiplicity of lawsuits."

In a case involving an assignment, courts may consider two issues: (1) what has been assigned to whom and (2) whether the assignment is valid. *See* 6A Charles Alan Wright et al., *Federal Practice and Procedure* § 1545 (2nd ed. 1990). At this point in the case, making a final determination regarding either inquiry is premature. Both parties agree that an "Event of Default" has occurred and that iStar now has the right to exercise all rights and remedies under the loan agreements, however, the rights of the parties under the Purchase Agreement and Services Contract have yet to be determined. The court has also not determined that all rights under all agreements have been <u>exclusively</u> assigned to iStar by the other Counter-Plaintiffs, or that iStar must proceed individually or in the name of the other Counter-Plaintiffs (the assignors).

Finally, multiple real parties in interest in a given claim may prosecute an action.  Rule 17(a)(3) states that

> The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action.  After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

Fed.R.Civ.P. 17(a)(3).  In this case, iStar has "ratified" the inclusion of its fellow Counter-Plaintiffs in this counterclaim by working with Settlers Crossing, WPE and Bevard to prosecute the case.  Moreover, allowing all Counter-Plaintiffs to proceed at this time may prevent later actions from being filed by each individual party and is therefore the most efficient way to proceed with the action.

**V.   Conclusion**

For the foregoing reasons, Seller's motion to dismiss counts IV, V and VI of the first amended complaint will be denied, and U.S. Home's motion to dismiss the counterclaim will be denied.  A separate Order will follow.


                                    /s/
                           _____
                           DEBORAH K. CHASANOW
                           United States District Judge