IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| U.S. HOME CORPORATION | : | |
| | : | |
| v. | : | Civil Action No. DKC 08-1863 |
| | : | |
| SETTLERS CROSSING, LLC, et al. | : | |
| | : | |

**MEMORANDUM OPINION**

Presently pending and ready for review in this suit for breach of contract, fraud, and declaratory judgment are the objection of Defendant-Counter Claimant iStar Financial, Inc. ("iStar") (ECF No. 329), to Magistrate Judge Connelly's January 18, 2012, Order on Motion for Reconsideration (ECF No. 317), and two related motions (ECF Nos. 326, 351). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, iStar's objection will be sustained, the motion for leave to file surreply filed by Plaintiff-Counter Defendant U.S. Home Corporation and Counter Defendant Lennar Corporation (collectively, "Plaintiffs") will be granted,[1] and Plaintiffs' motion to refrain from viewing the privileged documents at issue will be denied as moot.

---

[1] U.S. Home Corporation is a wholly-owned subsidiary of Lennar Corporation.

I.   **Background**[2]

     This case was referred to Magistrate Judge Connelly for
resolution of all discovery disputes and for determination of
non-dispositive matters.   iStar objects to one of Judge
Connelly's rulings that itself reconsidered a previous ruling
regarding the potential waiver of the attorney-client privilege
and the work product protection.   Because of this complicated
procedural backdrop, a brief description of the events leading
up to this point is necessary.

     On October 26, 2010, iStar notified current counsel for
Plaintiffs, the law firm of Womble Carlyle Sandridge & Rice,
PLLC ("Womble Carlyle"), that it intended to serve a subpoena on
Plaintiffs' former counsel, the law firm of Greenberg Traurig,
LLP ("Greenberg Traurig"), regarding non-privileged materials.
(ECF No. 329-16).   According to the Declaration of Louis J.
Rouleau,[3] a member of Womble Carlyle, shortly after being
notified about the subpoena, Mr. Rouleau "reached out to
Greenberg Traurig to determine how that firm planned on
responding to the subpoena," but that "initial contact with

_____

     [2] A complete recitation of the underlying facts in this case
is available at *U.S. Home Corp. v. Settlers Crossing, LLC*, No.
DKC 2008-1863, 2010 WL 958034 (D.Md. Mar. 11, 2010).

     [3] iStar objects to Judge Connelly's consideration of this
document.   As will be explained, it was not contrary to law for
him to consider the document, and iStar's objection on this
ground will be overruled.

Greenberg Traurig did not result in a substantive conversation" because the subpoena had not yet been served. (ECF No. 343-2, Rouleau Decl., ¶ 3). On December 15, 2010, Greenberg Traurig notified Womble Carlyle that it had been served with the subpoena. (*Id.* ¶ 4).[4] Later that day, Mr. Rouleau telephoned Timothy Bass of Greenberg Traurig to discuss it. (*Id.*).

Mr. Rouleau describes the phone call he had with Mr. Bass as follows:

> When I spoke with Mr. Bass on December 15, 201[0], I requested to coordinate with and assist Greenberg Traurig in regard to the subpoena, and mentioned the need to protect U.S. Home's privileges. In response, Mr. Bass declined my offer and assured me that Greenberg Traurig would handle the matter properly on its own, stating something to the effect of: "We got it. We know how to respond."

(*Id.* ¶ 5). Mr. Rouleau goes on to explain:

> Given (i) the assurances that Mr. Bass provided to me during our conversation on December 15, 2010, (ii) the fact that he is a litigation partner in a well-known, national law firm, and (iii) the subpoena's express and repeated limitation of its requests to "non-privileged" documents, Womble Carlyle did not further request to coordinate with and assist Greenberg Traurig in regard to the subpoena.

(*Id.* ¶ 7).

---

[4] The subpoena generally sought documents concerning Bevard Farms, the unconsummated sale of which provides the backdrop to this case, and earlier litigation in Virginia between the parties. (ECF No. 211-3).

In January 2011, Greenberg Traurig produced eighty-one documents, consisting of 4,199 pages of material, to iStar. (*See* ECF No. 329-18). On January 25, 2011, iStar notified Womble Carlyle that it had received Greenberg Traurig's production and offered to provide a copy of it. (*Id.*). Some six weeks later, on March 11, 2011, Womble Carlyle sent a request for a cost estimate for getting a copy of the production, to which iStar responded the same day. (ECF No. 329-19). Womble Carlyle ultimately requested a full copy of Greenberg Traurig's production four days later, on March 15, 2011. (ECF No. 329-20). On or about April 13, 2011, Womble Carlyle discovered that certain documents within Greenberg Traurig's production should have been withheld on the basis of the attorney-client privilege and the work product protection. (ECF No. 343-2 ¶ 9).

After several unsuccessful attempts to retrieve the allegedly privileged documents without court intervention, Plaintiffs filed a motion "for enforcement of stipulated order regarding inadvertent disclosure of privileged material" on May 20, 2011. (ECF No. 211). Plaintiffs sought to enforce a court-approved agreement between the parties ("the Confidentiality Order") that set forth a protocol whereby inadvertently disclosed documents could be "clawed back":

> 6. Non-waiver of privilege for inadvertently disclosed materials. Pursuant to Fed. R. Evid. 502(d), the inadvertent disclosure of any document that is subject to a legitimate claim that the document is subject to the attorney-client privilege or the work-product protection shall not waive the protection or the privilege for either that document or for the subject matter of that document.

