IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

U.S. HOME CORPORATION                              :

                                      :

    v.                              :   Civil Action No. DKC 08-1863

                                        :

SETTLERS CROSSING, LLC, et al.

                                        :

**MEMORANDUM OPINION**

Several motions to amend pleadings are pending, along with subsidiary and related motions. (ECF Nos. 294, 296, 301, 316, 346, 373, 400, 401, 404, 420). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion for leave to file a first amended counterclaim filed by Defendant/Counter Claimant iStar Financial, Inc. ("iStar"), will be granted, and all other motions will be denied or denied as moot.

## I. Background

### A. Factual Background

As necessary to resolve these motions, the background facts are as follows. At the heart of this matter is a complex commercial real estate transaction pursuant to which Plaintiff/Counter Defendant U.S. Home Corporation ("U.S. Home") was to acquire all of the ownership interests of Defendant/Counter Claimant Washington Park Estates, LLC ("WPE"),

from Defendant/Counter Claimant Settlers Crossing, LLC ("Settlers Crossing"). Settlers Crossing owns 100% of the membership interests in WPE, and WPE owns or controls approximately 1,250 acres of undeveloped land in Prince George's County, Maryland ("the Property"). Thus, via this transaction, U.S. Home would in effect purchase the Property.

On or about November 15, 2005, U.S. Home entered into an agreement of purchase and sale of membership interests ("the Purchase Agreement") with Settlers Crossing and WPE (collectively, "Sellers") to accomplish the transaction. At the same time, U.S. Home entered into a contract for services ("the Contract for Services") with Defendant/Counter Claimant Bevard Development Company ("Bevard") pursuant to which Bevard was obligated to obtain certain approvals and entitlements in connection with the development of the Property. On or about December 2, 2005, Defendant Steven B. Sandler, a principal and member of Settlers Crossing, entered into two guaranties, which established him as the guarantor for any refund of the $16 million and $4 million deposits paid by U.S. Home under the Purchase Agreement and the Contract for Services, respectively.

In a March 29, 2007, letter, Settlers Crossing stated that all conditions precedent in the Purchase Agreement were satisfied. U.S. Home disagreed, and the next day, it sent a "Notice of Termination to Seller" to terminate the Purchase

Agreement based on Sellers' failure to satisfy conditions precedent related to government approvals.[1]   Negotiations followed.  On or about May 16, 2007, the parties entered into a "Second Amendment" to the Purchase Agreement,[2] which, among other items, reaffirmed the existing representations and warranties of Sellers, reflected Sellers' new obligations regarding government approvals, evidenced the resolution of certain zoning appeals, and showed a lower purchase price.  The Second Amendment also reset the initial settlement date to December 5, 2007, and the outside settlement date to March 15, 2009.

In June 2007, iStar made a $100 million loan to Sellers and Bevard.  As security, Sellers and Bevard assigned certain rights under the Purchase Agreement and the Contract for Services to iStar.  On or about June 19, 2007, in response to a request by Defendants, U.S. Home executed a consent and estoppel agreement ("the Consent") acknowledging and accepting this assignment of rights.

Shortly before the initial settlement date, U.S. Home sent a letter to Sellers stating that Sellers had again failed to satisfy certain conditions precedent, including but not limited

---

[1]   The Contract for Services would also terminate automatically upon termination of the Purchase Agreement.

[2] The parties had executed a First Amendment to the Purchase Agreement on December 31, 2005.

to certain off-site easements.    In response to a request by
Sellers to identify the particular off-site easements at issue,
U.S. Home sent another letter on November 27, 2007.    In that
letter, U.S. Home listed the off-site easements in question, and
it also demanded that Sellers provide written confirmation and
evidence of their satisfaction of all conditions precedent.
Sellers did not respond to the November 27, 2007, letter, and
settlement did not occur as initially scheduled on December 5,
2007.[3]

Around January 3, 2008, U.S. Home expressed concerns about
the environmental condition of the Property and therefore
requested an opportunity to inspect it as provided for under the
Purchase Agreement.    U.S. Home renewed its request on March 7,
2008.    On March 14, 2008, Sellers rejected U.S. Home's request
to inspect the Property.    In an April 28, 2008, letter, Sellers
asserted that all conditions precedent were satisfied and called
for settlement to occur at the end of May.    On May 16, 2008,

---

[3] U.S. Home alleges that there were "other failed conditions
precedent not known by U.S. Home at the time of its November
2007 correspondence" with Sellers.    (ECF No. 52 ¶ 61).    For
example, Sellers never disclosed to U.S. Home that "the Property
was used for many years as a sewage sludge disposal site."
(*Id.*).    In addition, Sellers failed to satisfy certain
obligations they had with respect to settlement agreements
related to lawsuits challenging zoning approvals for the
Property.    (*See id.* ¶¶ 68-76).    Finally, Sellers failed to
disclose certain pending lawsuits against them that were of
potential relevance to the disposition of the Property.    (*See
id.* ¶¶ 77-78).

U.S. Home informed Sellers that Sellers were in default because Sellers continued to refuse access to the Property for inspection as U.S. Home had previously requested on multiple occasions.  U.S. Home followed up a week later with a letter asserting that it was not obligated to proceed with settlement. Because settlement did not occur at the end of May as Sellers requested, Sellers sent a notice of default to U.S. Home.  On July 3, 2008, U.S. Home sent a notice of termination to Defendants based upon their failure to permit U.S. Home to access the Property for inspection.

According to U.S. Home, Sellers still failed to satisfy all conditions precedent to the Purchase Agreement as of March 15, 2009, the outside closing date.  Subsequent to that date, U.S. Home sent a second notice of termination on April 8, 2009, to make clear that, in the event its earlier notice was not effective or the Purchase Agreement did not expire automatically, Sellers' failure to satisfy the conditions precedent constituted yet another basis for termination.

**B.    Procedural Background**

On July 17, 2008, U.S. Home filed a complaint in this court against Settlers Crossing, WPE, Bevard, Mr. Sandler, and iStar, alleging various claims for breach of contract and declaratory judgment.  The parties cross-moved for summary judgment (ECF Nos. 14, 32), and the court denied both motions (ECF Nos. 41,

5

42).   After obtaining leave, U.S. Home subsequently filed an amended complaint on May 18, 2009.  (ECF No. 52).   The amended complaint contains seven counts:  (1) breach of contract against Sellers; (2) breach of contract against Bevard; (3) breach of guaranty against Mr. Sandler; (4) fraudulent inducement against Sellers; (5) fraudulent concealment against Sellers; (6) "breach of environmental representations and warranties" against Sellers; and (7) declaratory judgment against all Defendants. On June 30, 2009, all Defendants answered the amended complaint. (ECF Nos. 64, 65).   That same day, certain of the Defendants filed a joint three-count counterclaim against U.S. Home and Counter Defendant Lennar Corporation ("Lennar") (collectively, "Plaintiffs/Counter Defendants"),[4] seeking a declaratory judgment and specific performance.   (ECF No. 66).[5]   Plaintiffs/Counter Defendants answered the counterclaim on March 26, 2010.  (ECF No. 99).

A scheduling order was entered on July 15, 2009.  (ECF No. 69).   The scheduling order originally set the deadline for the amendment of pleadings as August 31, 2009, and the deadline for the close of discovery as January 15, 2010.   The deadline for

---

[4] U.S. Home is a wholly-owned subsidiary of Lennar.

