IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

U.S. HOME CORPORATION         :

                              :

      v.                   :   Civil Action No. DKC 08-1863

                              :

SETTLERS CROSSING, LLC, et al.

                              :

**MEMORANDUM OPINION**

Presently pending and ready for review in this suit for breach of contract, fraud, and declaratory judgment is the motion for reconsideration or, in the alternative, for a protective order, and for a stay filed by Plaintiff/Counter Defendant U.S. Home Corporation and Counter Defendants Lennar Corporation (collectively, "Plaintiffs/Counter Defendants"). (ECF No. 439).  The issues have been fully briefed, and the court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the following reasons, the motion will be denied.

**I.  Background[1]**

On October 26, 2010, Defendant/Counter Claimant iStar Financial, Inc. ("iStar"), notified current counsel for Plaintiffs/Counter Defendants, the law firm of Womble Carlyle Sandridge & Rice, PLLC ("Womble Carlyle"), that it intended to

---

[1] A complete recitation of the underlying facts in this case is available at *U.S. Home Corp. v. Settlers Crossing, LLC*, No. DKC 2008-1863, 2010 WL 958034 (D.Md. Mar. 11, 2010).

serve a subpoena on Plaintiffs'/Counter Defendants' former counsel, the law firm of Greenberg Traurig, LLP ("Greenberg Traurig"), regarding non-privileged materials. (ECF No. 329-16). According to the Declaration of Louis J. Rouleau, a member of Womble Carlyle, shortly after being notified about the subpoena, Mr. Rouleau "reached out to Greenberg Traurig to determine how that firm planned on responding to the subpoena," but that "initial contact with Greenberg Traurig did not result in a substantive conversation" because the subpoena had not yet been served. (ECF No. 343-2, Rouleau Decl., ¶ 3). On December 15, 2010, Greenberg Traurig notified Womble Carlyle that it had been served with the subpoena. (ECF No. 343-2, Rouleau Decl., ¶ 4). Later that day, Louis J. Rouleau, a member of Womble Carlyle, telephoned Timothy Bass of Greenberg Traurig to discuss it. (*Id.*).[2]

---

[2] Mr. Rouleau describes the phone call he had with Mr. Bass as follows:

> When I spoke with Mr. Bass on December 15, 201[0], I requested to coordinate with and assist Greenberg Traurig in regard to the subpoena, and mentioned the need to protect U.S. Home's privileges. In response, Mr. Bass declined my offer and assured me that Greenberg Traurig would handle the matter properly on its own, stating something to the effect of: "We got it. We know how to respond."

(*Id.* ¶ 5).

In January 2011, Greenberg Traurig produced eighty-one documents, consisting of 4,199 pages of material, to iStar. (*See* ECF No. 329-18). On January 25, 2011, iStar notified Womble Carlyle that it had received Greenberg Traurig's production and offered to provide a copy of it. (*Id.*). Some six weeks later, on March 11, 2011, Womble Carlyle sent a request for a cost estimate for getting a copy of the production, to which iStar responded the same day. (ECF No. 329-19). Womble Carlyle ultimately requested a full copy of Greenberg Traurig's production four days later, on March 15, 2011. (ECF No. 329-20). On or about April 13, 2011, Womble Carlyle discovered that certain documents within Greenberg Traurig's production should have been withheld on the basis of the attorney-client privilege and the work product protection. (ECF No. 343-2 ¶ 9).

After several unsuccessful attempts to retrieve the allegedly privileged documents without court intervention, Plaintiffs filed a motion "for enforcement of stipulated order regarding inadvertent disclosure of privileged material" on May 20, 2011. (ECF No. 211). Plaintiffs sought to enforce a court-approved agreement between the parties ("the Confidentiality Order") that set forth a protocol whereby inadvertently disclosed documents could be "clawed back." Pursuant to the Confidentiality Order, however, the requesting party could

3

retain a copy of the disclosed documents if it disputed the claim of privilege or protection by the producing party.

On August 19, 2011, after conducting a motions hearing, Judge Connelly issued an order granting in part and denying in part Plaintiffs' motion ("the Original Order"). (ECF No. 244). He held that as to all but one of the documents at issue ("the contested documents"), Plaintiffs waived the attorney-client privilege and work product protection.[3] Plaintiffs then moved for reconsideration. (ECF No. 253). On January 18, 2012, Judge Connelly issued an order vacating a portion of the Original Order ("the Reconsideration Order"), holding that all of the contested documents remained privileged or protected. (ECF No. 317). Less than two weeks later, iStar filed an objection to the Reconsideration Order (ECF No. 329), which, on July 23, 2012, the court sustained (ECF Nos. 433, 434).

On August 6, 2012, Plaintiffs/Counter Defendants filed the present motion seeking reconsideration of the court's July 23, 2012, memorandum opinion and order. (ECF No. 439). iStar opposed the motion for reconsideration on August 23, 2012 (ECF

_____

[3] Specifically, the contested documents are:  Bates No. 3320, Bates No. 3755-57, Bates No. 3578, Bates No. 3760-61, Bates No. 3762-64, Bates No. 3998-4009, Bates No. 4010-21, and Bates No. 4027-44.  It is undisputed that the contested documents were all initially subject to the attorney-client privilege and/or the work product protection.

