IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

U.S. HOME CORPORATION                :

                                     :

          v.                         :   Civil Action No. DKC 08-1863

                                     :

SETTLERS CROSSING, LLC, et al.       :

                                     :

## MEMORANDUM OPINION

On January 22, 2015, following a post-trial motions hearing on several unresolved issues, the undersigned issued a memorandum opinion and final judgment ("the Judgment") in this case involving a contract dispute over the sale of 1,250 acres of land in Prince George's County, Maryland (the "Property").[1] (ECF Nos. 730 and 731). As part of the Judgment, Defendant/Counter-Plaintiff iStar Financial, Inc. ("iStar") was awarded specific performance of the parties' Purchase and Sale Agreement ("PSA" or "Agreement")[2] and Plaintiff/Counter-Defendant

---

[1] This memorandum opinion includes only the facts and arguments relevant to the narrow issues raised in the parties' pending motions. A full factual description of the dispute between the parties can be found in the previous opinions. (ECF Nos. 41, 95, 433, 445, 484, 493, 548, 603, 624, 707, and 730).

[2] The Parties' Purchase Agreement (JTX 41) and Second Amendment to the Purchase Agreement (JTX 56), capture the major terms of their agreement. The parties also executed a Contract for Services (JTX 42), and several other documents and amendments, which provide other relevant details of their bargain. The Judgment requires that Purchaser pay $114,000,000, the principal amounts due under the under the PSA and Contract

Lennar Corporation, and its subsidiary U.S. Home Corporation (collectively "Purchaser"), were ordered to proceed to settlement within thirty days and perform their obligations under the parties' Agreement, including payment of the Purchase Price for the Property and interest on the Purchase Price as provided for in the Agreement.

Following issuance of the Judgment, the parties filed several motions, including: (1) a motion to clarify the Judgment filed by Purchaser (ECF No. 732); (2) a motion to stay the Judgment filed by Purchaser (ECF No. 733); and (3) a motion for a civil contempt order filed against Purchaser by iStar. (ECF No. 740).[3] The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Purchaser's motion to clarify the Judgment will be granted in part and denied in part, and Purchaser's motion to stay the Judgment will be granted on

for Services, plus interest as provided for in these agreements. For simplicity sake, the amounts due under these agreements, which are fully detailed in the prior opinion, will hereinafter be referred to as the "Purchase Price."

[3] Also pending are motions for attorneys' fees and costs filed by Defendants Steven B. Sandler and iStar. (ECF Nos. 735 and 736). As noted in the March 3, 2015 paperless order, the parties' memoranda in support of their respective motions for attorneys' fees are due following the resolution of the appeal. In addition, the undersigned will defer ruling on Purchaser's objections to Magistrate Judge Connelly's July 16, 2014 order awarding attorneys' fees to iStar (ECF No. 711) until the appellate process has concluded, in order to adjudicate all submissions regarding attorneys' fees at one time.

condition that Purchaser post the requisite bond.   iStar's motion for a civil contempt order will be denied.

## I.   Motion to Clarify the Judgment

### A.   Interest on the Purchase Price

The first issue is whether the interest rate provided in the Judgment, which reflects the language used in the parties' PSA and Contract for Services, should be calculated on a simple or compound basis.   That portion of the Judgment states that:

> Judgment will be entered in favor of iStar and against U.S. Home and Lennar on Counts I-III of iStar's amended counterclaim (ECF No. 447), in the amount of $114,000,000 *plus interest at a rate of 12% per annum, calculated on a per diem basis from May 27, 2008 until Purchaser proceeds to Settlement,* plus real estate taxes in the amount of $1,556,203.32.

(ECF No. 730, at 45 and 731) (emphasis added).

Purchaser argues that the contractual interest rate should be calculated on a simple basis.   According to Purchaser, "[t]he Purchase and Sale Agreement does not 'specifically provide' for compound interest or 'speak directly' to providing interest on interest."   (ECF No. 732-1, at 10).   Purchaser asserts that the word "compound" does not appear anywhere in the interest section of the PSA, nor does the PSA provide a frequency at which compounding of interest should occur.

In response, iStar argues that Purchaser has waived its right to challenge the interest provision because it failed to

raise this argument at trial or at the post-trial hearing. iStar argues that "the PSA contemplates that the 12% interest rate will be compounded annually and added to the Purchase Price" until Purchaser proceeds to Settlement. (ECF No. 738, at 2-3). In addition, iStar contends that it has consistently applied a compound annual interest rate as part of its Proposed Final Pretrial Order, and that it presented evidence at trial to support its claimed damages based on a compound interest rate. It asserts that Purchaser waived this issue because it never challenged these assertions or presented rebuttal evidence. According to iStar, the plain language of PSA § 3(a) calls for interest to accrue on the Purchase Price and be added annually to the Purchase Price. (ECF No. 738, at 8).