(ECF No. 113 ¶ 6).[5]   Pursuant to the Confidentiality Order, however, the requesting party could retain a copy of the disclosed documents if it disputed the claim of privilege or protection by the producing party:

> 7. Return of inadvertently disclosed materials. Except in the event that the requesting party disputes the claim, any documents the producing party deems to have been inadvertently disclosed and to be subject to the attorney-client privilege or the work-product protection shall be, upon written request, promptly returned to the producing party, or destroyed, at that party's option. If the claim is disputed, a single copy of the materials may be retained by the requesting party for the exclusive purpose of seeking judicial determination of the matter pursuant to Fed. R. Civ. P. 26(b)(5)(B) and Fed. R. Evid. 502.

(*Id.* ¶ 7).

On August 19, 2011, after conducting a motions hearing, Judge Connelly issued an order granting in part and denying in part Plaintiffs' motion ("the Original Order").  (ECF No. 244).

---

[5] Appendix D to the Local Rules of this court contains a form order with similar language.

He held that as to all but one of the documents at issue ("the contested documents"), Plaintiffs waived the attorney-client privilege and work product protection.[6]   Judge Connelly applied Federal Rule of Evidence 502(b),[7] requiring the privilege holder[8] to establish all three parts of the test for finding that a disclosure of privileged or protected documents does not amount to a waiver.  (*See id.* ¶¶ 21, 23, 30-31).  He ruled that, by analyzing the conduct of Greenberg Traurig, some of the disclosures were not inadvertent and the privilege holder did not take all reasonable steps to prevent disclosure.  (*See id.*

---

[6] Specifically, the contested documents are:  Bates No. 3320, Bates No. 3755-57, Bates No. 3578, Bates No. 3760-61, Bates No. 3762-64, Bates No. 3998-4009, Bates No. 4010-21, and Bates No. 4027-44.  It is undisputed that the contested documents were all initially subject to the attorney-client privilege and the work product protection.

[7] Federal Rule of Evidence 502(b) provides:

> (b) Inadvertent Disclosure.  When made in a federal proceeding or to a federal office or agency, the disclosure does not operate as a waiver in a federal or state proceeding if:
> (1) the disclosure is inadvertent;
> (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and
> (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

[8] For convenience, this memorandum opinion will refer to the holder of the attorney-client privilege and the work product protection as simply "the privilege holder."

¶¶ 32-33, 44-45).  He did find, however, by focusing on the conduct of Womble Carlyle, that the privilege holder took reasonable steps to rectify the error once the disclosure had been discovered.  (*See id.* ¶ 54).

Plaintiffs then moved for reconsideration.  (ECF No. 253).  On January 18, 2012, based in part on the new information presented in the Rouleau Declaration, Judge Connelly issued an order vacating a portion of the Original Order ("the Reconsideration Order"), holding that all of the contested documents remained privileged or protected.  (ECF No. 317).  He ruled that he should have focused on the conduct of Womble Carlyle, not Greenberg Traurig, in deciding whether the disclosure was inadvertent, and that, based on the new declarations, all disclosures were inadvertent.  (*See id.* ¶ 8).  He did not, critically, analyze at all whether Womble Carlyle, as the current agent for the privilege holder, took reasonable steps to prevent disclosure.

iStar objects to this Reconsideration Order.  (ECF No. 329).  Plaintiffs opposed iStar's objections on February 22, 2012 (ECF No. 343), and iStar replied a week later (ECF No. 349).  On March 2, 2012, Plaintiffs filed a motion for leave to file a surreply.  (ECF No. 351).  Even though surreplies are generally disfavored in this district, *see* Local Rule 105.2.a ("Unless otherwise ordered by the Court, surreply memoranda are

not permitted to be filed."), given the complexity of the legal issues presented and given that iStar has not opposed Plaintiffs' request, Plaintiffs' motion will be granted, and their attached surreply will be considered.[9]

## II.  Standard of Review

Under 28 U.S.C. § 636(b)(1)(A), non-dispositive pretrial matters may be referred to a magistrate judge for hearing and determination.  A district judge may modify or set aside any portion of a magistrate judge's non-dispositive ruling "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."  *Id.; see also* Fed.R.Civ.P. 72(a).  As previously noted:

> Under the clearly erroneous standard, the reviewing court is not to ask whether a finding is the best or only conclusion permissible based on the evidence. Nor is it to substitute its own conclusions for that of the magistrate judge.  See *Tri-Star Airlines, Inc. v. Willis Careen Corp.*, 75 F.Supp.2d 835, 839 (W.D.Tenn. 1999). Rather, the court is only required to determine whether the magistrate judge's findings are reasonable and supported by the evidence.  *Id.*  "It is not the function of objections to discovery rulings to allow wholesale relitigation of issues resolved by the magistrate judge."  *Buchanan v. Consol.*

---

[9] Plaintiffs also filed a motion for the court to refrain from reviewing the contested documents. (ECF No. 326).  Because the issues raised by iStar's objection to the Reconsideration Order can be resolved without reference to the content of any of the contested documents, Plaintiffs' motion will be denied as moot.