[5] Mr. Sandler did not join the other Defendants in asserting the counterclaim.

the close of discovery has been extended numerous times.  It is currently set for October 1, 2012.  (ECF No. 432).

The following motions have now been filed: Plaintiffs/Counter Defendants filed a motion for leave to amend their pleadings (ECF No. 346); a motion for leave to file supplemental memorandum in support of their motion for leave to amend their pleadings (ECF No. 401); and two motions to seal (ECF Nos. 373, 400).  iStar filed a motion for sanctions (ECF No. 404), as well as a motion for leave to file first amended counterclaim (ECF No. 294).  Plaintiffs/Counter Defendants filed a motion to strike iStar's proposed first amended counterclaim insofar as it incorporates information from a privileged document, to seal the part of a brief filed by iStar that includes such information, to stay resolution of iStar's motion for leave to amend, and to award attorneys' fees and costs ("omnibus motion") (ECF No. 301).  The respective parties filed two additional motions to seal related to the counterclaim briefing.  (ECF Nos. 296, 316).  Finally, U.S. Home filed a motion for extension of time to file objections to the Magistrate Judge's June 18, 2012, order.  (ECF No. 420).

## II.  Motions for Leave to Amend Pleadings

Pursuant to Federal Rule of Civil Procedure 15(a)(2), the court should "freely give leave" to amend pleadings "when justice so requires."  Fed.R.Civ.P. 15(a)(2).  There is an

important complication here, however:  the scheduling order set a deadline of August 31, 2009, for the amendment of pleadings, and that deadline has long since passed.  While the scheduling order has been modified numerous times, the deadline for the amendment of pleadings has not been altered.  In consequence, the parties must do more than satisfy the liberal standard of Rule 15(a), they must first meet the mandates of Rule 16(b)(4), which calls for "good cause" to change a scheduling order.  *See Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298-99 (4th Cir. 2008); *see also Wilson v. Appalachian Power Co.*, No. 3:10-0445, 2011 WL 221656, at *1 (S.D.W.Va. Jan. 24, 2011) (applying two-step test employing Rules 16(b) and 15(a) in analyzing untimely motion for leave to amend); *Rassoull v. Maximus, Inc.*, 209 F.R.D. 372, 373 (D.Md. 2002) (same).

Rule 16(b) focuses on the timeliness of the proposed amendment and the reasons behind its tardy submission. *Rassoull*, 209 F.R.D. at 374.  In particular, Rule 16(b) requires the movant to show that it acted diligently. *Id.*  The court also considers whether the non-moving party could be prejudiced by the delay, the length of the delay, and whether the movant acted in good faith. *Tawwaab v. Va. Linen Serv., Inc.*, 729 F.Supp.2d 757, 768-69 (D.Md. 2010).  All in all, the dictates of Rule 16(b) are not to be taken lightly. *See Potomac Electric Power Co. v. Electric Motor Supply, Inc.*, 190 F.R.D. 372, 375

(D.Md. 1999) ("[A] scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." (internal quotations omitted)).  If Rule 16(b) is not satisfied, there is no need to consider Rule 15(a). *See Nourison Rug Corp.*, 535 F.3d at 299.

### A.   Plaintiffs'/Counter Defendants' Motion[6]

U.S. Home seeks to include iStar as a defendant in Count Six of the amended complaint, to add five new counts to the original seven counts, and to revise the supporting factual allegations accordingly.   The proposed new counts are: declaratory judgment against all defendants; breach of covenant against Sellers and iStar; breach of warranty against Sellers

---

[6] Plaintiffs/Counter Defendants seek leave to file a supplemental memorandum in support of their motion for leave to amend their pleadings, but offer no compelling reason to grant this motion.   (ECF No. 401). At best, they explain that the supplemental memorandum "discusses materials that are relevant" to new claims in the proposed second amended complaint and that consideration of the supplemental memorandum would not prejudice Defendants.   (*Id.* at 1).   In opposition, iStar points out that Plaintiffs/Counter Defendants merely seek to present "*old* information to try and better justify [their] request for leave to amend [their] pleadings."   (ECF No. 412, at 1).

Indeed, half of the supplemental memorandum reiterates arguments already presented in their motion papers.   (*See* ECF No. 403, at 6-8).   The other half relies on previously-available evidence to buttress arguments that could have — and should have — been presented in Plaintiffs'/Counter Defendants' reply brief. (*See* ECF No. 403, at 2-6).   The lateness of these arguments will not be excused.   In sum, because the supplemental memorandum will not aid in this court's decision, the motion for leave to file it will be denied.

and iStar; breach of the duty of good faith and fair dealing against Sellers and iStar; and malicious use of process against Sellers and iStar. Plaintiffs/Counter Defendants also seek to add certain defenses to their answer to the joint counterclaim, which mirror the new claims.

Here, as iStar and Sellers argue (ECF No. 365, at 24-25; ECF No. 366, at 24-27), Plaintiffs/Counter Defendants fail to show good cause to modify the scheduling order. It cannot be said that any of their proposed new claims or defenses is the product of the requisite diligence that Rule 16(b) demands.[7]

### 1.   The Proposed Addition of iStar as a Defendant in Count Six, and the Proposed Addition of Count Ten

Count Six currently alleges that Sellers were aware that hazardous materials had been disposed of on the Property at the time of the Purchase Agreement but failed to tell U.S. Home, which contravened the Purchase Agreement. Through the proposed second amended complaint, U.S. Home seeks to add iStar as a

---

[7] The proposed Count Eleven is more easily disposed of based on Rule 15(a). Assuming that good cause could be found to permit its addition, Count Eleven would fail Rule 15(a) because the "amendment would be futile." *See Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 193 (4th Cir. 2009). Indeed, there is no independent cause of action for "breach of duty of good faith and fair dealing" recognized in Maryland. *See Mount Vernon Props., LLC v. Branch Banking & Trust Co.*, 170 Md.App. 457, 472 (2006). Such a breach "is better viewed as an element of another cause of action at law." *Id*. None of U.S. Home's cited cases hold otherwise. (*See* ECF No. 374, at 22-23). Accordingly, Count Eleven need not be considered, and the court will address only the other counts.

defendant in the count.    In the motion for leave to amend pleadings, however, U.S. Home offers no reason why this particular amendment should be permitted, let alone whether good cause exists to allow it.    Absent *any* explanation for why iStar could not have been added to Count Six earlier, there can be no finding of good cause here.    *Odyssey Travel Ctr., Inc. v. RO Cruises, Inc.*, 262 F.Supp.2d 618, 632 (D.Md. 2003) ("[Plaintiff's] lack of explanation for the tardiness of its submission would leave the court with no choice but to deny its motion to amend."); *Rassoull*, 209 F.R.D. at 374 (finding no good cause in part because the plaintiff "never addresses the issue of tardiness in the motion itself").