No. 449), and Plaintiffs/Counter Defendants filed a reply brief on September 10, 2012 (ECF No. 457).

## II.  Motion for Reconsideration

Plaintiffs/Counter Defendants request reconsideration "'to correct a clear error of law or prevent manifest injustice,'" citing *Greenbelt Ventures, LLC v. Wash. Metro. Area Transit Auth.*, No. 08:10-CV-157-AW, 2011 WL 2175209 (D.Md. June 2, 2011), which relied on Federal Rule of Civil Procedure 59(e). Rule 59(e) governs where there has been a final "judgment." Their motion, however, is more appropriately analyzed under Rule 54, as a motion for reconsideration of an interlocutory order under Rule 54(b).  *See Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1469 (4th Cir. 1991) ("Rule 59(e) is equally applicable only to a final judgment.").  The July 23, 2012, order was not a final "judgment."  *See* Fed.R.Civ.P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action . . . and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.").

The precise standard governing a motion for reconsideration of an interlocutory order is unclear.  While the standards articulated in Rules 59(e) and 60(b) are not binding in an

analysis of Rule 54(b) motions, *see Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514 (4th Cir. 2003), courts frequently look to these standards for guidance in considering such motions, *Akeva L.L.C. v. Adidas Am., Inc.*, 385 F.Supp.2d 559, 565-66 (M.D.N.C. 2005).

> Public policy favors an end to litigation and recognizes that efficient operation requires the avoidance of re-arguing questions that have already been decided. Most courts have adhered to a fairly narrow set of grounds on which to reconsider their interlocutory orders and opinions. Courts will reconsider an interlocutory order in the following situations: (1) there has been an intervening change in controlling law; (2) there is additional evidence that was not previously available; or (3) the prior decision was based on clear error or would work manifest injustice.

*Id.* (citations omitted); *see also Beyond Sys., Inc. v. Kraft Foods, Inc.*, No. PJM-08-409, 2010 WL 3059344, at *1-2 (D.Md. Aug. 4, 2010) (applying this three-part test when evaluating a motion for reconsideration under Rule 54(b)). A motion for reconsideration under Rule 54(b) may not be used merely to reiterate arguments previously rejected by the court. *Beyond Sys., Inc.*, 2010 WL 3059344, at *2.

Plaintiffs/Counter Defendants advance three arguments for reconsideration, none of which compels revision of the court's prior decision. First, they argue that leaving the court's July 23, 2012, order intact would constitute manifest injustice.

Second, they argue that the court misread the Fourth Circuit's opinion in *Hanson v. United States Agency for International Development*, 372 F.3d 286 (4th Cir. 2004), when it found that case non-dispositive.   And third, they re-argue that they satisfied the requirements of finding inadvertent waiver of the contested documents under Federal Rule of Evidence 502.

### A.   Manifest Injustice

Plaintiffs/Counter Defendants contend that "even if *Hanson* does not preclude a waiver . . . and Plaintiffs did not satisfy Rule 502(b)," the court's July 23, 2012, order should be vacated in the "interests of justice and fairness."   (ECF No. 439-1, at 6).   Plaintiffs/Counter Defendants then go on to cite a number of cases that demonstrate circumstances in which a court has relied on the "interests of justice" to find that an inadvertent disclosure of a privileged document did not constitute a waiver. (*See, e.g., id.* at 6 (citing *Peterson v. Bernardi*, 262 F.R.D. 424 (D.N.J. 2009)).   Crucially, Plaintiffs/Counter Defendants do not cite any case in which a court has granted a motion for reconsideration based on "manifest injustice."   Thus, it appears that Plaintiffs/Counter Defendants improperly conflate two different standards.

The cases relied on by Plaintiffs/Counter Defendants merely address the same issue that was already adjudicated in the July 23, 2012, order:   whether an inadvertent disclosure of a

7

privileged document constitutes a waiver.   The reference to the "overriding interests in justice" in these cases have to do with a multi-factor test that several courts, including courts within this district, applied to situations involving an inadvertent disclosure prior to the enactment of Federal Rule of Evidence 502.   *See, e.g.*, *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 259 (D.Md. 2008).[4]   The reference has nothing to do with whether reconsideration is warranted.   *See, e.g.*, *Peterson*, 262 F.R.D. at 428-29.   In other words, Plaintiffs/Counter Defendants, in effect, only reiterate previously-made arguments by contending that the "interests of justice" militate a finding of no waiver; they do not present any reason to alter the July 23, 2012, order.[5]

   **B.   *Hanson* and Rule 502**

   Plaintiffs/Counter Defendants re-argue that *Hanson* is dispositive of the entire matter.   They do not, however, proffer

---

   [4] Because Rule 502 did not "supplant applicable waiver doctrine generally," however, it is not uncommon for courts to look to such multi-factor tests today.   *See* Fed.R.Evid. 502 explanatory note (revised 11/28/2007); *see also* 8 Charles Alan Wright et al., *Federal Practice and Procedure* § 2016.3 (3$^{d}$ ed. 2012) (noting that "the pre-2008 case law will remain pertinent" to applying Rule 502).