The January 22, 2015 opinion and Judgment did not provide a specific dollar amount for the interest due on the Purchaser Price, just as this opinion will not provide a dollar amount, because the amount of interest owed by Purchaser increases daily. Additionally, the Judgment did not indicate whether the interest would be calculated on a simple or compound basis because the Judgment incorporated the language from the parties' own Agreement. Moreover, prior to the issuance of the Judgment, the parties had not argued that the contractual language was ambiguous. Nonetheless, because Purchaser argues that it cannot obtain a supersedeas bond until it has a clear directive from

the court as to what this language means, the court will clarify the judgment and the contract language upon which the Judgment is based.[4]

As noted by the United States Court of Appeals for the Fourth Circuit in *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1033 (4th Cir. 1993), "[a]bsent a statute or an agreement between the parties an award of interest on interest is impermissible either under general federal or common law." *See also Cherokee Nation v. United States*, 270 U.S. 476, 490 (1926) ("What the appellant here seeks is compound interest; that is, interest on interest[.]   The general rule, even as between private persons, is that, in the absence of a contract therefor or some statute, compound interest is not allowed to be computed upon a debt.").

Section 3(a) of the Second Amended PSA states that if the Purchaser wrongfully fails to make Settlement:

> the Purchase Price *shall accrue interest at
> a rate of twelve percent (12%) per annum to*

---

[4]  iStar's argument that Purchaser waived this issue by failing to provide rebuttal evidence at trial or raising this issue post-trial will be rejected.   This post-judgment dispute does not involve a new claim or affirmative defense by Purchaser.   Instead, Purchaser seeks to clarify the damages it owes to iStar.   Although the court agrees with iStar that this issue could have and should have been raised in the parties' post-trial briefs if the parties believed that the PSA interest calculation provision was ambiguous, because the parties now dispute the interpretation of the PSA language with regard to the interest calculation methodology, it is necessary to provide clarification at this time.

> *be calculated on a per diem basis* from the Settlement Date until Purchaser proceeds to Settlement in accordance with this Agreement. In such event, *any interest accrued on the Purchase Price shall be deemed to be an addition to the Purchase Price hereunder.*

(Emphases added).[5]

The "[a]llowance of interest on the *unpaid* interest amounts to compound interest[.]" *Med. Mut. Liab. Ins. Soc. of Maryland v. Davis,* 389 Md. 95, 108 (2005) (alteration in original) (emphasis added) (*quoting Walker v. Acting Director, Dept. of Forests & Parks,* 284 Md. 357, 367 (1979)) (internal quotation marks omitted). Compound interest requires a compounding frequency or "rest period," a time at which the outstanding interest owed on the principal balance, if *unpaid*, is added to the principal balance, after which time the debtor pays interest on the new principal amount, which includes paying interest on the original interest that became due. *Cf. Exxon Corp. v. Crosby-Mississippi Res., Ltd.,* 40 F.3d 1474, 1488-89 (5th Cir.

---

[5] Similarly, iStar is entitled to interest on the Development Fee as provided in § 1 of the First Amended Contract for Services. As noted in the prior opinion, "[t]he interest provisions that were added to the Second Amended PSA (JTX 56 § 3(a)) and the First Amended Contract for Services (JTX 55 § 1), both executed on May 16, 2007, mirror one another, calling for 12% interest in the event Purchaser 'wrongfully fails to make Settlement' under the PSA." (ECF No. 730, at 44 n.39). The only difference in the interest provision in § 1 of the Contract for Services is that it accrues on the Development Fee from the date Purchaser "wrongfully fails to pay the Development Fee at [] Settlement . . . until U.S. Home pays the Development Fee[,]" rather than until Settlement.

1995) (finding that an agreement called for compound interest because it required a portion of all bills to be paid within thirty days of receipt and provided that "[i]f payment is not made within such time, the unpaid balance shall bear interest monthly at the rate of twelve percent (12%) per annum"); *see also Texon Energy Corp. v. Dow Chem. Co.,* 733 S.W.2d 328, 331 (Tex.App. 1987) (noting that the parties' agreement called for interest to compound during the monthly "rest period" because it required bills to be paid within fifteen days of receipt and "[i]f payment is not made within such time, *the unpaid balance shall bear interest monthly at the rate of twelve percent (12%) per annum*") (alteration and emphasis in original). The PSA and Contract for Services do not provide any "rest" or "compounding" frequency. In other words, the PSA does not provide that the 12% annual interest accruing on the Purchase Price "compounds" on any given frequency, nor is it added to the principal amount on any given frequency, nor are interest payments due on a certain frequency. *See Ronald J. and Dana Cohen Family Ltd. P'ship v. City of Capitals Inc.,* 829 F.2d 36, at *1-2 (4th Cir. Aug. 28, 1987) (unpublished table decision) (finding that compound interest was not permitted when the "language [of the instrument] [did] not provide for adding overdue interest to the principal of the debt or for creating an accumulating account of overdue interest, and then applying the penalty interest to such

7

lump sum"); *see also In re Fortescue,* 200 B.R. 833, 834-35 (W.D.N.C. 1995) (reviewing the "amount, type, and timing of interest payments" required by various promissory notes and finding that none required compound interest in part because they did not specify when interest payments were due); *cf. TCI Courtyard, Inc. v. Wells Fargo Bank, NA,* No. 3:13-CV-3465-L, 2014 WL 2095369, at *2 (N.D.Tex. May 20, 2014), *aff'd sub nom. In re TCI Courtyard, Inc.,* 591 F.App'x 256 (5th Cir. 2015) (finding that the language of the parties' agreement unambiguously called for compound interest because it stated that "after default, the interest, to the extent not paid when due, *shall be added to the Principal Amount*") (emphasis in original) (internal quotation marks omitted). Indeed, the PSA indicates that the interest accrues from the "Settlement Date" until Purchaser proceeds to Settlement, at which time, "any interest accrued on the Purchase Price shall be deemed to be an addition to the Purchase Price[;]"[6] meaning that interest on the Purchase Price is not due until Settlement, when it is added to the principal amount, but at no time before Settlement is Purchaser required to pay interest on interest.