*Stores Corp.*, 206 F.R.D. 123, 124 (D.Md. 2002).

*Int'l Ass'n of Machinists & Aerospace Workers v. Werner–Masuda*, 390 F.Supp.2d 479, 485 (D.Md. 2005).

## III. Analysis

iStar contends that the Reconsideration Order was clearly erroneous or contrary to law because (1) Judge Connelly relied on new evidence that was not previously unavailable in rendering his decision, (2) even if that new evidence is permissible, it does not mandate the conclusion that there was no waiver of privilege or protection as to the contested documents, and (3) Judge Connelly should not have "unrung the bell" by finding no waiver of privilege or protection as to the contested documents after having previously found waiver in the Original Order. (ECF No. 329, at 15–16).

Even though the Reconsideration Order did not articulate a standard for reconsideration, given the nature of the Original Order, Rule 54 was applicable. *See* Fed.R.Civ.P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all . . . the rights and liabilities of fewer than all the parties does not end the action . . . and may be revised at any time before the entry of a judgment adjudicating . . . all the parties' rights and liabilities."); *see also Arias v. Dyncorp*, --- F.Supp.2d ---, 2012 WL 1383116, at *3 (D.D.C. Mar.

28, 2012) ("Courts may reconsider any interlocutory decision such as a discovery ruling 'at any time before the entry of a judgment adjudicating . . . all the parties' rights and liabilities.'" (internal citations omitted) (quoting Fed.R.Civ.P. 54(b))). The precise standard governing a motion for reconsideration of an interlocutory order pursuant to Rule 54(b) is unclear, however. *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1472 (4th Cir. 1991). Courts frequently look to the standards set forth in Rules 59(e) and 60(b) for guidance in considering such motions. *See Akeva L.L.C. v. Adidas Am., Inc.*, 385 F.Supp.2d 559, 565-66 (M.D.N.C. 2005) ("Courts will reconsider an interlocutory order in the following situations: (1) there has been an intervening change in controlling law; (2) there is additional evidence that was not previously available; or (3) the prior decision was based on clear error or would work manifest injustice."); *see also Beyond Sys., Inc. v. Kraft Foods, Inc.*, No. PJM-08-409, 2010 WL 3059344, at *1-2 (D.Md. Aug. 4, 2010) (applying this three-part test).

Importantly, the United States Court of Appeals for the Fourth Circuit has held that the standards articulated in Rules 59(e) and 60(b) are not binding when considering a motion under Rule 54(b). *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514-15 (4th Cir. 2003) ("Motions for reconsideration of

interlocutory orders are not subject to the strict standards applicable to motions for reconsideration of a final judgment. This is because a district court retains the power to reconsider and modify its interlocutory judgments, including partial summary judgments, at any time prior to final judgment when such is warranted. Said power is committed to the discretion of the district court . . . ." (internal citations omitted)); *see also Louers v. Lacy*, No. JKS-10-2292, 2012 WL 1067876, at *2 (D.Md. Mar. 28, 2012) ("Although these factors are the most commonly considered when evaluating interlocutory orders, they are not exhaustive or binding . . . ."). For example, while rare, some courts have considered previously available evidence when resolving a motion under Rule 54(b), particularly to correct "clear error" or to avoid "manifest injustice." *E.g.*, *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*, No. 1:09-CV-1685, 2011 WL 6887866, at *2 (M.D.Pa. Dec. 29, 2011); *Cal. Dep't of Toxic Substances Control v. Payless Cleaners*, No. CIV. S-02-2389 LKK/DAD, 2007 WL 2712172, at *3 (E.D.Cal. Sept. 14, 2007); *Lyons v. Baughman*, No. CIV. S-01-412 LKK/KJM P., 2007 WL 1378022, at *3 (E.D.Cal. May 10, 2007).

**A.   Previously Available New Evidence**

Because it was within Judge Connelly's discretion to consider previously available new evidence in issuing the

Reconsideration Order,[10] the Reconsideration Order cannot be challenged on this ground.

### B.   Waiver of the Attorney-Client Privilege and Work Product Protection

iStar's second and third grounds for objecting to the Reconsideration Order are related, as they both concern whether there was a waiver of the attorney-client privilege or the work product protection with respect to the contested documents.   The parties primarily disagree on the proper rule that should have been applied in resolving this issue.   iStar contends that Rule 502(b) governs and that Judge Connelly erred in neglecting to apply that rule on reconsideration, although he had done so in the Original Order.   (ECF No. 329, at 20-22).   In contrast, Plaintiffs contend that the Fourth Circuit's decision in *Hanson v. United States Agency for International Development*, 372 F.3d 286 (4th Cir. 2004), is dispositive of the entire matter and that Judge Connelly was correct in relying on that case upon

---

[10] Plaintiffs also submitted the declaration of Christian Marlin in support of reconsideration, which was previously available as well.   Although Judge Connelly briefly refers to the Marlin Declaration in the Reconsideration Order (ECF No. 317 ¶ 2), it does not appear that the declaration formed any material basis for that decision.   The Marlin Declaration addresses Plaintiffs' direct involvement with Greenberg Traurig's production, which amounted to nothing more than a single phone call to Greenberg Traurig after it had already been discovered that the contested documents had been disclosed to iStar.

reconsideration.   (ECF No. 343, at 19-27).[11]   iStar's stance is overall the better-reasoned position.