This conclusion is especially true because the basis for asserting Count Six against Sellers could just as easily have been the basis for asserting Count Six against iStar.    The factual predicate to alleging Count Six in the amended complaint originated from information obtained from the Maryland Department of the Environment, which detailed the Property's usage as a sewage disposal site for many years.[8]    U.S. Home points to nothing unique about this information that applied only to Sellers.    (*See* ECF No. 52 ¶¶ 61-67, 140, 146).    iStar

---

[8] As iStar points out (ECF No. 366, at 24), in response to interrogatories propounded by Settlers Crossing, U.S. Home admitted that it obtained this information in July 2008 (*see* ECF No. 366-6, at 11).

easily could have been included as a defendant in Count Six when that claim was first raised.  Where, as here, a plaintiff could have reasonably made a claim before the deadline for amending a complaint had passed, good cause cannot be found to modify a scheduling order to allow such amendment.

In light of the information from the Maryland Department of the Environment that was available to U.S. Home before the amendment deadline, U.S. Home's remaining argument that iStar may have learned of the Property contamination from various other sources is unavailing.[9]  The fact that Sellers shared with iStar the results of an environmental report prepared by Sellers' consulting expert, Apex Companies, LLC, which allegedly detailed contamination on the Property ("the Apex Report") (*see* ECF No. 374, at 27),[10] or the fact that Sellers allegedly knew of the Property contamination through their agents (*see id.* at 29-30), does not explain why Count Six could not have been asserted against iStar at the same time as against Sellers.

––––––––––––––––––

[9] These arguments are raised for the first time in the reply papers.  "The ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered." *Clawson v. FedEx Ground Package Sys., Inc.*, 451 F.Supp.2d 731, 734 (D.Md. 2006).  Even if these arguments are entertained, as explained above, they do not establish good cause.

[10] It is also unclear how U.S. Home purports to know the contents of the Apex Report given that the report has been deemed work product and has not, as far as the court is aware, been disclosed to U.S. Home.

Separately, U.S. Home seeks to add a claim for breach of warranty against Sellers and iStar in Count Ten.  The substance and basis for the proposed Count Ten, however, is virtually identical to that of Count Six.  Like Count Six, Count Ten alleges that, based on the Apex Report and the knowledge of Sellers' agents, certain representations that Sellers and iStar made to U.S. Home regarding the non-existence of hazardous materials on the Property were necessarily incomplete, false, or misleading.  The only difference between Count Six and Count Ten appears to be the section of the Purchase Agreement pursuant to which the claim is asserted.  The striking similarity between Count Ten and Count Six strongly suggests that there is no good cause to permit the addition of Count Ten at this late stage.  Indeed, just as iStar argued with respect to Count Six and argues now with respect to Count Ten, Count Ten could have been brought earlier based on the information U.S. Home acquired from the Maryland Department of the Environment.

### 2.    The Proposed Addition of Count Eight

In Count Eight, U.S. Home would seek a declaratory judgment against all Defendants establishing that they engaged in certain criminal and inequitable conduct that excuses U.S. Home from performing under the Purchase Agreement.  U.S. Home explains that two events, taken together, prompted it to assert this claim now.  First, there is the declaration of Christopher

Lannin, which was executed in November 2011. (*See* ECF No. 346-1, at 9-10, 14-15). Second, there was the unsealing of the plea agreements in the criminal cases of Daniel Colton, who was Sellers' agent at various relevant times, and Patrick Ricker, who worked with Mr. Colton. (*See id.* at 8-9, 14-15). Although the Lannin Declaration was executed only three months before U.S. Home sought leave to file a second amended complaint,[11] the delay between when U.S. Home sought leave and when it reasonably should have been aware of all of the facts forming the basis of Count Eight is actually greater.[12]

To begin, the information contained in the Lannin Declaration is based on Mr. Lannin's recollection of events that took place "shortly" after November 2005. (*See* ECF No. 346-7, Lannin Decl., ¶¶ 2, 5, 8). U.S. Home provides no explanation for why it took roughly six years for Mr. Lannin to execute his declaration. This delay is particularly noteworthy because Mr. Lannin is associated with Lennar. (ECF No. 346-1, at 9). He was the director of operations for Lennar's Maryland Division since 2005. (ECF No. 346-7 ¶ 2). Furthermore, although Mr.

---

[11] Plaintiffs/Counter Defendants filed the motion to amend their pleadings on February 24, 2012.

[12] Even if the Lannin Declaration were truly not available to U.S. Home until November 2011, as will be discussed, it is not clear that a three-month delay before seeking leave to amend pleadings exhibits sufficient diligence under Rule 16(b)'s good cause standard.

Lannin no longer appears to be employed by Lennar and is a third party to this lawsuit (*see* ECF No. 366, at 26), he is nonetheless represented by Plaintiffs' counsel and has been since February 12, 2010 (ECF No. 366-7).[13]   Thus, it was well within the power of U.S. Home to glean the information contained in the Lannin Declaration at least twenty-one months, if not more, before it sought leave to add Count Eight.

As noted, U.S. Home contends that it was not Mr. Lannin's experience alone that led to Count Eight.   Only when pieced together with the information revealed by the unsealing of the Colton and Ricker plea agreements does Mr. Lannin's experience take on any significance to this case.   But U.S. Home concedes that the Colton plea agreement was unsealed in June 2011. (*See* ECF No. 374, at 15).[14]   In other words, U.S. Home reasonably had all the information it needed to assert Count Eight approximately eight months before it sought leave to amend its pleadings.   In the absence of any justification for waiting this long, good cause to modify the scheduling order to permit the addition of Count Eight cannot be found.

---

[13] U.S. Home does not dispute this fact.

[14] While neither party specifies when the Ricker plea agreement was unsealed, the court docket shows that it was unsealed on May 18, 2011. *United States v. Ricker*, No. 09-0606 (D.Md. filed Nov. 24, 2009) (ECF No. 15).

This eight-month delay before seeking leave to add Count Eight distinguishes the instant proceedings from the cases U.S. Home relies on to demonstrate that it has met the good cause standard. (*See* ECF No. 346-1, at 15). In *Wood v. Walton*, Nos. WDQ-09-3398, WDQ-10-3422, 2011 WL 3439308 (D.Md. Aug. 4, 2011), the plaintiff sought leave to add a negligent supervision claim only two-and-a-half weeks after learning about the predicate facts for that claim. *See id.* at *6. Even more diligent was the plaintiff in *Tawwaab*, who waited only six days after a key deposition to seek leave to add a new claim based on the information newly discovered. *See Tawwaab*, 729 F.Supp.2d at 770.[15] Particularly in light of the quickness with which the plaintiffs in those cases moved to preserve their rights, U.S. Home cannot contend that it, too, should be excused from the dictates of Rule 16, at least as to the addition of Count Eight.

### 3. The Proposed Addition of Count Nine

U.S. Home seeks to add a "breach of covenant claim" via Count Nine. It readily concedes, however, that this count "is not premised on newly-obtained evidence." (ECF No. 346-1, at 14). For all the reasons already discussed, the admitted lack

---

[15] The rest of U.S. Home's cited cases are distinguishable because Rule 16's good cause standard was not at issue in either. *See Eigles v. Kim*, No. WDQ-07-2223, 2009 WL 5108581, at *1 n.4 (D.Md. Dec. 16, 2009). *See generally Island Creek Coal Co. v. Lake Shore, Inc.*, 832 F.2d 274 (4th Cir. 1987).

of diligence in seeking this claim is fatal to the motion regarding this count.[16]

**4.   The Proposed Addition of Count Twelve**

In Count Twelve, U.S. Home seeks to add a claim for "malicious use of process."   The proposed count is based predominantly on an earlier lawsuit that Sellers filed against U.S. Home in November 2007 ("the First Lawsuit").   In effect, U.S. Home argues, Sellers filed the First Lawsuit in bad faith so as "to prevent and frustrate U.S. Home's exercise of its contractual rights" under the Purchase Agreement.   (*See* ECF No. 346-1, at 19).