   [5] Separately, whether iStar's counsel may have violated an ethical duty to notify Plaintiffs'/Counter Defendants' of the possible disclosure of privileged documents is not an issue properly before the court and, moreover, is not a sufficient basis for setting aside the July 23, 2012, order.

any new evidence that was previously unavailable, advance any intervening change in controlling law, or identify any clear error that would warrant revising the court's earlier conclusion.    Instead, Plaintiffs/Counter Defendants merely reiterate arguments that were previously rejected.

For example, Plaintiffs/Counter Defendants assert that in *Hanson*, "the Fourth Circuit held that an attorney's unilateral disclosure does not waive the client's privilege *unless the client authorized the disclosure*, in which even a waiver by counsel is possible." (ECF No. 439-1, at 13).   They go on to point out that "it is undisputed . . . that neither Plaintiffs nor Womble Carlyle authorized Greenberg Traurig to disclose Plaintiffs' privilege documents." (*Id.*).   As the court already explained in its prior opinion, however, "*Hanson* crucially does not address whether Plaintiffs *in fact* waived privilege as to the contested documents." (ECF No. 433, at 17 (citing *Hanson*, 372 F.3d at 294)).    Plaintiffs/Counter Defendants fail to recognize that *Hanson* does not fully answer the question of whether a waiver occurs where an attorney discloses a privileged document without the client's consent.   While *Hanson* certainly holds that this scenario does not constitute an *intentional* waiver by the client, it does not address whether the disclosure is nonetheless *inadvertent*.   Thus, Rule 502 is necessarily implicated.

With respect to Plaintiffs'/Counter Defendants' contention that, even if Rule 502 were applicable, they satisfied its requirements, Plaintiffs/Counter Defendants again do not submit any previously-unavailable new evidence, point to any intervening change in relevant law, or pinpoint any clear error that would permit revisiting the court's holding that privilege was waived as to the contested documents.  Instead, Plaintiffs repeatedly stress that Greenberg Traurig was a third party over whom Womble Carlyle had no control.  (*See, e.g.*, 439-1, at 18).  For the reasons already stated in the court's prior opinion, this position is simply untenable.  Furthermore, if Greenberg Traurig *truly* were a third party and not in any way an agent (or former agent) of Plaintiffs/Counter Defendants, Plaintiffs Counter Defendants likely would have waived privilege as to the contested documents by disclosing those items to Greenberg Traurig.  *See Newman v. State*, 384 Md. 285, 306 (2004) ("[G]enerally the presence of a third party will destroy the attorney-client privilege." (citing *E.I. Dupont de Nemours & Co. v. Forma-Pack, Inc*, 351 Md. 396, 416 (1998))).  No matter how the relationship among Plaintiffs/Counter Defendants, Womble Carlyle, and Greenberg Traurig is viewed, the disclosure of the contested documents constituted a waiver of all privileges.  In sum, Plaintiffs/Counter Defendants fail to demonstrate any

compelling reason to reconsider the court's July 23, 2012, order.

## III. Motion for Protective Order

In the alternative, Plaintiffs/Counter Defendants request a protective order "bar[ring] use of the contested documents against Plaintiffs and strik[ing] iStar's proposed new counterclaims." (ECF No. 439-1, at 26). Rule 26(c) provides, in pertinent part, that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed.R.Civ.P. 26(c)(1). To that end, Plaintiffs/Counter Defendants argue that iStar improperly used the contested documents in contravention of Rule 26(b)(5)(B), which states:

> If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party . . . must not use or disclose the information until the claim is resolved . . . .

Fed.R.Civ.P. 26(b)(5)(B). Specifically, Plaintiffs/Counter Defendants take issue with iStar's reliance on the contested documents in a June 6, 2011, brief, which was filed more than two months before Judge Connelly first resolved the privilege status of the contested documents via the Original Order. (*See* ECF No. 439-1, at 27-28 (citing ECF No. 212)).

What Plaintiffs/Counter Defendants fail to acknowledge, however, is that the June 6, 2011, brief that iStar filed was part of the motions practice that resulted in the Original Order.  In other words, iStar discussed the contested documents only to resolve the question of privilege itself.  It would be wholly illogical to read Rule 26(b)(5)(B) as prohibiting the use of documents "subject to a claim of privilege" when resolving that very claim of privilege.

Accordingly, Plaintiffs/Counter Defendants fail to show good cause for issuing a protective order.  Their motion will be denied.  Moreover, because Plaintiffs'/Counter Defendants' basis to strike the portions of iStar's amended counterclaim is without merit, that request for relief will also be denied.

## IV.  Conclusion

For the foregoing reasons, the motion for reconsideration filed by Plaintiffs/Counter Defendants U.S. Home Corporation and Lennar Corporation will be denied.  A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge

12