---

[6] iStar argues that the language "shall be deemed an addition to the Purchase Price" indicates that the interest is being compounded, but iStar fails to account for the fact that the interest is not added to the principal amount until Settlement, meaning that only simple interest is due until Settlement.

Moreover, the use of the term "per annum" in the phrase "shall accrue interest at a rate of twelve (12%) *per annum*" does not indicate that the interest is compounded annually, it merely establishes the rate at which the interest accrues. *See Berman v. B.C. Assocs.,* 219 F.3d 48, 50 (1st Cir. 2000) (noting that "the overwhelming majority of Massachusetts cases equate an interest rate 'per annum,' whether in a contract or a statute, with simple interest") (internal citation omitted); *see also American Mill. Co. v. Brennan Marine, Inc.*, 623 F.3d 1221, 1225 (8th Cir. 2010) ("'Per annum' is defined in English to mean 'in each year' or 'annually.' Accordingly, the six percent interest [per annum] is an annual rate, but the plain language does not speak directly to whether the interest is to accrue on a compound or simple basis.") (internal citation omitted); *Helland v. Helland,* 214 Ill.App.3d 275, 277 (1991) ("'Per annum' merely denotes the frequency at which the applicable rate of interest is to be applied and does not permit a compounded annual method of computation."). Because the PSA does not include any language indicating that the accrued interest is added to the Purchase Price on a given frequency, the use of "per annum" alone does not suggest that the twelve percent (12%) interest accruing on the Purchase Price is to be compounded annually.

### B.   Post-Judgment Interest

Purchaser also seeks clarification as to what interest rate applies post-judgment:  the federal statutory interest rate set forth in 28 U.S.C. § 1961 or the contractual interest rate of 12%.  Purchaser asserts that "[t]o the extent the Court intended to apply the contractual interest rate to the judgment, Lennar respectfully submits that the Court's decision to apply the parties' pre-judgment contractual interest rate of 12% post-judgment represents a 'clear error of law,' works 'manifest injustice,' and requires relief under Rule 59(e)."  (ECF No. 732-1, at 13 n.7).

Purchaser argues that "[u]nder the well-established 'merger doctrine,' [] the PSA and its pre-judgment contract [interest] rate ceased to exist and were 'merged' into the judgment as of January 22, 2015.  From that point forward, the judgment must accrue interest at the prevailing statutory rate of 0.18% — not the previous pre-judgment contractual interest rate — because the parties did not clearly and unambiguously set a post-judgment interest rate."  (ECF No. 732-1, at 12-13).  Purchaser contends that because the parties' Agreement does not contain any clear language contracting out of the federal statutory rate, the Judgment violates clearly established law by applying the parties' contractual interest rate post-judgment.

10

iStar responds that the merger doctrine does not apply in this case because this is not an instance where iStar's claims were extinguished and its contractual rights were merged into the Judgment; rather, the court awarded it specific performance, which can only be satisfied by Purchaser performing its obligations under the PSA.  Accordingly, iStar contends that as part of its award of specific performance, "the Court's final judgment entitles iStar to the benefit of all of the contractual terms, including interest added to the Purchase Price, whenever Lennar actually performs.  The Court's award of interest — whether for the prejudgment period or post-judgment — is part of the single, final judgment on iStar's claims."  (*Id.*).  iStar argues, in the alternative, that even if the merger doctrine were applicable, the PSA's language expressly displaces the statutory post-judgment rate with the 12% interest rate.

As noted by the Fourth Circuit in *Kanawha-Gauley Coal & Coke Co. v. Pittston Minerals Grp, Inc.,* 501 F.App'x 247, 254 (4th Cir. 2012), the standard interest rate that courts apply post-judgment is that provided in 28 U.S.C. § 1961(a):  "The weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding."  The Fourth Circuit also noted in *Kanawha-Gauley* that: "despite the rate provided in § 1961(a), parties may stipulate a different rate, consistent