**1. Judge Connelly's Finding that Rule 502(b) Governs the Instant Dispute Was Not Clearly Erroneous or Contrary to Law**

In a federal proceeding, Rule 502 generally applies to determine whether the disclosure of a privileged or protected document waives the attorney-client privilege or the work product protection.[12]   Substantively enacted on September 19, 2008,[13] Rule 502 reads, in part, as follows:

> The following provisions apply, in the circumstances set out, to disclosure of a

---

[11] Plaintiffs contend that iStar conceded that *Hanson* controls because iStar did not respond to their arguments either when this issue was initially briefed or on reconsideration. (ECF No. 343, at 13).   They further contend that iStar cannot now dispute *Hanson*'s applicability in this court because iStar did not contest this issue in front of Judge Connelly first. (*Id.*).   This argument is easily dismissed.   iStar clearly took the position before Judge Connelly that Rule 502(b) applied to the question of waiver. (*See* ECF No. 265, at 9).   In any event, even if iStar had not opposed Plaintiffs on this ground, parties cannot concede to the application of incorrect controlling law. And as will be discussed, although *Hanson* is implicated in the present case, it is not completely dispositive of the question of waiver.

[12] Prior to the enactment of Rule 502, where subject-matter jurisdiction was founded upon diversity of citizenship and state law generally applied to the underlying claims, "state law govern[ed] privilege" as well.   *See* Fed.R.Evid. 501; *Cont'l Cas. Co. v. Under Armour, Inc.*, 537 F.Supp.2d 761, 766 (D.Md. 2008). Rule 502 makes clear, however, that "notwithstanding Rule 501, [Rule 502] applies even if state law provides the rule of decision."   Fed.R.Evid. 502(f).

[13] Rule 502 has since been revised for style and clarity.

> communication or information covered by the
> attorney-client privilege or work-product
> protection.
> . . . .
> (b) Inadvertent Disclosure. When made
> in a federal proceeding or to a federal
> office or agency, the disclosure does not
> operate as a waiver in a federal or state
> proceeding if:
> (1) the disclosure is inadvertent;
> (2) the holder of the privilege or
> protection took reasonable steps to prevent
> disclosure; and
> (3) the holder promptly took reasonable
> steps to rectify the error, including (if
> applicable) following Federal Rule of Civil
> Procedure 26(b)(5)(B).

Fed.R.Evid. 502(b). Rule 502 recognizes that this basic test may be superseded by court order or agreement of the parties. *See* Fed.R.Evid. 502(d), (e).

To find that a court order or agreement under Rule 502(d) or (e) supplants the default Rule 502(b) test, courts have required that concrete directives be included in the court order or agreement regarding *each* prong of Rule 502(b). In other words, if a court order or agreement does not provide adequate detail regarding what constitutes inadvertence, what precautionary measures are required, and what the producing party's post-production responsibilities are to escape waiver, the court will default to Rule 502(b) to fill in the gaps in controlling law. *See, e.g.*, *Mt. Hawley Ins. Co. v. Felman Prod., Inc.*, 271 F.R.D. 125, 130, 133 (S.D.W.Va. 2010) (following the parties' agreement regarding post-production

14

responsibilities, but reverting to Rule 502(b)(2) regarding required precautionary measures because the agreement was silent on that prong), *objections overruled sub nom. Felman Prod. Inc. v. Indus. Risk Insurers*, No. 3:09-0481, 2010 WL 2944777 (S.D.W.Va. July 23, 2010); *Luna Gaming-San Diego, LLC v. Dorsey & Whitney, LLP*, No. 06cv2804 BTM (WMc), 2010 WL 275083, at *4 (S.D.Cal. Jan. 13, 2010) (applying Rule 502(b) despite the existence of a court order that provided for a general non-waiver of privilege for inadvertent disclosure because that court order failed to offer detailed instructions regarding post-production responsibilities); *United States v. Sensient Colors, Inc.*, No. 07-1275 (JHR/JS), 2009 WL 2905474, at *2 (D.N.J. Sept. 9, 2009) (applying Rule 502(b) despite a general non-waiver agreement, in part, because "[n]owhere in the [agreement] does it mention that the parties are excused f[ro]m the requirements of Federal Rule of Evidence 502(b)").