As with the other proposed counts, U.S. Home simply has not proven that it acted diligently in bringing Count Twelve.   U.S. Home admits in its briefing that the First Action was filed in 2007 and ended in 2010 upon the Fourth Circuit's affirmance of that case's dismissal for lack of subject-matter jurisdiction. (*See id.* at 6).   Therefore, for well over a year, U.S. Home sat idly by as the instant case progressed even though it could have

---

[16] Furthermore, U.S. Home's cited cases in support of its argument that this claim should nevertheless be added are of no moment. (*See id.* at 14 n.10 (citing *CSX Transp., Inc. v. Lone Star Indus., Inc. (In re Lone Star Indus., Inc. Concrete R.R. Cross Ties Litig.)*, 19 F.3d 1429 (4th Cir. 1994) (unpublished table decision); *Robinson v. GEO Licensing Co.*, 173 F.Supp.2d 419 (D.Md. 2001)).   Of those two cases, only *In re Lone Star* implicated Rule 16, and, unlike here, the plaintiff in that case based its new claims at least in part on newly obtained evidence. *See In re Lone Star*, 19 F.3d 1429, at *11.

asserted this claim.  U.S. Home does not provide a satisfactory explanation for its dilatory conduct.  At best, it points to the deposition of Steven Magee, a senior vice president at iStar, as providing recent evidence of an element of the claim.  (*See* ECF No. 346-1, at 11-12; ECF No. 374, at 26-27).

U.S. Home's reliance on the Magee Deposition to show good cause is problematic for several reasons.  First, despite U.S. Home's contention that it was taken in November 2011 (ECF No. 374, at 26), the attached excerpt from the deposition transcript indicates that it was actually taken on October 20, 2011 (ECF No. 346-13, Magee Dep., at 1), which was more than four months before U.S. Home filed its motion for leave to amend the pleadings.  U.S. Home's motion papers are silent as to why it waited so long before seeking leave to amend — an inexcusable delay under Rule 16(b).

Second, it is not certain that the information provided by the Magee Deposition was even necessary to bring Count Twelve. *See Tawwaab*, 729 F.Supp.2d at 768 ("[A] finding of 'good cause' is justified under Rule 16(b) where at least some of the evidence *needed* for a plaintiff to prove his or her claim did not come to light until after the amendment deadline." (emphasis

added)).[17]   U.S. Home argues that the testimony of Mr. Magee established that iStar acted with malice (*see* ECF No. 374, at 26), which is an element of malicious use of process, *see One Thousand Fleet Ltd. P'ship v. Guerriero*, 346 Md. 29, 37 (1997) (listing the five elements of the tort); *accord Campbell v. Lake Hallowell Homeowners Ass'n*, 157 Md.App. 504, 532 (2004) (same). Critically, however, "malice may be inferred from a lack of probable cause."[18]   *One Thousand Fleet Ltd. P'ship*, 346 Md. at 37; *see also* Fed.R.Civ.P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). Hence, the "new" evidence that U.S. Home obtained from the Magee Deposition was hardly necessary, and it could have asserted Count Twelve at an earlier time.[19]

Accordingly, good cause to modify the scheduling order to allow the addition of Count Twelve is absent.

---

[17] U.S. Home's reliance on *Tawwaab* neglects the requirement that the newly-discovered evidence supporting good cause to amend pleadings be "needed" and not merely relevant. (*See* ECF No. 374, at 26).

[18] U.S. Home makes this very point in its reply brief. (ECF No. 374, at 24).

[19] U.S. Home also identifies a September 8, 2008, letter that allegedly proves Sellers acted with malice. (ECF No. 374, at 26 n.17). U.S. Home fails, however, to establish when this information was obtained. In any event, as discussed above, definitive proof of malice is not needed before a party may plead a cause of action for which it is an element.

### 5.    The Proposed Amendments to the Answer

Plaintiffs/Counter Defendants seek to amend their answer to the joint counterclaim.  They explain that the "proposed amended answer states new defenses that mirror the new claims and allegations in the proposed second amended complaint." (ECF No. 346-1, at 12).

Rule 16(b)'s good cause requirement applies with equal force to the proposed amendment of Plaintiffs'/Counter Defendants' answer to the joint counterclaim as it does with the proposed amendment of U.S. Home's complaint. *Cf. Nourison Rug Corp.*, 535 F.3d at 298 (applying Rule 16(b) to the defendant's motion for leave to amend his answer, which was filed after the deadline for the amendment of pleadings had passed).  The scheduling order set August 31, 2009, as the deadline for the amendment of all *pleadings*, which includes an answer to a counterclaim, Fed.R.Civ.P. 7(a)(3).  Because good cause to permit the addition of the proposed claims and allegations in the second amended complaint cannot be found here, good cause to add defenses mimicking those claims is likewise missing and will not be allowed.

### B.    iStar's Motion

"Motions for leave to amend counterclaims are subject to the same standards as all motions for leave to amend pleadings." *Ground Zero Museum Workshop v. Wilson*, 813 F.Supp.2d 678, 706

(D.Md. 2011).   As discussed above, iStar must do more than satisfy the liberal standard of Rule 15(a).   It must first meet the mandates of Rule 16(b)(4), which calls for "good cause" to change a scheduling order.

**1.   Good Cause**

In its reply, iStar explains that good cause may be found because its proposed amendments are based on discovery obtained from Lennar in late 2011.   Although somewhat unclear, it appears that iStar received the documents underlying its proposed amendments as part of a 236,000-page production — which Lennar completed only upon court order — sometime between September 26, 2011, and November 23, 2011.   (*Compare* ECF No. 294-2, at 16, *with* ECF No. 333, at 3).   iStar's proposed amendments are also based in part on depositions of Lennar personnel that took place between August 12, 2011, and December 1, 2011.   (ECF No. 333, at 4).   The temporal connection between the time iStar obtained the evidence supporting its proposed amendments and the time it filed its motion for leave to amend[20] is brief enough to suggest timeliness and diligence on the part of iStar.   *See Ground Zero Museum Workshop*, 813 F.Supp.2d at 707 (suggesting that seeking to amend a counterclaim within a month of first obtaining

---

[20] iStar filed its motion on December 22, 2011.

supporting evidence in discovery is an adequate temporal connection to find good cause).[21]

Plaintiffs/Counter Defendants separately question whether the recently obtained information provides support that could not have been uncovered earlier. (ECF No. 315, at 14). Given iStar's uncontested description of Plaintiffs'/Counter Defendants' intransigence during discovery and the court orders needed to ensure Plaintiffs'/Counter Defendants' compliance with its discovery requests, however, it is reasonable to infer that iStar could not have learned of new facts that would prompt it to seek leave to amend its counterclaim any earlier. Moreover, iStar seeks to add three claims sounding in fraud, which differ markedly in nature and substance from the original three declaratory and specific performance (i.e., breach of contract) claims. There is thus no reason to believe that iStar could have, let alone should have, asserted these new claims earlier. *Cf. CompuSpa, Inc. v. Int'l Bus. Machines Corp.*, No. Civ.A. DKC 2002-0507, 2004 WL 1459272, at *2 (D.Md. June 29, 2004) (holding

---

[21] Contrary to Plaintiffs'/Counter Defendants' argument (ECF No. 315, at 14 n.6), iStar has identified specific portions of this recently obtained discovery that support its proposed amendments (*see, e.g.*, ECF No. 294-2, at 9-14). Even if iStar had not cited specific documents or deposition transcript lines, its reference to this recent production generally and the close proximity in time to its motion is likely sufficient to support its counterclaim. *See Ground Zero Museum Workshop*, 813 F.Supp.2d at 707.

that where the "substance of . . . proposed additional claims
essentially mirrors the allegations . . . contained in [the]
original complaint," good cause to amend the complaint to add
the proposed claims is lacking).