11

with state usury and other applicable law." *Id.* (internal citations and quotation marks omitted). Citing the merger doctrine which stands for the "basic principle that a contract merges into the judgment," the court affirmed the district court's denial of a plaintiff's motion to alter or amend the judgment to apply post-judgment the 5.25% interest rate provided for in the parties' underlying lease agreement. The court noted that the doctrine of merger dictates that "[o]nce a claim is reduced to judgment, the original claim is extinguished and merged into the judgment; and a new claim, called a judgment debt, arises. A single rule should govern interest on any such debt, the nature of the original claim having become irrelevant under the doctrine of merger." *Id.* (*quoting Kotsopoulos v. Asturia Shipping Co.,* 467 F.2d 91, 95 (2$^{\text{d}}$ Cir. 1972)). The Fourth Circuit emphasized that "[b]ecause of the doctrine of merger, other circuits have required that parties first 'specify a post-judgment interest rate' using 'clear, unambiguous and unequivocal language[,]'" otherwise, the post-judgment interest rate set forth in 28 U.S.C. § 1961 applies. *Id.* (*citing Westinghouse Credit Corp. v. D'Urso,* 371 F.3d 96, 102 (2$^{\text{d}}$ Cir. 2004); *Society of Lloyd's v. Reinhart,* 402 F.3d 982, 1004 (10th Cir. 2005); *Kotsopoulos,* 467 F.2d at 95). The court reviewed the parties' lease agreement which stated that "[a]ny payment not promptly made by [defendant] to [plaintiff] shall bear

interest from the date due at two percentage (2%) points per annum above the prevailing prime interest rate[,]" and based on this language found that there was "no express agreement to overcome the doctrine of merger and § 1961(a)." *Id.* at 254-55 (first alteration in original) (internal quotation marks omitted).

Unlike the agreement in *Kanawha-Gauley* and the agreements at issue in the other cases cited by Purchaser, here, pursuant to Section 15(a) of the Second Amended PSA, Seller's remedies after a default by Purchaser were expressly limited and excluded the availability of money damages in the form of a money judgment for breach of contract. Instead, the parties agreed that should Purchaser default, Seller was entitled either to: (1) terminate the Agreement and retain the deposit fee as liquated damages; or (2) obtain specific performance of the Agreement and injunctive relief, including a court order requiring "Purchaser to perform the obligation which Purchaser is required to perform hereunder, including [] to complete the Settlement in accordance with the Agreement and pay the Purchase Price[.]" (JTX 56 § 15(a)). As noted in the January 22, 2015 opinion, Seller selected specific performance as its exclusive remedy, and therefore is entitled to an injunction and order enforcing the *specific terms* of the parties' Purchase Agreement and Contract for Services, which includes payment of the

Purchase Price as defined in Section 3(a) of the Second Amended PSA and the Development Fee as defined in Section 1 of the First Amended Contract for Services.  Based on the express language of these sections, because Purchaser defaulted under Section 15(a)(i) of the PSA by wrongfully failing to make settlement, "the Purchase Price shall accrue interest at a rate of twelve percent (12%) per annum to be calculated on a per diem basis from the Settlement Date *until Purchaser proceeds to Settlement*[.]"  (JTX 56 § 3(a)).  Accordingly, the parties expressly bargained for the remedy of specific performance and a 12% contractual interest rate to be applied until settlement, and at the same time, contracted out of standard remedy for breach of contract that would have entitled iStar to a money judgment subject to post-judgment interest under 28 U.S.C. § 1961.  The Judgment, in accordance with the parties' bargained-for Default provision and the remedies provided for therein, orders Purchaser specifically to perform its obligations, including payment of the Purchase Price based on the specific terms of the PSA.  The parties Second Amended PSA, which was the result of extensive negotiation and bargaining between two sophisticated parties, clearly defined the Purchase Price and the rate and method of calculating interest on that price. Accordingly, the parties' Agreement clearly and unambiguously specifies an interest rate that is to be applied both pre-

14

judgment and post-judgment until Purchaser complies with its contractual obligation to pay the Purchase Price and take title to the Property.

## II.  Motion to Stay Enforcement of the Judgment

### A.    Stay Pending Appeal

Purchaser argues that pursuant to Fed.R.Civ.P. 62(d) it is entitled to stay the court's January 22, 2015 Judgment while its appeal is pending.[7]  According to Purchaser, Rule 62(d) applies to any judgment that it "monetary in nature" and because the Judgment requires Purchaser to pay $114 million plus interest as well as real estate taxes, it is a monetary judgment subject to this rule despite the fact that it also orders specific performance.  Accordingly, Purchaser contends that pursuant to Rule 62(d) it is entitled to stay as of right through the conclusion of its appeal once it posts a supersedeas bond.

iStar contends that Purchaser misconstrues the nature of the court's Judgment, arguing that the court issued an injunction subject to Fed.R.Civ.P. 62(c) rather than a money judgment subject to Rule 62(d).  iStar argues that because Rule

---

[7] Purchaser also moved to stay enforcement of the Judgment pending resolution of its motion for clarification pursuant to Rule 62(b).  Rule 62(b) permits a court to stay execution of a judgment pending disposition of post-trial motions under Rules 50, 52(b), 59, and 60, provided that "appropriate terms for the opposing party's security" are put in place.  Because this memorandum opinion and order adjudicates Purchaser's motion to clarify under Rules 59 and 60, its motion to stay under Rule 62(b) is denied as moot.

62(c) applies, Purchaser is not entitled to an automatic stay, rather, it must provide adequate factual support showing its entitlement to a stay, which it purportedly has failed to do.