In this case, the Confidentiality Order contains a general non-waiver provision for privileged or protected materials that are inadvertently disclosed by the producing party. (*See* ECF No. 113 ¶ 6). It also contains a "claw-back" provision whereby the requesting party must return any document that the producing party deems "inadvertently disclosed." (*See id.* ¶ 7). The requesting party, however, may dispute a claim of privilege or protection regarding the inadvertently disclosed material, and

15

such disputes must be judicially resolved pursuant to "[Rule] 502." (*See id.*).[14]   Importantly, the Confidentiality Order is silent as to either the parties' precautionary or post-production responsibilities to avoid waiver.   Thus, when Judge Connelly interpreted the Confidentiality Order as directing that disputes over privilege or protection claims should be resolved pursuant to Rule 502(b) (*see* ECF No. 244 ¶ 21), a finding that was not vacated by the Reconsideration Order, it was not clearly erroneous or contrary to law for him to do so.   All three prongs of Rule 502(b) govern this dispute.[15]

---

[14] During the initial briefing of the motion to enforce the Confidentiality Order, Plaintiffs ignored this latter language regarding dispute resolution and contended that the existence of the claw-back provision supplanted the basic Rule 502(b) test. (ECF No. 211-1, at 6 n.2).   To that end, they argued that under the Confidentiality Order, "the producing party may unilaterally determine whether a production was inadvertent, and there is no further burden that must be met to trigger the claw-back obligations."   (ECF No. 222, at 4).   In the Original Order, Judge Connelly explicitly rejected this reading of the Confidentiality Order.   (ECF No. 244 ¶ 5).   When Plaintiffs moved for reconsideration, they did not clearly raise this issue as a basis for reconsideration.   (ECF No. 253-1).   At best, Plaintiffs argued that *Hanson* "begins and ends" the inquiry such that "there is no need to address Rule 502." (ECF No. 253-1, at 13).   That argument is a far cry, however, from an assertion that the Confidentiality Order supersedes Rule 502(b).

[15] Furthermore, as Judge Grimm of this court observed in a recently published article discussing Rule 502:

> [A] claw-back agreement wherein a party intends to produce documents without complete pre-production review contemplates purposeful, not inadvertent, production.   It

In the opposition to iStar's objection, Plaintiffs maintain that Rule 502(b) is the incorrect rule for two reasons.  First, Plaintiffs argue that *Hanson* should control.  They are partially correct in that, per *Hanson*, an "attorney may not unilaterally waive the privilege that his client enjoys."  (ECF No. 343, at 19 (citing *Hanson*, 372 F.3d at 294)).  They are further correct that, as a result, Greenberg Traurig could not have waived the attorney-client privilege without Plaintiffs' consent, and the Rouleau Declaration established that such consent was absent.  But *Hanson* crucially does not address whether Plaintiffs *in fact* waived privilege as to the contested documents.  *See Hanson*, 372 F.3d at 294 ("[An attorney's] unilateral disclosure of a [privileged document] *tells us nothing* about whether [the client] has waived its right to withhold the [privileged

---

would be a mistake to draft a claw-back provision as part of a Rule 502(e) agreement that states that it is intended to protect against "inadvertent" disclosure of privileged or protected information.

Paul W. Grimm, Lisa Yurwit Bergstrom & Matthew P. Kraeuter, *Federal Rule of Evidence 502: Has It Lived Up to Its Potential?*, XVII RICH. J.L. & TECH. 8 (2011), http://jolt.richmond.edu/v17i3/article8.pdf.  In other words, the Confidentiality Order's inclusion of a claw-back provision only for inadvertently produced documents necessarily contemplated that some degree of precautionary measures be taken by the parties to avoid waiver.

document]." (emphasis added)).[16]   As previously explained, Rule

502(b) answers that question.

Second, Plaintiffs argue the rule cannot apply to an

"unauthorized — indeed, *unknown* — disclosure by a third party."

(ECF No. 343, at 26).   In other words, Plaintiffs assert that

Greenberg Traurig *as a third party* could not have waived their

privilege.[17]   In this case, however, it is not entirely clear

that Greenberg Traurig is truly a third party in the sense that

Plaintiffs had no control over its actions.   Indeed, as

Plaintiffs' former counsel, Greenberg Traurig still owed certain

---

[16] Plaintiffs appear to read *Hanson* as holding that an attorney can *never* waive a client's privilege. *Hanson* did not reach such a broad conclusion.   Indeed, even Plaintiffs implicitly admitted as much when they relied on the Rouleau Declaration to show that Womble Carlyle did not intend to have the contested documents disclosed.   If *Hanson* were as far-reaching as Plaintiffs contend, Womble Carlyle's actions would be irrelevant.

[17] In introducing this argument, Plaintiffs fumble a bit and suggest that Rule 502(b) does not apply to the instant situation because the disclosure of the contested documents was still "intentional" insofar as Greenberg Traurig was concerned, and Rule 502(b) only applies to inadvertent disclosures. (*See* ECF No. 343, at 25-26).   Obviously, as Plaintiffs themselves admit, Rule 502(b) must be considered from the point-of-view of "the party whose privileges are at issue." (*Id*. at 26).   Thus, Greenberg Traurig's intent is of no moment vis-à-vis the applicability of Rule 502(b).