From this record, iStar's motion is not untimely, and it
has acted with appropriate diligence in seeking leave to amend.
The good cause requirements of Rule 16(b) are satisfied.

### 2.   Futility of Amendment

Turning to Rule 15(a)(2), "leave to amend should be denied
only when the amendment would be prejudicial to the opposing
party, there has been bad faith on the part of the moving party,
or amendment would be futile." *Matrix Capital Mgmt. Fund, LP*,
576 F.3d at 193.   Plaintiffs/Counter Defendants only contest
iStar's motion on the basis that its amendments would be futile.
(*See* ECF No. 315, at 14-23).   An amendment is futile if it would
fail to withstand a motion to dismiss. *See Perkins v. United
States*, 55 F.3d 910, 917 (4th Cir. 1995).   Counterclaims, like
complaints, may be dismissed for inadequate pleading per Rule
12(b)(6).

Consequently, leave to amend should be denied if the well-
pleaded facts in the proposed new counterclaim do not amount to
a "showing" that the plaintiff is entitled to relief. *See Bell
Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007); *see also
Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (explaining that a

23

"showing" is more than the "mere possibility of misconduct"). In conducting this analysis, the court must consider all well-pleaded allegations as true, *see Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the Counter Claimants, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).

iStar seeks to amend its counterclaim to include three new counts: fraudulent inducement; negligent misrepresentation; and fraudulent concealment. (ECF No. 294-1 ¶¶ 88-122). The tort of fraudulent inducement "means that one has been led by another's guile, surreptitiousness or other form of deceit to enter into an agreement to his detriment." *Rozen v. Greenberg*, 165 Md.App. 665, 674 (2005). "[F]raud in the inducement is a subspecies of fraud." *Sass v. Andrew*, 152 Md.App. 406, 431 (2003). Therefore, as in fraud, to state a claim for fraudulent inducement, a party must allege:

> (1) that a representation made by a party was false . . . (2) that either its falsity was known to that party or the misrepresentation was made with such reckless indifference to truth to impute knowledge to him . . . (3) that the misrepresentation was made for the purpose of defrauding some other person . . . (4) that that person not only relied upon the misrepresentation but had the right to rely upon it with full belief of its truth, and

> that he would not have done the thing from
> which damage resulted if it had not been
> made; and . . . (5) that that person
> suffered damage directly resulting from the
> misrepresentation.

*Lavine v. Am. Airlines, Inc.*, --- A.3d ---, 2011 WL 6003609, at

*4 (Md.Ct.Spec.Ann. Dec. 1, 2011) (citing *B.N. v. K.K.*, 312 Md.

135, 149 (1988)).   Similarly, the elements of negligent

misrepresentation are:

> (1) the defendant, owing a duty of care to
> the plaintiff, negligently asserts a false
> statement; (2) the defendant intends that
> his statement will be acted upon by the
> plaintiff; (3) the defendant has knowledge
> that the plaintiff will probably rely on the
> statement, which, if erroneous, will cause
> loss or injury; (4) the plaintiff,
> justifiably, takes action in reliance on the
> statement; and (5) the plaintiff suffers
> damage proximately caused by the defendant's
> negligence.

*Id.* (citing *Griesi v. Atl. Gen. Hosp. Corp.*, 360 Md. 1, 11

(2000)).   Finally, the elements of fraudulent concealment are:

> (1) the defendant owed a duty to the
> plaintiff to disclose a material fact; (2)
> the defendant failed to disclose that fact;
> (3) the defendant intended to defraud or
> deceive the plaintiff; (4) the plaintiff
> took action in justifiable reliance on the
> concealment; and (5) the plaintiff suffered
> damages as a result of the defendant's
> concealment.

*Blondell v. Littlepage*, 413 Md. 96, 119 (2010).[22]

---

[22] Fraudulent concealment, like fraudulent inducement, is
encompassed by fraud generally.  *See Sass*, 152 Md.App. at 432.

Plaintiffs/Counter Defendants attack the new counts from the perspective of the representations that they believe are at issue. They identify three categories of representations:

> (i) U.S. Home's representations in the Consent . . . , (ii) the provisions in the Second Amendment that Sellers could seek specific performance if U.S. Home defaulted and that Lennar would provide all the cash needed by U.S. Home for Settlement . . . , and (iii) U.S. Home's alleged plan to assign its rights under the Purchase Agreement to a land bank.

(*See* ECF No. 315, at 16).[23] Plaintiffs/Counter Defendants then argue that the representations in the first category were not false and that, even if they were, iStar was not justified in relying on them (*id.* at 16-19); that the representations in the second category were not false (*id.* at 19-20); and that the representations in the third category were not material (*id.* at 20-23). Therefore, they contend, regardless of which new count the representations support, the count would be dismissed.

Because Plaintiffs/Counter Defendants contest only the falsity of the representations, iStar's reliance on those representations, or the materiality of those representations,

---

[23] iStar does not concede that Plaintiffs'/Counter Defendants' categorization of the allegedly fraudulent representations accurately reflects its proposed amended counterclaim; instead, it replies to Plaintiffs'/Counter Defendants' arguments by describing how the allegations as they appear in the proposed amended counterclaim align with the requisite elements of each cause of action. (*See* ECF No. 333, at 8-18).

they are correct that it does not matter which cause of action is analyzed vis-à-vis each category of representations. Indeed, fraudulent inducement, negligent misrepresentation, and fraudulent concealment all require proof that U.S. Home made a false statement or failed to disclose a fact that it had a duty to disclose. Moreover, each cause of action requires iStar to show that iStar justifiably relied on the statement or nondisclosure. *See, e.g.*, *Lavine*, 2011 WL 6003609, at *5 (analyzing the element of justifiable reliance identically under negligent misrepresentation and fraud); *see also Cent. Truck Ctr., Inc. v. Cent. GMC, Inc.*, 194 Md.App. 375, 394-95 (2010) ("To prove any of its asserted tort claims — fraud, concealment, or negligent misrepresentation — the burden rested with [plaintiff] to prove that it justifiably relied on a misrepresentation by [defendant]."). As to materiality, that concept is merely an aspect of justifiable reliance and not a distinct element of any of the three causes of action. *See Rozen*, 165 Md.App. at 675; *Ward Dev. Co. v. Ingrao*, 63 Md.App. 645, 654-55 (1985). Thus, Plaintiffs'/Counter Defendants' argument regarding the materiality of its representations to iStar is better analyzed in terms of justifiable reliance, which, as already noted, is a common requirement of all three causes of action.

27

Despite Plaintiffs'/Counter Defendants' efforts to streamline their arguments, however, their position ultimately lacks merit.