Although the relief ordered in the January 22, 2015 opinion and Judgment is in part "monetary" because it ordered Purchaser to pay the Purchase Price as part of the settlement process, it is subject to Fed.R.Civ.P. 62(c) because it is an injunction ordering specific performance of the parties' Agreement. *See Solis v. Malkani,* 638 F.3d 269, 275-76 (4th Cir. 2011) ("[T]he posting of a supersedeas bond may only stay a monetary judgment pending appeal, Fed.R.Civ.P. 62(d), and does not permit a party to stay injunctive relief[.]"). Pursuant to Rule 62(c), "[w]hile an appeal is pending from an interlocutory order or final judgment that grants [] an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." In determining whether to grant a stay, the court considers several factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether the issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Cross v. Fleet Reserve Ass'n Pension Plan,* No. WDQ-05-0001, 2007 WL 7143977, at *1 (D.Md. Feb. 27,

16

2007) (internal quotation marks omitted) (*quoting Hilton v. Braunskill,* 481 U.S. 770, 776 (1987)); *see also Long v. Robinson,* 432 F.2d 977, 979 (4th Cir. 1970); *Dairy King, Inc. v. Kraft, Inc.,* 665 F.Supp. 1181, 1189 (D.Md. 1987), *aff'd* 851 F.2d 356 (4th Cir. 1988).  "Each factor . . . need not be given equal weight.  Instead, the court assesses [the] movant's chances for success on appeal and weighs the equities as they affect the parties and the public." *Par Pharm., Inc. v. TWI Pharm., Inc.,* No. CCB-11-24666, 2014 WL 3956024, at *1 (D.Md. Aug. 12, 2014) (internal citations and quotation marks omitted) (*quoting Standard Havens Prods, Inc. v. Gencor Indus., Inc.,* 897 F.2d 511, 512-13 (Fed. Cir. 1990)).

### 1. Likelihood of Success on the Merits

"A party seeking a stay pending appeal must make a 'strong showing' of likely success on the merits of the appeal.  However, this standard does not require the trial court to change its mind or conclude that its determination on the merits was erroneous." *St. Agnes Hosp. of City of Baltimore, Inc. v. Riddick,* 751 F.Supp. 75, 76 (D.Md. 1990).  Rather, the appeal "must raise[] serious and difficult questions of law[.]" *Id.* (internal citation and quotation marks omitted); *see also Par Pharm., Inc.,* 2014 WL 3956024, at *2 ("To succeed, [movant] [] does not need to demonstrate that it will certainly win on appeal or that there is a mathematical probability of success.

At a minimum, it must demonstrate a substantial case.") (internal citation omitted).

Purchaser argues that, on appeal, it raised "substantive objections to a number of the Court's findings which, in [its] view, were outcome determinative in the proceedings[,]" including the finding that Sellers were not required to demonstrate that their representations and warranties were "actually correct" at the time of Settlement. (ECF No. 745, at 14-15). According to Purchaser, "it was and is absolutely entitled to verify [] that the truth of Sellers' representations and warranties was *actually correct.*" (*Id.* at 15) (emphasis in original). Purchaser contends that "[t]he dearth of both Maryland and Fourth Circuit case law on a number of [the issues appealed] makes them sufficiently serious questions on the merits and thus a fair ground for litigation, warranting a stay." (*Id.* at 15) (internal citations and quotations marks omitted).

iStar argues that Purchaser has not shown a likelihood of success on the merits as "the court has thoroughly examined each and every facet of [Purchaser's] arguments over the course of years and ruled in iStar's favor." (ECF No. 739, at 19). iStar contends that Purchaser's Rule 60 motion and its appeal are part and parcel of Purchaser's "*modus operandi* of continuing to revive and re-argue the same issues over and over[.]" (*Id.*).

18

Although the court stands by its prior rulings and final Judgment, a number of the issues Purchaser plans to raise on appeal are objections to this court's interpretations of the parties' Agreement, which will be reviewed *de novo* by the Fourth Circuit. *Perini/Tompkins Joint Venture v. Ace Am. Ins. Co.,* 738 F.3d 95, 101 (4th cir. 2013). Purchaser has not necessarily shown a "strong likelihood of success" on appeal, but has identified specific legal findings that raise "serious questions of law." Because the balance of hardships and the interest of efficiency weigh in favor of maintaining the status quo until the appeal is resolved, Purchaser's showing regarding this factor is sufficient. *See Par Pharm., Inc.,* 2014 WL 3956024, at *2 (granting an injunction pending appeal under Rule 62(c) despite the fact that "most of [movant's] dispute with [the] court's earlier decision [was] only rehashing the legal arguments it ha[d] already made" because "the balance of hardships" supported granting the injunction); *see also Cross,* 2007 WL 7143977, at *2 (granting suspension of an injunction pending appeal under Rule 62(c) because "[a]lthough the [d]efendant's likelihood of success on appeal is not high, the balance of factors favors a stay").

## 2. Injury to Purchaser

Purchaser argues that it will be irreparably harmed absent a stay because it will be forced to take possession of the

property and will be "saddled with environmental liability that cannot be undone" by way of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601 *et seq.* (ECF No. 745, at 16). According to Purchaser, its environmental liability could amount to tens of millions of dollars. Purchaser contends that even if it prevails on appeal, its status as record title holder even for a short period of time could result in future environmental liabilities.

iStar argues that Purchaser will not suffer any irreparable harm by being required to proceed to settlement as ordered. iStar adds that any harm that may result from Purchaser being required to settle in accordance with the PSA is a result of Purchaser's own "willful acts." (ECF No. 739, at 23).