Separately, it is not lost on the court that Plaintiffs seek to treat Greenberg Traurig as counsel for purposes of *Hanson* but then simultaneously argue that Greenberg Traurig is an independent third party for purposes of Rule 502(b). Regardless, as will be discussed, Rule 502(b) applies to disclosures by third parties.

duties to them. *See, e.g., In re Criminal Investigation No. 1/296X in the Circuit Court for Anne Arundel Cnty.*, 336 Md. 1, 8 (1994) ("The attorney-client privilege does not cease with the termination of the relationship."); *see also* Restatement (Third) of The Law Governing Lawyers § 46 (2000) ("On request, a lawyer must allow a client *or former client* to inspect and copy any document possessed by the lawyer relating to the representation, unless substantial grounds exist to refuse." (emphasis added)). At least one court has held that Rule 502(b) governs disclosures by former counsel, much like disclosures by current counsel. *See Cmty. Bank v. Progressive Cas. Ins. Co.*, No. 1:08-cv-01443-WTL-JMS, 2010 WL 1435368, at *4 (S.D.Ind. Apr. 8, 2010), *modified on other grounds*, 2010 WL 2484306 (S.D.Ind. June 14, 2010).[18]

Even if Greenberg Traurig were really a third party completely independent of Plaintiffs' influence, courts have still held the privilege holder responsible for taking some

---

[18] It may also not be precisely accurate to refer to Greenberg Traurig as Plaintiffs' *former* counsel. Plaintiffs concede that Greenberg Traurig still maintains a financial relationship with Plaintiffs, as that law firm continues to represent Plaintiffs in various litigation in other parts of the country. (*See* ECF No. 351-1, 1-3). One court confronted with roughly similar facts and issues has held that there is "no satisfactory basis" for distinguishing between inadvertent disclosure by a party and inadvertent disclosure by that party's attorney where the attorney represents the party in unrelated litigation. *See Cunningham v. Conn. Mut. Life Ins.*, 845 F.Supp. 1403, 1410 (S.D.Cal. 1994).

action to protect the privilege or protection at issue. *See, e.g.*, *Cobell v. Norton*, 213 F.R.D. 69, 76-77 (D.D.C. 2003) (noting that "the attorney-client privilege [is] preserved, although the communications might have been involuntarily disclosed by third parties, if the holder of the privilege [makes] efforts reasonably designed to protect and preserve the privilege"); *cf. SEC v. Lavin*, 111 F.3d 921, 930 (D.C. Cir. 1997) (holding "waiver [of the marital privilege] occurs only when the holder has failed to take reasonable steps to reclaim the protected material" after involuntary disclosure by a third party (citing *United States v. de la Jara*, 973 F.2d 746, 750 (9th Cir. 1992))).[19]   Indeed, in discussing accidental disclosures during massive discovery, *i.e.*, the quintessential situation against which the law of inadvertent disclosure was meant to protect, Judge Grimm recognized:

_____

[19] In *Lavin*, the appellate court observed that to protect its privilege against disclosure by third parties, a holder of the privilege need not "engage in a preemptive strike to prevent further disclosure of involuntarily disclosed, privileged materials . . . absent a concrete threat of further disclosure." Here, Plaintiffs were on notice at least as of December 15, 2010, when Greenberg Traurig apprised Womble Carlyle that it had been served with the subpoena, that privileged documents might be disclosed.   Given that the subpoena was directed at Plaintiffs' former *counsel*, it is disingenuous for Plaintiffs to argue that there was no potential for improper disclosure simply because the subpoena only sought "non-privileged" materials. Moreover, it is the rare subpoena that affirmatively seeks privileged materials.

> There is little conceptual difference between the nonconsensual disclosure of privileged material by a third party over whom the privilege holder has no control, and involuntary production by a party ordered to produce voluminous materials by court order that requires disclosure within a time frame that, despite reasonable screening, prevents unrestricted opportunity to review for privilege. In either instance, *provided the holder of the privilege has taken all reasonable measures under the circumstances to prevent disclosure*, but was prevented from doing so by matters beyond his control, a finding of waiver would be unfair and improper.

*Hopson v. Mayor of Balt.*, 232 F.R.D. 228, 243 (D.Md. 2005) (emphasis added) (citing *Lavin*, 111 F.3d at 930). Although these cases pre-date the enactment of Rule 502, nothing in Rule 502 suggests that it was not meant to apply to circumstances involving disclosures by third parties. *See* Fed.R.Evid. 502 explanatory note (revised 11/28/2007) ("The rule makes no attempt to alter federal or state law on whether a communication or information is protected under the attorney-client privilege or work-product immunity as an initial matter. Moreover, while establishing some exceptions to waiver, the rule does not purport to supplant applicable waiver doctrine generally."). All in all, Judge Connelly's application of Rule 502(b) under the circumstances here was not clearly erroneous or contrary to law.