### a.   "U.S. Home's representations in the Consent"

According to Plaintiffs/Counter Defendants, all of U.S. Home's statements in the Consent are true.  In iStar's proposed amended counterclaim, however, iStar clearly alleges that certain representations in the Consent are substantively false. (*See* ECF No. 294-1 ¶¶ 89-91, 93-94).  Because iStar's allegations must be accepted on their face in determining whether its proposed amendments would be futile, Plaintiffs'/Counter Defendants' contention that iStar's proposed new claims would fail for lack of falsity as to this first category of representations will be rejected.[24]

---

[24] Plaintiffs/Counter Defendants cite *Adkins v. Labor Ready, Inc.*, 205 F.R.D. 460 (S.D.W.Va. 2001), for the proposition that an amendment will be futile if it would be unable to survive a motion for summary judgment.  (ECF No. 315, at 18).  They note that "iStar has offered no evidence to support these assertions, and there is none."  (*Id.*).  The *Adkins* court, however, relied in part on cases from the Second and Seventh Circuits for that holding, *Adkins*, 205 F.R.D. at 462-63, and those cases had already progressed to the summary judgment stage.  In contrast, the Fourth Circuit has made clear that futility of amendment is defined as being unable to survive a motion to dismiss, when the issue arises earlier. *Perkins*, 55 F.3d at 917; *see also United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) (holding that amending a complaint would be futile "if the proposed amended complaint fails to satisfy the requirements of the federal rules" (internal quotation marks omitted)).

Plaintiffs'/Counter Defendants' argument that iStar's proposed new claims would fail because iStar could not have justifiably relied on the representations in this first category will likewise be rejected. Justifiable reliance "turns on whether [the representations] were more than a 'statement of opinion, judgment or expectation.'" *Goldstein v. Miles*, 159 Md.App. 403, 436 (2004) (quoting *Buschman v. Codd*, 52 Md. 202, 207 (1879)). In other words, where representations are "statements of expectation, prediction, or future intention," it is generally not reasonable to rely upon them, and where representations are "statements of present intention," it is generally reasonable to rely upon them. *See Weisman v. Connors*, 312 Md. 428, 454-55 (1988); *see also Griesi*, 360 Md. at 20-21 (noting that statements regarding past or present facts may be justifiably relied upon while predictive statements may not). Here, as Plaintiffs/Counter Defendants themselves note, "the Consent is simply . . . a statement of facts in existence, not a representation as to the future." (ECF No. 315, at 17). For example, iStar takes issue with the following representations in the Consent:

- that [Lennar] had "no existing defenses, offsets, claims or credits with respect to performance of [its] obligations under the Purchase [Agreement] or Contract for Services"

29

- that "there exists no condition or circumstance known to [Lennar] as of the date hereof which, with the giving of notice or the passage of time, or both, would result in a termination right by [Lennar] under the Purchase [Agreement] or Contract for Services, respectively"

(*See, e.g.*, ECF No. 294-1 ¶ 89). Accordingly, iStar could have justifiably relied on these sorts of representations, and it cannot be said that permitting amendment of the counterclaim would be futile on this basis.

**b.    "[T]he provisions in the Second Amendment that Sellers could seek specific performance if U.S. Home defaulted and that Lennar would provide all the cash needed by U.S. Home for Settlement"**

According to Plaintiffs/Counter Defendants, the second category of representations comprises "the provisions in the Second Amendment that (i) Sellers would have a specific performance remedy if U.S. Home defaulted and (ii) Lennar guaranteed to furnish all the cash that U.S. Home needed to close on the Purchase Agreement." (ECF No. 315, at 19). They point to paragraphs 27 and 28 of the Second Amendment as containing the allegedly misleading statements and argue that they are not false. (*Id.* at 19-20).

Although iStar does not respond to Plaintiffs'/Counter Defendants' argument quite as directly with respect to these

statements, it does point to the following relevant allegation
in its proposed amended counterclaim:

> Lennar . . . continuously and intentionally
> failed to disclose and intentionally
> suppressed and concealed material facts
> regarding the truth of these representations
> and warranties — namely, . . . that it
> believed it could terminate the [Purchase
> Agreement] even with the specific
> performance guaranty in the Second
> Amendment, [and] that it needed to find a
> joint-venture partner or land bank who would
> be the party to actually close on the
> [Purchase Agreement] and prevent the
> Property at issue from ever appearing on
> Lennar's balance sheet . . . .

(ECF No. 294-1 ¶ 119).  In light of this allegation, which must
be taken as true, the potential falsity of the second category
of alleged misrepresentations identified by Plaintiffs/Counter
Defendants is apparent.  Thus, the argument that iStar's
proposed new claims would be futile must be rejected.

  c.   **"U.S. Home's alleged plan to assign its rights under
       the Purchase Agreement to a land bank"**

    Finally, Plaintiffs/Counter Defendants identify as a third
category of representations any "allegations that U.S. Home
planned to assign its rights under the Purchase Agreement to a
land bank before closing."  (ECF No. 315, at 20).
Plaintiffs/Counter Defendants imply that iStar was not justified
in its reliance on these types of representations because they
could not have been material.  (*Id.*); *see Rozen*, 165 Md.App. at
675; *Ward Dev. Co.*, 63 Md.App. at 654-55.  Specifically,

Plaintiffs/Counter Defendants contend that because the use of a land bank in real estate transactions "is common [but] is not a requirement" and that because the Purchase Agreement generally contemplated the possibility of using a land bank, the fact that they may have represented an intention to use a land bank to consummate the transaction could not have been material. (*See* ECF No. 315, at 21-22).

Plaintiffs/Counter Defendants miss the crux of iStar's grievance, however. Regarding a land bank, iStar alleges that Lennar "failed to disclose and intentionally suppressed and concealed . . . that it *needed* to find a joint-venture partner or land bank who would be the party to actually close on the [Purchase Agreement] and prevent the Property at issue from ever appearing on Lennar's balance sheet, *and that its attempts to find a joint-venture partner or land bank failed*." (ECF No. 294-1 ¶ 119) (emphases added). In other words, iStar does not allege that the potential use of a land bank generally was problematic. Rather, it alleges that the use of a land bank was, in effect, an unfulfilled contingency to Lennar's closing of the deal, the nondisclosure of which was material. As an omission of "present intention," iStar could have justifiably

relied on it.[25]  *See Weisman*, 312 Md. at 454-55.  iStar's newly added claims may be able to proceed on this basis and, accordingly, are not futile.

In sum, Plaintiffs/Counter Defendants offer no compelling reason to find that iStar's proposed amendments to its counterclaim would be futile.  iStar's motion will be granted in full, and its attached "First Amended Counterclaim" (ECF No. 294-1) will be deemed the operative pleading setting forth its counterclaim.

### III. Plaintiffs'/Counter Defendants' Omnibus Motion

Plaintiffs'/Counter Defendants' omnibus motion seeks four different types of relief.  First, it requests that the court strike a portion of iStar's proposed amended counterclaim that is based on Exhibit 29 of iStar's motion for leave ("Exhibit 29")[26] because that exhibit is privileged.  (ECF No. 301-1, at 8).  Second, it requests that a portion of iStar's motion for leave that discusses Exhibit 29 be sealed for the same reason.  (*Id.* at 9).  Third, it requests that iStar's motion for leave be

---

[25] Plaintiffs/Counter Defendants argue that to the extent iStar alleges that finding a land bank was necessary to close, the evidence to date does not bear that out.  (*See* ECF No. 315, at 22-23).  Again, Counter Defendants misread iStar's burden at this stage.  In determining whether iStar's proposed amendments to its counterclaim would be futile, new allegations must be accepted as true as they would be on a motion to dismiss.  *See Perkins*, 55 F.3d at 917.