Despite Purchaser's alarmist speculative claims regarding environmental liabilities, the court can envision irreparable harm in the form of administrative and financial burdens the parties undoubtedly will incur by being forced to settle prior to the conclusion of the appeal. At this point, it is inconceivable that the parties will be able to finalize settlement documents without conflict. Moreover, should Purchaser prevail, the parties would then need to expend additional time and money to return title of the Property to iStar.

### 3.   Injury to iStar

Purchaser argues that iStar will not be substantially harmed by a stay because iStar's rights will be fully protected. Specifically, Purchaser avers that "iStar is not only protected by the supersedeas bond — including an additional 20% premium on top of the judgment — it also will receive pre-judgment and post-judgment interest if it prevails on appeal." (ECF No. 745, at 18).

iStar argues that it will suffer substantial harm if a stay of the January 22, 2015 injunction is granted while the appeal is pending because it will require iStar to "maintain[] ownership of property it would never have had to take ownership of if [Purchaser] had complied with the PSA." (ECF No. 739, at 20).   iStar also contends that a stay would delay its "long-overdue" relief and delay of settlement would cause substantial harm.   Finally, iStar argues that a bond will not fully protect its interests.

Although a stay will require iStar to maintain ownership of the Property while the appeal is pending and will delay receipt of its expected relief, iStar's rights will be fully protected during the pendency of the appeal because Purchaser will be required to post a bond that should adequately secure iStar's interests.   Moreover, iStar will not be irreparably harmed by a delay in settlement, as the contractual interest of 12%, which

the parties bargained for as adequate compensation for a delay in settlement by Purchaser, will continue to accrue on the Purchaser Price until Purchaser proceeds to settlement as provided in the parties' PSA and the Judgment.  iStar failed to provide any factual support for its vague assertions that it will be irreparably harmed by a stay.

### 4.   Public Interest

Purchaser argues that "[m]aintaining the status quo while at the same time protecting iStar through posting of a supersedeas bond is in the public interest."  (ECF No. 745, at 19).   Clearly, neither party is likely to develop the property while the appeal is pending.  Purchaser asserts that under the PSA, iStar's representations and warranties regarding the Property only survive for twelve months following settlement. Accordingly, Purchaser argues that, if it is forced to settle now while the appeal is pending, it "will have no means by which to protect its interests except to commence an action against iStar for any claims stemming from iStar's representations and warranties, which must be actually correct at Settlement." (*Id.*).  Purchaser contends that a stay is in the public interest because forcing settlement at this juncture will lead to separate and duplicative litigation.

iStar argues that the public interest would not be served by a stay for three reasons.  First, it argues that "there is a

22

public interest in requiring parties to satisfy their contractual obligations." (ECF No. 739, at 23). Second, iStar contends that "there is a public interest in preventing parties from disregarding court orders." (*Id.* at 24). Third, iStar avers that it is a public company and a stay may adversely impact its shareholders.

Although none of the parties' arguments regarding the impact of a stay on the public interest are particularly persuasive, for the sake of efficiency and the reasons previously discussed, Purchaser will be granted a stay of the January 22, 2015 injunction pending its appeal on condition that it posts an adequate supersedeas bond to secure iStar's interests.

### B.   Supersedeas Bond

Purchaser contends that the court has discretion to permit it to provide alternative security in place of some or all of the bond amount it is required to post to stay the injunction. Purchaser requests that it be permitted to use the Bevard and Kalapacha Properties as partial security and accordingly, post a reduced supersedeas bond to stay enforcement of the Judgment until its appeal is resolved. Because it will take several weeks to finalize the surety arrangements to secure a bond large enough to secure the Judgment, Purchaser also requests fourteen

days from the date of the order disposing of its motions to post the required bond.

iStar argues that Purchaser's request to use the Property as security to lessen the bond amount is "nonsensical" as it would not adequately protect "iStar's rights as the prevailing party by using *iStar's property* as security" while the appeal is pending.  (ECF NO. 739, at 27) (emphasis in original).  iStar argues that requiring a party to post a full supersedeas bond is the norm and Purchaser has not adequately demonstrated that it qualifies for an exception to this rule.

In response, Purchaser argues that iStar's current possession of the Property, which is purportedly valued at over $100 million, does not alter the fact that the Property can be used to safeguard's iStar's financial interests against a future default by Purchaser.  In addition, Purchaser attaches its United States Securities and Exchange Commission ("SEC") Form 10-K, as evidence that it "is more than able to satisfy the judgment from its more than $5.2 billion in equity" which includes "$885 million in cash on hand." (ECF Nos. 745, at 21 and 745-2).  Based on the purported strength of its financial position and ability to maintain the same level of solvency during the appeal, it asks that the court exercise its discretion and permit it to provide alternative security for the Judgment by using the Property to reduce its bond amount.