### 2.   The Conclusion Reached in the Reconsideration Order Was Contrary to Law

In the Reconsideration Order, Judge Connelly applied *Hanson* to the Rouleau Declaration to deduce that Plaintiffs did not intentionally disclose the contested documents to iStar. (*See* ECF No. 317 ¶¶ 8-9).   He erred, however, by extending that conclusion to hold that there was no waiver of privilege or protection at all.   As the Original Order itself emphasized (ECF No. 244 ¶ 31), all three prongs of Rule 502(b) must be satisfied to find that a disclosure of a privileged or protected document does not constitute waiver, *see Conceptus, Inc. v. Hologic, Inc.*, No. C 09-02280 WHA, 2010 WL 3911943, at *1 (N.D.Cal. Oct. 5, 2010); *Mt. Hawley Ins. Co.*, 271 F.R.D. at 136.   But the Reconsideration Order vacated, without reanalyzing, the portions of the Original Order addressing the second and third prongs of Rule 502(b).   (*See* ECF No. 317 ¶ 10).[20]   By failing to consider whether all three prongs of Rule 502(b) were met, the conclusion reached in the Reconsideration Order was contrary to law.   *See In re Motor Fuel Temperature Sales Practices Litig.*, 707 F.Supp.2d 1145, 1148 (D.Kan. 2010) ("Under [the contrary to law] standard, the Court . . . may set aside the magistrate judge

---

[20]   Regardless, in the Original Order, Judge Connelly neglected to analyze the precautionary measures that Womble Carlyle took to protect against inadvertent disclosures.   He only analyzed the precautionary measures taken by Greenberg Traurig.

decision if it . . . failed to consider an element of the applicable standard."), *appeal dismissed*, 641 F.3d 470 (10th Cir. 2011).

To complete the inquiry, then, the second and third prongs of Rule 502(b) will be addressed. Regarding the second prong, as iStar points out, it cannot be said that Womble Carlyle's precautionary measures taken to prevent disclosure were reasonable.[21] Even considering the Rouleau Declaration, one would expect Plaintiffs to proffer many more details regarding the preventative steps Womble Carlyle took to protect the attorney-client privilege and work product protection. *See Williams v. Dist. of Columbia*, 806 F.Supp.2d 44, 49 (D.D.C. 2011) (holding that defendant failed to establish its preventative measures were reasonable in part because its counsel "explain[ed] only that '[p]rior to production, [the documents at issue were] reviewed by an experienced litigation paralegal under the supervision of an attorney'"); *Thorncreek Apartments III, LLC v. Vill. of Park Forest*, Nos. 08 C 1225, 08-C-0869, 08-C-4303, 2011 WL 3489828, at *7 (N.D.Ill. Aug. 9, 2011) (questioning the reasonableness of precautionary measures taken to protect the privilege where the only description of

---

[21] The actions of Womble Carlyle, as Plaintiffs' agent, are determinative of the Rule 502(b) analysis. The record is devoid of any evidence that Plaintiffs themselves took any reasonable, direct action to protect their privilege or protection.

steps taken was contained in an email explaining that counsel "'spent countless hours reviewing' a relatively large amount of documents and marked each document either 'responsive,' 'non-responsive,' or 'privileged' in the . . . database"); *Amobi v. Dist. of Columbia Dep't of Corr.*, 262 F.R.D. 45, 54 (D.D.C. 2009) (finding a party's statement that "several reviews of the documents to be disclosed were undertaken" to describe insufficiently the precautionary measures to protect the privilege); *see also Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Co.*, 132 F.R.D. 204, 209 (N.D.Ind. 1990) (doubting the reasonableness of precautionary measures taken to protect the privilege where "the court is left to speculate what specific precautions were taken by counsel to prevent this disclosure").[22]

In any event, here, the Rouleau Declaration only describes two brief phone calls — only one of which admittedly was substantive — from Womble Carlyle to Greenberg Traurig. Such minimal efforts to secure the privilege or protection are unreasonable. *See Peterson v. Bernardi*, 262 F.R.D. 424, 429 (D.N.J. 2009) (finding unreasonable the "minimal steps [plaintiff took] to protect against inadvertent disclosure,"

---

[22] Of course, such details may be elusive if Womble Carlyle in fact took so few precautionary measures to protect the privilege or protection.

where plaintiff's "moving papers only mention one step that was taken to prevent an inadvertent error"). Furthermore, the "substantive" phone call amounted to little more than a broad abdication of Womble Carlyle's responsibility to Greenberg Traurig. Several courts have found such delegation to be unreasonable. *See Conceptus, Inc. v. Hologic, Inc.*, No. C 09-02280 WHA, 2010 WL 3911943, at *2 (N.D.Cal. Oct. 5, 2010) (finding precautions unreasonable where the disclosing plaintiff "admitted it did not review the large amount of documents disclosed to defendant because it understood that prior counsel had reviewed the documents before providing them"); *Cmty. Bank*, 2010 WL 1435368, at *4 (finding precautions unreasonable where the client did not examine a document production itself but rather relied on prior counsel to do so and to protect its privilege); *see also Ciba-Geigy Corp. v. Sandoz Ltd.*, 916 F.Supp. 404, 412 (D.N.J. 1995) ("[P]resent counsel's failure to verify [former counsel's practice of conducting privilege reviews prior to disclosure], and [its reliance] upon vague and unspecified conversations regarding the [production], amounts to inexcusable neglect.").[23] Thus, Womble Carlyle's acceptance of

---

[23] Reliance on co-counsel — even where that co-counsel is the in-house counsel of the client — also does not excuse a failure to take appropriate precautionary measures. *See Gragg v. Int'l Mgmt. Grp. (UK), Inc.*, No. 5:03-CV-0904 (NPM/DEP), 2007 WL 1074894, at *5-6 (N.D.N.Y. Apr. 5, 2007).