[26] Exhibit 29 is Bates No. 3998-4009.

stayed pending resolution of a particular motion that Plaintiffs filed on September 2, 2011 ("the reconsideration motion"). (*Id.*).  And fourth, it requests attorneys' fee and costs related to the omnibus motion.  (*Id.*).

The first three requests are easily disposed of.  This case was referred to Magistrate Judge Connelly for resolution of all discovery disputes and for determination of non-dispositive matters.  Judge Connelly issued an order on August 19, 2011 ("the Original Order"), holding that Plaintiffs/Counter Defendants waived the attorney-client privilege and work product protection as to certain documents, including, of relevance here, Exhibit 29.   Then, on September 2, 2011, Plaintiffs/Counter Defendants filed the reconsideration motion. On January 18, 2012, Judge Connelly issued an order ("the Reconsideration Order") vacating a portion of the Original Order and holding that Exhibit 29 was in fact privileged or protected. iStar subsequently objected to the Reconsideration Order pursuant to Rule 72.  On July 23, 2012, this court sustained iStar's objection and set aside the Reconsideration Order.  The practical effect of the court's decision was a reinstatement of most of the Original Order, which deemed all privileges waived as to Exhibit 29.  Accordingly, Plaintiffs'/Counter Defendants' basis to strike the portions of iStar's proposed amended counterclaim and to seal part of iStar's motion is without

34

merit, and the first two requests for relief will be denied. Because the reconsideration motion has already been adjudicated, the third request for relief will be denied as moot.

The fourth request for relief requires more analysis. Although the court's recent holdings in this case have rendered the omnibus motion substantively moot, Plaintiffs/Counter Defendants suggest that there remains a question of whether iStar's motion for leave was procedurally improper, thus potentially warranting an award of attorneys' fees and costs to them. (ECF No. 301-1, at 9 ("iStar should be ordered to pay . . . attorneys' fees and costs regardless of whether the final resolution of the [reconsideration motion] is adverse to U.S. Home.")). Specifically, Plaintiffs/Counter Defendants argue that "[u]nder Rule 26(b)(5)(B), iStar should not have used Exhibit 29 . . . until final resolution of U.S. Home's [reconsideration motion]." (ECF No. 328, at 6). Rule 26(b)(5)(B) reads as follows:

> If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; *must not use or disclose the information until the claim is resolved*; must take reasonable steps to retrieve the information if the party disclosed it before being notified;

> and may promptly present the information to
> the court under seal for a determination of
> the claim. The producing party must preserve
> the information until the claim is resolved.

Fed.R.Civ.P. 26(b)(5)(B) (emphasis added). Here, iStar filed its motion for leave to amend, which was based in part on Exhibit 29, on December 22, 2011 — after Plaintiffs filed the reconsideration motion but before Judge Connelly issued the Reconsideration Order. Thus, Plaintiffs'/Counter Defendants' position is that the claim of privilege with respect to Exhibit 29 was not "resolved" when iStar moved for leave.

Plaintiffs/Counter Defendants fail to surmount an obvious hurdle, however: the claim of privilege with respect to Exhibit 29 was resolved *by the Original Order*. Concomitantly, they point to no authority — nor is the court aware of any — that holds that the act of filing a motion for reconsideration somehow suspends a court order's resolution of a claim, whether under Rule 26(b)(5)(B) or any other rule.[27] As iStar points out (ECF No. 314, at 5), at least one court has suggested the

---

[27] To the extent Plaintiffs/Counter Defendants mean to suggest that a claim is not resolved for purposes of Rule 26(b)(5)(B) until the time for reconsideration has passed, such a conclusion is wholly illogical given that an interlocutory order such as the Original Order "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed.R.Civ.P. 54(b). Under this reasoning, a claim of privilege would not be resolved until a case has been fully adjudicated, which defeats the practicality of Rule 26.

opposite.  *See New Pac. Overseas Grp. (USA) Inc. v. Excal Int'l Dev. Corp.*, Nos. 99 Civ. 2436 DLC, 99 Civ. 3581, 2000 WL 377513, at *7 (S.D.N.Y. Apr. 12, 2000) ("[The] position that a *party* itself may stay an order merely by filing a motion for reconsideration is plainly frivolous.  A court's order remains in force until it is vacated or stayed . . . ." (citing *Tekkno Labs., Inc. v. Perales*, 933 F.2d 1093, 1099 ($2^d$ Cir. 1991))), *appeal dismissed*, 252 F.3d 667 ($2^d$ Cir. 2001).  Therefore, it was not contrary to Rule 26(b)(5)(B) for iStar to rely on Exhibit 29 when it did.  On the current record, there is no indication that Plaintiffs/Counter Defendants are entitled to attorneys' fees and costs related to the omnibus motion at this time, and this portion of their motion will be denied.

## IV.  Motions to Seal

A motion to seal must comply with Local Rule 105.11, which provides:

> Any motion seeking the sealing of pleadings, motions, exhibits or other papers to be filed in the Court record shall include (a) proposed reasons supported by specific factual representations to justify the sealing and (b) an explanation why alternatives to sealing would not provide sufficient protections. The Court will not rule upon the motion until at least 14 days after it is entered on the public docket to permit the filing of objections by interested parties. Materials that are the subject of the motion shall remain temporarily sealed pending a ruling by the Court. If the motion is denied, the party

                    making    the    filing    will    be    given    an
                    opportunity to withdraw the materials.

This rule endeavors to protect the common law right to inspect
and copy judicial records and documents, *Nixon v. Warner
Commc'ns, Inc.*, 435 U.S. 589, 597 (1978), while recognizing that
competing interests sometimes outweigh the public's right of
access, *In re The Knight Publ'g Co.*, 743 F.2d 231, 235 (4th Cir.
1984).

     Before sealing any documents, the court must provide the
non-moving party with notice of the request to seal and an
opportunity to object. *Id.* This notice requirement may be
satisfied by either notifying the persons present in the
courtroom or by docketing the motion "reasonably in advance of
deciding the issue." *Id.* at 234. Finally, the court should
consider less drastic alternatives to sealing, such as filing
redacted versions of the documents. If the court decides that
sealing is appropriate, it should also provide reasons,
supported by specific factual findings, for its decision to seal
and for rejecting alternatives. *Id.* at 235.

     Plaintiffs/Counter Defendants seek to seal (1) their reply
brief and (2) Exhibit A to their motion for leave to file
supplemental memorandum, which is the actual memorandum of law
in support of the motion. In both motions to seal, however,
Plaintiffs/Counter Defendants state only that they seek to seal

                                  38

the specified materials because "Defendants have designated [them] as confidential." (ECF No. 373, at 1; ECF No. 400, at 1). Furthermore, they cursorily argue that "[n]o alternative to sealing the [materials] would adequately protect the confidential information discussed therein." This explanation is insufficient to satisfy the "specific factual representations" that Local Rule 105.11 requires. *See Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 455 F.Supp.2d 399, 438 (D.Md. 2006). Thus, Plaintiffs'/Counter Defendants' motion to seal the specified materials will be denied.