Rule 62(c) permits the court to exercise its discretion to stay an injunction "on terms for bond or other terms that secure the opposing party's rights."   Fed.R.Civ.P. 62(c).   Courts applying an analogous rule, Fed.R.Civ.P. 62(d), which permits a court to stay a *money judgment* if the movant posts a supersedeas bond, normally require "[a] *full* supersedeas bond [] to preserve the status quo during appeal and preserve the ability of the judgment creditor to execute on the judgment." *TransPacific Tire & Wheel, Inc. v. Orteck Int'l, Inc.,* No. DKC 2006-0187, 2010 WL 2774445, at *5 (D.Md. July 13, 2010) (emphasis added); *see also RG Steel Sparrows Point, LLC v. Kinder Morgan Bulk Terminals, Inc.,* No. WMN-09-1668, 2014 WL 5293682, at *2 (D.Md. Oct. 14, 2014) (*citing Southeast Booksellers Ass'n v. McMaster,* 233 F.R.D. 456, 458 (D.S.C. 2006)) ("The overwhelming practice in federal courts is to presume that the full supersedeas amount is required absent a motion to alter that amount before the Court grants the stay.").[8] As noted by Judge Messitte in *IA Labs CA, LLC v. Nintendo Co.,* 946 F.Supp.2d 429, 430 (D.Md. 2013), "[t]he requirement of posting bond performs two functions: first, it protects the prevailing party 'against any loss sustained as a result of being forced to forgo execution on a

---

[8]  Indeed, pursuant to Rule 62(d) and Local Rule 110.1.a, "[u]nless otherwise ordered by the Court, the amount of any supersedeas bond filed to stay execution of a money judgment pending appeal shall be 120% of the amount of the judgment plus an additional $500 to cover costs on appeal."

judgment during the course of an ineffectual appeal'; and second, it gives the losing party the option of avoiding 'the risk of satisfying the judgment only to find that restitution is impossible after reversal on appeal.'"   *Id.* (*quoting Poplar Grove Planting and Refining Co., Inc. v. Bache Halsey Stuart, Inc.,* 600 F.2d 1189 (5th Cir. 1979)).   Although the Fourth Circuit has not adopted a particular standard to guide district courts' exercise of discretion in granting unsecured or undersecured stays, "[c]ourts have found that full bonds may not be necessary in either of two circumstances:  (1) when the judgment debtor can currently easily meet the judgment and demonstrates that it will maintain the same level of solvency during appeal, and (2) when the judgment debtor's present financial condition is such that the posting of a full bond would impose undue financial burden." *CapitalSource Fin. LLC v. Pittsfield Weaving Co., Inc.,* No. AW-06-2028, 2008 WL 3850385, at *2 (D.Md. Mar. 7, 2008); *see also Poplar Grove,* 600 F.2d at 1191; *TransPacific Tire & Wheel, Inc.,* 2010 WL 2774445, at *5; *Alexander v. Chesapeake, Potomac, & Tidewater Books, Inc.,* 190 F.R.D. 190, 192 (E.D.Va. 1999).

To secure iStar's rights while the appeal is pending, Purchaser will be required to post a bond in the amount of $223,440,000, which represents the $114,000,000 due by Purchaser under the PSA and Contract for Services plus simple interest

accruing at a rate of twelve percent annually from May 27, 2008, the day on which Purchaser was required to settle, until May 26, 2016, about eleven months from the issuance of this order and an approximate date for the completion of Purchaser's appeal. There is no way to predict the exact amount Purchaser will owe to iStar at settlement considering that interest continues to accrue daily on the Purchase Price and the Fourth Circuit's timeline for rendering a decision is uncertain.  The undersigned finds that $223,440,000 is a reasonable estimate of the amount Purchaser will owe to iStar upon conclusion of the appeal, however, and an appropriate bond amount to secure iStar's interests while the appeal is pending.  As Purchaser has indicated that it can easily pay the Judgment amount based on its currently level of solvency, acquiring a bond in this amount should not cause it any hardships and the bond will serve to protect iStar's interests in receiving the Purchase Price and interest on the Purchase Price through the pendency of the appeal.

Purchaser will not be permitted to use the Property as alternative security to reduce the bond amount it will be required to post.  Although iStar is in possession of the Property, possession does not provide it security for the rights it obtained pursuant to the January 22, 2015 order. Specifically, iStar's interests are in obtaining the monies owed

to it under the parties' PSA and Contract for Services and in transferring title of the Property to Purchaser in order to avoid the costs of owning and maintaining the Property. In *IA Labs,* 946 F.Supp.2d at 431, the unsuccessful party moved to stay the judgment pending appeal requesting that the court stay the judgment without a bond or, in the alternative, to permit it to post its patents as alternative security. The court rejected this request finding that the movant had failed to meet its burden of showing that the bond would be an undue financial burden and that its patents were "far too speculative in value to secure [the prevailing party's] interest" in the monetary judgment it had been awarded. The same rationale applies here, as property value is subject to change and the Property's current value estimate is speculative. Moreover, the property's market value today does not necessarily translate into an equivalent cash award tomorrow for iStar due to fluctuating land prices and, the difficulty, the parties are all too well aware of, in bringing large land transactions to fruition. Moreover, Purchaser's argument that it should be permitted to post a reduced bond because it has more than enough money to pay its settlement obligations is similarly unpersuasive. Although Purchaser's SEC filing indicates that it has enough cash on hand to cover its settlement obligations as of today, its filing also indicates that Purchaser's $200 million plus dollar settlement

obligations would not be a trivial amount given its financial status.