Greenberg Traurig's statements that they "got it" and "know how to respond" to the subpoena does not constitute a reasonable precaution to protect the attorney-client privilege or work product protection.[24]   Womble Carlyle was obligated to do more to protect its client and to demand that Plaintiffs' interests feature more prominently in Greenberg Traurig's efforts.[25]

Finding the second prong of Rule 502(b) unmet, the third prong need not be addressed.   *See Conceptus, Inc.*, 2010 WL 3911943, at *1; *Mt. Hawley Ins. Co.*, 271 F.R.D. at 136.   The court observes, however, that it is not clear that Womble Carlyle "promptly" took reasonable steps to rectify the error as

---

[24] In the Original Order, Judge Connelly actually found that "U.S. Home failed to take reasonable *pre-production* precautions to ensure communications related to the litigation and generated by attorneys *other than* Greenberg Traurig, were not disclosed." (ECF No. 244 ¶ 44).   This portion of the Original Order was vacated by the Reconsideration Order.   (ECF No. 317 ¶ 10).   In the Reconsideration Order, Judge Connelly noted that the Rouleau Declaration "refutes the Court's finding" on this issue.   He did not, however, discuss why this is so, nor did he make any new, definitive finding on the issue.

[25] It is insufficient for Plaintiffs to argue that they adequately protected their privilege or protection by withholding *their* own copies of the contested documents that were in their specific possession in responding to iStar's discovery requests.   (*See* ECF No. 343, at 29).   This fact only compounds the inference that Plaintiffs were on notice that the documents in Greenberg Traurig's possession may have been privileged or protected and therefore should have reviewed them. Moreover, such notice renders Plaintiffs' argument that they were not privy to any communications between Greenberg Traurig and iStar concerning the production meaningless.   Womble Carlyle could have — and should have — taken more definitive steps to secure the contested documents.

the third prong requires.[26]   First, over one month after Womble Carlyle was made aware of iStar's receipt of Greenberg Traurig's production, Womble Carlyle requested a copy of the production — but only after requesting a cost estimate.   Second, it took nearly another month for Womble Carlyle to review the production and discover that the contested documents had been produced; Womble Carlyle offers absolutely no explanation for this delay. And third, other than notifying Greenberg Traurig of the disclosures, Womble Carlyle fails to explain any other steps it took to rectify the error, let alone *when* it took such steps.[27]

In sum, Judge Connelly should have analyzed all three prongs of Rule 502(b) upon reconsideration.   His failure to do so was contrary to law.   A complete analysis assessing Womble Carlyle's actions shows that Plaintiffs did not take reasonable

---

[26] In the Original Order, Judge Connelly found that Womble Carlyle "did take reasonable steps to rectify error upon discovering the error," but he made no finding regarding the promptness of Womble Carlyle's actions.  (*See* ECF No. 244 ¶ 54). This part of the Original Order was also vacated by the Reconsideration Order.  (ECF No. 317 ¶ 10).

[27] Even if it could be said that Womble Carlyle's contacting Greenberg Traurig regarding the disclosures was both reasonable and prompt, Greenberg Traurig may not have demanded that the contested documents be returned until *five days* after learning of the inadvertent disclosures.  (*See* ECF No. 211-4, Bass Decl., ¶ 12).   The record regarding the date of Greenberg Traurig's demand is somewhat unclear, however, as iStar admits on several occasions that the demand came in the form of a letter dated only one day after Womble Carlyle told Greenberg Traurig about the disclosures.  (*See, e.g.*, ECF No. 211-8; ECF No. 212-6).

precautionary steps to prevent inadvertent disclosure of the contested documents and that they likely did not take *prompt*, reasonable steps to rectify the error.  Because Rule 502(b) is not satisfied, the inadvertent disclosure of the contested documents cannot be excused.  Plaintiffs waived both the attorney-client privilege and the work product protection with respect to these documents.[28]

### 3.    The Finding of Waiver in This Case Does Not Amount to a Subject-Matter Waiver

To be clear, the portion of the Reconsideration Order holding that Plaintiffs did not intentionally disclose any of the contested documents to iStar stands.  Accordingly, the waiver of the attorney-client privilege and the work product protection as to these documents does not extend to the subject matter of the disclosures.  *See* Fed.R.Evid. 502(a) (requiring, in part, that the waiver be intentional to find subject-matter waiver); *see also* Fed.R.Evid. 502 explanatory note (revised 11/28/2007) ("It follows that an inadvertent disclosure of

---

[28] Because of this conclusion, the parties' arguments that certain documents such as the "Rosenberg Martin memorandum" may potentially not be protected by both the attorney-client privilege and the work product protection need not be addressed.

protected information can never result in a subject matter waiver.").[29]

## IV.  Conclusion

For the foregoing reasons, iStar's objection to Judge Connelly's January 18, 2012, order will be sustained. Plaintiffs' motion for leave to file surreply will be granted, and Plaintiffs' motion to refrain from viewing the privileged documents at issue will be denied as moot.  A separate order will follow.

_____
                    /s/
DEBORAH K. CHASANOW
United States District Judge

---

[29]  The Reconsideration Order vacated the parts of the Original Order that held that that there was a subject-matter waiver as to certain documents.