Plaintiffs/Counter Defendants also seek to seal their opposition to iStar's motion for leave to file first amended counterclaim as well as two exhibits, Exhibits 7 and 8, to that opposition. iStar seeks to seal three exhibits to its motion for leave, Exhibits 29, 31, and 32. In their respective motions to seal, however, the parties state only that they seek to seal the specified materials pursuant to the May 4, 2010, "stipulated order regarding confidentiality of discovery material and inadvertent disclosure of privileged material." (ECF No. 296, at 2; ECF No. 316, at 2). This explanation is also insufficient to satisfy the "specific factual representations" that Local Rule 105.11 requires. *Sensormatic Sec. Corp.*, 455 F.Supp.2d at 438.

Accordingly, the parties' requests to seal the specified materials will be denied. They will be given fourteen days to renew the motions to seal with sufficient justification. If they choose not to do so, the materials will be unsealed after that time.

## V. iStar's Motion for Sanctions

On May 25, 2012, iStar filed a motion for sanctions against Plaintiffs/Counter Defendants related to their seeking amendments to their pleadings. (ECF No. 404). Pursuant to Local Rule 105.8.b, no response to such a motion is required unless ordered by the court. Although the court did not request a response, Plaintiffs/Counter Defendants asked for and were granted "extra" time to respond. (ECF Nos. 413, 414). The time for this response has now passed without any additional action from Plaintiffs/Counter Defendants.

iStar urges the imposition of sanctions on Plaintiffs/Counter Defendants pursuant to Federal Rule of Civil Procedure 11. It offers a variety of grounds for sanctions, including: that Counts Six, Nine, and Ten rely impermissibly on the Apex Report; that Count Eleven describes a claim that does not exist at law in Maryland; that Counts Eleven and Twelve depend entirely on the First Action, which iStar was not a part of; and that Count Eight similarly advances a claim for which iStar cannot be liable.

Rule 11 permits a district court to impose sanctions. Among other things, the rule contemplates sanctions if an attorney submits a paper to the court for an improper purpose, *Robeson Def. Comm. v. Britt (In re Kunstler)*, 914 F.2d 505, 518 (4th Cir. 1990); advances a wholly frivolous clam, defense, or legal contention, *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 153 (4th Cir. 2002); or makes a factual contention entirely unsupported by any information obtained before filing, *Brubaker v. City of Richmond*, 943 F.2d 1363, 1373 (4th Cir. 1991). *See generally* Fed.R.Civ.P. 11(b). In determining whether an attorney violates Rule 11, the court applies an objective standard of reasonableness. *McGahren v. First Citizens Bank & Trust Co. (In re Weiss)*, 111 F.3d 1159, 1170 (4th Cir. 1997).

In this case, given the complexity of the underlying real estate transaction from which this dispute arose, the numerous legal issues, and the protracted nature of the proceedings, none of iStar's reasons for imposing Rule 11 sanctions on Plaintiffs/Counter Defendants is compelling. First, although it is not entirely clear to what extent Plaintiffs/Counter Defendants are aware of the contents of the Apex Report, Counts Six, Nine, and Ten do not rely exclusively on that report as a factual predicate. Second, the precise relationship between iStar and Sellers is not so obvious and has not been otherwise sufficiently adjudicated to render unreasonable

41

Plaintiffs'/Counter Defendants' assertion of Counts Eight, Eleven, and Twelve against iStar.   And third, while it is true that a breach of the implied duty of good faith and fair dealing is not a recognized independent cause of action in this state, Plaintiffs'/Counter Defendants' misreading of case law and their stated reasons for bringing that claim are not so egregious to invite sanctions.   Consequently, iStar's motion for Rule 11 sanctions against Plaintiffs/Counter Defendants will be denied.

## VI.   U.S. Home's Motion for Extension of Time

On March 5, 2012, U.S. Home served a subpoena on third party The Columbia Bank ("the Subpoena"), the scope of which has been a source of much contention between U.S. Home and Bevard.[28] Bevard sought to quash the Subpoena on March 9, 2012.   (ECF No. 356).   After full briefing, Judge Connelly granted in part and denied in part the motion to quash, deeming certain target documents irrelevant.   (ECF No. 387).   U.S. Home moved for partial reconsideration of Judge Connelly's decision as to these target documents (ECF No. 394), which Judge Connelly denied on June 18, 2012 (ECF No. 415).   U.S. Home seeks an extension of time to file objections to this June 18, 2012, order.   It proposes a deadline that is fourteen days after the court rules on Plaintiffs'/Counter Defendants' motion for leave to amend

---

[28] Various non-parties joined Bevard in contesting the Subpoena.

their pleadings because, it argues, the outcome of that motion
may affect what objections it chooses to assert.  Bevard opposes
U.S. Home's request.[29]

Although U.S. Home filed its motion before the original
time for filing objections expired, it must nonetheless show
"good cause" for extending the deadline.  *See* Fed.R.Civ.P.
6(b)(1)(A); *see also* 14-72 George K. Walker & Joseph C. Spero,
*Moore's Federal Practice – Civil* ¶ 72.10[2] (2012) ("The 14-day
limit for filing an objection to a magistrate judge's pretrial
order or recommendation is governed by Rule 6.").  This standard
is not onerous.  *See* 4B Charles Alan Wright et al., *Federal
Practice and Procedure* § 1165 (3$^d$ ed. 2012) ("[A]n application
for the enlargement of time under Rule 6(b)(1) normally will be
granted in the absence of bad faith on the part of the party
seeking relief or prejudice to the adverse party.").

Here, however, U.S. Home's sole justification for extending
the objections deadline — that the court's ruling on
Plaintiffs'/Counter Defendants' motion for leave to amend their
pleadings may impact its decision whether to file any objections

---

[29] U.S. Home states that Bevard "consented to an extension
of twenty-one (21) days (or until July 26, 2012)."  (ECF No.
420, at 1 n.1).  In its opposition, Bevard does not acknowledge
this concession.

to the June 18, 2012, order at all (ECF No. 420, at 5)[30] — fails to satisfy the relatively minimal requirements imposed by Rule 6.  Plaintiffs/Counter Defendants moved for leave to amend their pleadings on February 24, 2012 — before U.S. Home served the Subpoena.  But U.S. Home *never* argued that Plaintiffs'/Counter Defendants' motion for leave to amend their pleadings may impact the discoverability of the target documents either in its opposition to the motion to quash or in its motion for partial reconsideration. (*See* ECF Nos. 371, 394).  It is rather suspect that after multiple failed attempts to convince Judge Connelly of the pertinence of the target documents, U.S. Home seeks to inject this previously-available theory into the discussion at this juncture.  To allow such relitigation of a settled issue now would unfairly prejudice Bevard and waste judicial resources.  Consequently, U.S. Home's proffered reason for waiting to file objections to the July 18, 2012, order is untenable, and its motion for extension of time will be denied.

---

[30] Because some of these possible objections are unrelated to Plaintiffs' motion for leave to amend the pleadings (*see id.* at 4-5), the denial of that motion does not moot U.S. Home's request for an extension.

**VII. Conclusion**

A separate order will follow embodying the foregoing decisions.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