Given the size of the bond required, Purchaser will be given two weeks following issuance of this opinion and order to obtain and post the bond. Once the bond is approved, the stay will take effect.

**III. Motion for Civil Contempt Order Against Purchaser**

iStar moved for an expedited entry of a civil contempt order against Purchaser for failing to comply with the court's January 22, 2015 order requiring Purchaser proceed to Settlement within thirty days. (ECF No. 740). iStar argues that Purchaser has made no attempt to comply with the court's January 22, 2015 order despite its efforts to prepare for closing on February 20, 2015. (ECF No. 740-1).

Purchaser responds that "iStar's motion for contempt is an overreaching attempt to punish a litigant for exercising rights granted by the Federal Rules of Civil Procedure." (ECF No. 747, at 5). Purchaser argues that it is seeking to clarify the Judgment, and until it has obtained such clarification it is unable to obtain a bond to stay enforcement of the Judgment while it exercises its right to appeal the underlying Judgment.

Judgment in this case was entered on January 22, 2015. (ECF No. 731). Shortly after the entry of the Judgment, on February 4, 2015, Purchaser filed its motions to clarify the

Judgment and to stay enforcement of the Judgment. (ECF Nos. 732 and 733). On the same day, Purchaser also filed a notice of appeal indicating that it was appealing the court's "judgment and all other judgments, orders, and rulings in this action[.]" (ECF No. 734). iStar filed its motion for a civil contempt order against Purchaser on February 26, 2015.

As recently noted by the Fourth Circuit in *Redner's Markets, Inc. v. Joppatowne G.P. Ltd. P'ship,* No. 14-1527, 2015 WL 1475118, at *1 (4th Cir. Apr. 2, 2015):

> "There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States,* 384 U.S. 364, 370 (1966). "Moreover, the court that enters an injunctive order retains jurisdiction to enforce its order." *Alderwoods Group, Inc. v. Garcia,* 682 F.3d 958, 970 (11th Cir. 2012) (*citing Chambers v. NASCO, Inc.,* 501 U.S. 32, 50 (1991)).

> "A court may impose sanctions for civil contempt 'to coerce obedience to a court order or to compensate the complainant for losses sustained as a result of the contumacy.'" *Cromer v. Kraft Foods N. Am., Inc.,* 390 F.3d 812, 821 (4th Cir. 2004) (*quoting In re Gen. Motors Corp.,* 61 F.3d 256, 258 (4th Cir. 1995)). "Civil contempt is an appropriate sanction if [the court] can point to an order of [the court] which set[s] forth in specific detail an unequivocal command which a party has violated." *Gen. Motors. Corp.,* 61 F.3d at 258 (citations and internal quotation marks omitted). . . .

> To establish civil contempt, a movant must show by clear and convincing evidence: (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) the decree was in the movant's favor; (3) the alleged contemnor by its conduct violated the terms of the decree and had knowledge (at least constructive) of such violation; and (4) the movant suffered harm as a result. *JTH Tax, Inc. v. H & R Block E. Tax Servs., Inc.*, 359 F.3d 699, 705 (4th Cir. 2004) (citations and quotation marks omitted).

*Id.* at *1 (alterations in original).

iStar's motion will be denied because Purchaser's conduct does not amount to contempt. iStar was fully aware when it filed its contempt motion that Purchaser had moved to clarify the Judgment in order to post an appropriate bond to stay enforcement of the Judgment while its appeal is pending. Purchaser will not be held in contempt for failing to proceed to Settlement considering that it has the right to appeal the January 22, 2015 Judgment and order to proceed to Settlement, as well as the undersigned's previous orders. Purchaser is properly and timely exercising its right to appeal, and has taken the appropriate steps in order to effectuate the appeal, including moving for a stay. Moreover, Purchaser's actions should not come as a surprise to iStar, as Purchaser gave iStar and the court notice at the post-trial hearing, long before the Judgment was issued, that Purchaser intended to appeal at least

31

portions of the court's post-trial opinion and order. The court's order to proceed to settlement included a timeframe of thirty days in order to prevent the parties from delaying settlement post-judgment. The order was issued with recognition that Purchaser would likely be appealing the underlying decision, but with foresight that should the Judgment be affirmed, the injunction should provide these exceedingly litigious parties with a specific timeline for performing their obligations to thwart future opportunities for discord and delay. As the thirty day timeline has now expired, if the Judgment is affirmed, the timeline will be reinstated following the appeal.

## IV.  Conclusion

For the foregoing reasons, the motion to clarify the Judgment filed by Purchaser will be granted in part and denied in part. Purchaser's motion to stay enforcement of the Judgment will be granted once Purchaser posts a bond in the amount of $223,440,000. Purchaser will be given two weeks to post the bond. Finally, the motion for a civil contempt order against Purchaser filed by iStar will be denied. A separate order will follow.

_____ /s/ _____

DEBORAH K. CHASANOW
United States District Judge
