IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| U.S. HOME CORPORATION, | * |
| Plaintiff/Counter-defendant | * |
| and | * |
| LENNAR CORPORATION, | * |
| Counter-defendant | * |
| v. | Civil Action No. PX-08-1863 |
| SETTLERS CROSSING, LLC, *et al.*, | * |
| Defendants/Counter-plaintiffs | * |
| and | * |
| STEVEN B. SANDLER, | * |
| Defendant. | |

\*\*\*\*\*\*

**MEMORANDUM OPINION**

This case was referred to Magistrate Judge Gina L. Simms for a Report and Recommendation ("R&R") concerning the petitions for attorneys' fees and costs filed by Defendant/Counter-Plaintiff iStar Financial, Inc. ("iStar") and Defendant Steven B. Sandler ("Sandler"). *See* ECF No. 795. The Magistrate Judge issued separate R&Rs as to each petition (ECF Nos. 855, 860), and the parties filed objections to the R&Rs. ECF Nos. 858, 859, 862–65. This Court also held a recorded status conference on February 13, 2019 and invited limited additional briefing on the propriety of awarding attorneys' fees per Sandler's petition for the corporate entities involved in the litigation from its inception. ECF No. 871. The issues have been fully briefed, and the Court now rules because no hearing is necessary. L. R. 105.6. For

the reasons that follow, the Court will adopt the R&Rs' findings and recommendations, as amended in this Memorandum Opinion.

## I. Background

The attorneys' fees motions are the culmination of more than a decade of litigation surrounding the sale of 1,250 acres of land in Prince George's County (the "Property"). ECF No. 765 at 1. After an eleven-day bench trial, the Honorable Deborah K. Chasanow issued a comprehensive written opinion which summarized the factual and procedural history of this case. ECF No. 707. Similarly, the R&Rs set out the facts relevant to the fee disputes and so this Court will repeat none of those facts here.

This Court referred the parties' attorneys' fees motions (ECF Nos. 735, 736) to the Magistrate Judge pursuant to 28 U.S.C. § 636 and Local Rule 301. ECF No. 795. After conducting a thorough review of more than 700 docket entries, the Magistrate Judge recommended awarding costs and fees to Sandler (ECF No. 855, the "Sandler R&R"), in the amount of $2,424,159.87.[1] As to iStar's petition, the Magistrate Judge recommended a total of $11,402,066.40 in attorneys' fees and costs (ECF No. 860, the "iStar R&R"). Thereafter, the parties lodged their respective objections, which this Court will address in turn.

## II. Standard of Review

Pursuant to 28 U.S.C. § 636, the Court "may accept, reject, or modify" the findings and recommendations made by the Magistrate Judge. 28 U.S.C. § 636(b)(1). The Court must review *de novo* those portions of the R&R to which the parties have objected. *Id.*; *Magoon v. Mettiki Coal Corp.*, No. HAR 87-187, 1993 WL 455244, at *1 (D. Md. Aug. 17, 1993). Where the

---

[1] This recommended award included a math error to which the parties agree. *See* ECF No 857. The adjusted recommended award is $2,369,375.87, as discussed *infra* at p. 13.

parties have not objected to an R&R, this Court "must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (internal marks and citation omitted).

**III. Discussion**

**A. Law Governing Attorneys' Fees**

Generally, parties to litigation bear their own costs and fees under what is known as the American Rule. *Atl. Contracting & Material Co. v. Ulico Cas. Co*., 380 Md. 285, 315 (2004). However, fees may be shifted pursuant to contract. *Id*. Sandler seeks fees pursuant to the following provision included within two personal guaranty agreements ("Guaranty Agreements") that he executed when iStar extended financing for the land purchase. The provisions are identical and state:

> In the event of any litigation between the Guarantor [Sandler] and the Purchaser [U.S. Home/Lennar] under this Guaranty, the party prevailing in such preceding [sic] such [sic] be entitled to an award against the non-prevailing party for reasonable attorney fees and costs of suit.

ECF No. 1-8 ¶ 6; ECF No. 1-9 ¶ 6.

iStar seeks attorneys' fees by invoking the original contract for the purchase of the land ("Purchase Contract"). That fee-shifting provision states:

> In the event of any litigation arising under or pursuant to this agreement or the transaction contemplated hereby the parties hereby agree . . . that the prevailing party in such matter shall be entitled to recover from the non-prevailing party, such party's costs, fees, and expenses incurred in such litigation, including actual and reasonable attorneys' fees and court costs.

ECF No. 1-1 ¶ 18(K).

Where this Court exercises diversity jurisdiction, it looks to state law in according attorneys' fees. *LNV Corp. v. Harrison Family Bus.*, LLC, No. ELH-14-03778, 2015 WL

3

7454044, at *7 (D. Md. Nov. 23, 2015) (citing *Ranger Constr. Co. v. Prince William Cnty. Sch. Bd.*, 605 F.2d 1298, 1301 (4th Cir. 1979)); *see also Rohn Prods. Int'l, LC v. Sofitel Capital Corp. USA, Inc.*, No. WDQ-06-504, 2010 WL 3943747, at *4 n.13 (D. Md. Oct. 7, 2010) ("In a diversity case, absent a conflicting applicable federal rule of procedure, state law governs not only the actual award of attorneys' fees but also the method of determining those fees.") (citation omitted). Here, the parties agreed in their respective contracts that Maryland law shall apply. ECF No. 1-1 ¶ 18(B); ECF No. 1-8 ¶ 4.

Under Maryland law, the trial court is required to "examine the prevailing party's fee request for reasonableness." *Myers v. Kayhoe*, 391 Md. 188, 207 (2006). Where, as here, a contract authorizes the award of fees, the Court examines the reasonableness of such fees using the factors enumerated in Rule 1.5 of the Maryland Lawyers' Rules of Professional Conduct ("MRPC"). *Monmouth Meadows Homeowners Ass'n., Inc. v. Hamilton*, 416 Md. 325, 336–37 (2010). They are:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the attorney;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the attorney or attorneys performing the services; and

(8) whether the fee is fixed or contingent.

4

Md. R. Attorneys, R. 19-301.5(a). The court need not make findings as to each individual factor as long as Rule 1.5 is the "guiding principle in determining reasonableness." *Monmouth Meadows*, 416 Md. at 340 n.13. "A trial court also may consider, in its discretion, any other factor reasonably related to a fair award of attorneys' fees." *Id.* at 337–38; *see also CR-RSC Tower I, LLC v. RSC Tower I, LLC*, 429 Md. 387, 465 (2012) (applying *Monmouth Meadows*).

The parties do not dispute the validity or applicability of the respective fee-shifting provisions, nor do they contest the application of Maryland law. Rather, the objections focus on the "reasonableness" of the R&Rs in discrete and varied ways, best addressed seriatim.

### B. Sandler's Petition for Attorneys' Fees

#### i. Voluntary Billing Reduction by Counsel

Sandler lodges a "limited objection" to the R&R, arguing that the R&R should have accounted for his counsel's "voluntary reduction in fees" totaling $284,000 that otherwise could have been billed for work performed. The R&R recommended, rightly, that the fees *not billed* by counsel, and thus not incurred by Sandler as an actual expenditure, should not be shifted to U.S. Home/Lennar ("Lennar"). ECF No. 855 at 23. The attorneys' fees provision for Sandler plainly states that reimbursement is limited to "costs, fees and expenses *incurred* in litigation." ECF No. 1-1 ¶ 18(K) (emphasis added). Further, Maryland law limits recovery to actual fees incurred. *SunTrust Bank v. Goldman*, 201 Md. App. 390, 400 (2011); *Manning v. Mercatanti*, No. ELH-11-2964, 2014 WL 1418322, at *2 (D. Md. Apr. 10, 2014). Sandler provides no reasoned basis for this Court to hold otherwise, and so his objection is overruled.

#### ii. Fees Incurred by Sandler Related to Sandler-backed Entities

Lennar objects to the Sandler R&R's proposed award of attorneys' fees because it includes compensation for work performed on behalf of Settlers Crossing, Washington Park

Estates, and Bevard Development ("Sellers").  Lennar more particularly contends that the work Reed Smith performed, block billed and not separated between Sandler and the Sellers, is not compensable if performed solely for the benefit of the Seller entities.  ECF No. 824 at 18–19.  This is so, says Lennar, even though it is undisputed that Sandler could only defeat Count III of Lennar's Amended Complaint which sought $20 million from Sandler pursuant to the Guaranty Agreements if Sandler demonstrated that the Sellers had not breached the Purchase Contract.  *See* ECF No. 52 ¶¶ 116–122; ECF No. 592 at 6.

The R&R recommends awarding all fees requested by Sandler under the rationale articulated in *Hensley v. Eckerhart*, 461 U.S. 424 (1983).  In *Hensley*, the United States Supreme Court considered "the proper relationship of the results obtained [at trial] to an award of attorney's fees."  *Id.* at 432.  There, the plaintiffs sought attorneys' fees as the "prevailing parties" on federal civil rights claims, pursuant to the statutory attorneys' fees provision at 42 U.S.C. § 1988.  *Id*. at 428.  The plaintiff prevailed only on some claims but sought attorneys' fees for the entirety of suit.  The Supreme Court upheld the award for attorneys' fees, reasoning that "the level of a plaintiff's success" is relevant to the reasonableness analysis, and that parties may recover attorneys' fees for work related to unsuccessful claims if those claims share "a common core of facts" with the successful claims or are "based on related legal theories."  *Id.* at 430, 435.

The R&R similarly reasoned that because Sandler's success defending against Lennar's claim was necessarily dependent on the "same common core of facts" as claims against Sellers, *Hensley* supported the full award of fees.  ECF No. 855 at 28–29.  The R&R, therefore, did not attempt to parse out fees as between Sandler and the Sellers.  *Id.*

And neither will this Court. This Court first and foremost agrees with the R&R's result but for a simpler reason: the plain language of the pertinent fee-shifting provision in the Guaranty Agreements allows for it. The fee-shifting provision grants to the "party prevailing" in a proceeding "between the Guarantor and the Purchaser under this Guaranty" recovery of "reasonable attorney[s'] fees and costs of suit." ECF No. 1-8 ¶ 6; ECF No. 1-9 ¶ 6. It is undisputed that Sandler and Lennar are the "Guarantor" and "Purchaser" respectively. Further, it is undisputed that Sandler was the "prevailing party" as to the claim in which Lennar attempted to invoke its entitlement of $20 million from Sandler. Accordingly, what remains for this Court to determine is the "reasonable" fee to which Sandler is entitled to defend against Lennar's claim.

In this respect, it is also undisputed that for Sandler to prevail on the claim, he had to show that the Sellers were not liable for breaching the Purchase Contract. *See* ECF No. 592 at 6; ECF No. 707 at 63 (finding that resolution of Lennar's claim against Sandler, Count III of the Amended Complaint, "turn[ed] on the question of whether" Sellers' actions constituted breach). In fact, the entirety of Sandler's defense on this claim required that he demonstrate the Sellers did not breach the Purchase Contract. The Reed Smith billing records further confirm that the Sellers' defense was a means to the end of advocating for Sandler. ECF No. 806. Thus, "the time and labor required . . . to perform the legal service properly" had to include mounting this very defense. MRPC Rule 1.5(a). Put differently, had the Sandler attorneys done otherwise, they certainly would not have performed their legal services properly on behalf of their client.

Lennar, however, attempts to parse out work performed on behalf of the Sellers as somehow distinct from Sandler's defense. *See* ECF No. 824 at 18–19. This argument fails both logically and practically. Indeed, Sandler's defense *was* to show that the Sellers did not breach

7

the Purchase Contract. It is no surprise therefore that Sandler's attorneys viewed the work performed in the same way. *See* Thomas Folk Dec., ECF No. 804-2 ¶ 3 (attesting that work performed was connected to a "matter in which we represented Steven B. Sandler"); ECF No. 786-1 ¶ 4 (referring to the "expenses and costs *incurred by Steven B. Sandler* due to this lawsuit") (emphasis added). Sandler, as the prevailing party, is entitled to fees incurred mounting this reasonable defense.

Alternatively, the Court notes that even if it credits Lennar's attempt to separate work performed on behalf of the Sellers from that of Sandler, it is quite likely that fees are proper for the Sellers based on the interlocking agreements among Lennar, the Sellers, and iStar. Although the Court finds that Sandler is entitled to attorneys' fees as initially requested under the Guaranty Agreements, the same result is compelled were Sandler seeking fees on behalf of the Seller entities.[2]

Sellers were among the original parties to the Purchase Contract which includes a broadly worded attorneys' fees provision. This provision allows the "prevailing party" in "any litigation arising under or pursuant to this agreement or the transaction contemplated hereby" to receive attorneys' fees from the non-prevailing party. ECF No. 1-1 ¶ 18(K). Without doubt, if Sellers and Sandler remained the sole litigants in this action throughout, the Sellers would be entitled to attorneys' fees as the "prevailing party" pursuant to this provision. *See* ECF No. 707 at 61, 70–73 (finding that Sellers were not in breach and that Lennar had in fact defaulted under the Purchase Contract).

---

[2] Lennar argues that, because the Sellers did not file an attorneys' fees motion separate from Sandler's timely motion, Sellers have waived their rights to fees under the Purchase Contract. ECF No. 872 at 6 (citing *Romaguera v. Gegenheimer*, 162 F.3d 893, 895 (5th Cir. 1998)). While Fed. R. Civ. P. 54(d)(2) states that "[u]nless a statute or court order provides otherwise," an attorneys' fees motion must "be filed no later than 14 days after the entry of judgment," Sandler's timely motion is sufficient. *See also* L. R. 109.2. As "one of the key functions of Rule 54(d)(2) is to ensure that parties properly notify their counterparts of their requests for attorneys' fees," *Romaguera*, 162 F.3d at 895, Sandler's motion provided such notice by including Sellers' fees.

8

iStar, however, "stepped into the shoes" of the Sellers to defend at trial Sellers' actions under the Purchase Contract. As such, Sellers assigned to iStar its rights under the Purchase Contract. However, that Purchase Contract also makes clear that the original parties and their assignees retain all rights under the Purchase Contract. ECF No. 1-1 ¶ 18(F) ("This Agreement shall be binding upon, and inure to the benefit of, the parties hereto *and* their respective successors and assigns . . . .") (emphasis added). Accordingly, the mere assignment of rights alone does not upset Sellers' ability to invoke the fees provision.

Lennar, however, contends that the Sellers' rights under the Purchase Contract were extinguished when Sellers defaulted on the loan with iStar. *See* ECF No. 872. Not so when the agreements are read in fully and in harmony. First, pursuant to a loan agreement executed between Sellers and iStar, iStar provided a secured bridge loan of $100 million to Sellers which the Sellers expected to wholly satisfy once the parties went to Settlement on the Property and the sale was consummated. *See* ECF No. 49-5; ECF No. 447 ¶¶ 77–78. As security, Sellers executed a "Collateral Assignment of Purchase Contract" ("Collateral Assignment"), assigning their "rights under the Purchase Contract" to iStar. ECF No. 49-5 at 3. Under the terms of the Collateral Assignment, the Sellers retained the "exclusive right and license to exercise all rights in, to and under the Purchase Contract" absent an "Event of Default." *Id.* § 4. However, "upon the occurrence and during the continuance of such Event of Default," Sellers "neither have nor exercise any further rights under the Purchase Contract." *Id.* § 5. In this regard, Sellers would lose the right to seek attorneys' fees under the Purchase Contract in the "Event of Default."

"Event of Default" is defined in the Loan and Security Agreement executed between Sellers and iStar ("Loan Agreement") as "the occurrence or existence of any one or more" enumerated events. *See* ECF No. 872-5 § 9.1. One such "Event of Default" is a default under

9

the Purchase Contract between Sellers and Lennar that continues beyond any applicable grace or cure period. *Id.* § 9.1(S)(i). However, this definition specifically <u>excludes</u> any default by Lennar as described in Sections 15(a)(ii) or 15(a)(iii) of the Second Amended Purchase Contract, or under Section 15(a)(i) "if and to the extent Borrower . . . promptly commences and diligently pursues all commercially reasonable remedies as a result of such default." *Id.* Put simply, a default arising under Purchase Contract Sections 15(a)(i)–(iii) is not an "Event of Default" extinguishing Seller's rights to invoke the attorneys' fees provision under the Purchase Contract.

Section 15(a)(i) provides that a default occurs where Lennar "wrongfully fail[s] to make Settlement . . . for any reason other than a default by" Sellers. ECF No. 1-3 ¶ 27 (Second Amendment to the Purchase Contract). At trial, the Court found that Lennar wrongfully refused to go to Settlement. The Court reasoned:

> Insofar as iStar's amended counterclaim seeks a declaration that Purchaser 'was obligated to settle . . . and pay the consideration due under the [Purchase Agreement] and the Contract for Services on May 27, 2008,' which is essentially the converse of the declaratory relief sought by U.S. Home, iStar appears to be entitled to relief under the Purchase Agreement upon Purchaser's default. **Pursuant to § 15(a), as modified by the Second Amendment, upon default by U.S. Home, 'Settlers Crossing shall be entitled to specific performance** . . . to complete the Settlement in accordance with the Agreement and pay the Purchase Price to Settlers Crossing.' (JTX 56 ¶ 27 (modifying § 15(a)).

ECF No. 707 at 73–74 (emphasis added). The Court later clarified that Lennar's default specifically fell under Section 15(a)(i) for "wrongfully fail[ing] to make Settlement." ECF No. 730 at 36. Accordingly, the failure of Settlement under the Purchase Contract is not an "Event of Default" under Section 9.1(S) of the Loan Agreement.

Lennar, however, contends that an Event of Default occurred because Sellers failed to pay the loan on its maturity date. *See* ECF No. 872-5 § 9.1(A). While Lennar is correct that

10

Sellers in fact failed to pay the loan, such failure occurred because of Lennar's refusal to go to settlement. ECF No. 447 ¶ 77 ("Lennar's failure and refusal to timely settle the PSA has caused consequential injury to Settlers Crossing, WPE, and iStar."). Sellers had "expected to utilize the cash paid at settlement to repay iStar's loan" and, "[a]s a result of Lennar's failure to timely settle the PSA, [Sellers were] unable to make those payments." *Id.* ¶ 78. The first and precipitating Event of Default, therefore, occurred when Lennar refused to go to settlement. The Court must therefore read these "Event of Default" provisions in harmony, and construe the provisions "to effectuate the intention of the parties as collected from the whole instrument, the subject matter of the agreement, the circumstances surrounding its execution, and its purpose and design." *Thompson v. U.S. Dep't of Hous. & Urban Dev.*, No. 95-309-MJG, 2016 WL 6134165, at *4 (D. Md. Oct. 21, 2016) (quoting *Heist v. E. Sav. Bank, FSB*, 165 Md. App. 144, 151 (Md. Ct. Spec. App. 2005)); *see also* Restatement (Second) of Contracts § 203(a); *Walker v. Dep't of Human Res.*, 379 Md. 407, 421 (2004) (Contracts are to be construed "as a whole, to interpret their separate provisions harmoniously, so that, if possible, all of them may be given effect."). When the parties crafted the exceptions to an Event of Default, it was clearly with this scenario in mind—where Purchaser's refusal to go to settlement triggers default. To find Sellers' rights were extinguished simply because Purchaser's refusal also triggered another Event of Default, would write out the protections inherent in this exception.

This is particularly relevant where, as here, the parties intended to satisfy the loan based on Lennar going to settlement and thus supplying the funds necessary for such satisfaction. This connection is evidenced by the maturity date of the loan, as specified in the Loan Agreement. ECF No. 872-5 § 2.4(B). The Loan Agreement provides that the "principal balance of the Loan . . . shall be due and payable on the earlier of (i) *the Settlement Date* (as defined in the

11

Purchase Contract) and (ii) June 18, 2008, or such earlier date as the Loan is accelerated." *Id.* (emphasis added). Because Lennar's wrongful failure to make Settlement was specifically carved out as an *exception* from an Event of Default under § 9.1(S), it would work an irrational result for the Court to find that Sellers' failure to pay the loan as a consequence of Lennar's refusal to settle is nonetheless an Event of Default which extinguishes rights under the Purchase Contract.

In sum, Lennar's wrongful actions did not constitute an Event of Default that would extinguish Sellers' rights under the Purchase Contract. ECF No. 49-5 § 5. Thus, even if Sandler could not recover attorneys' fees under the Guaranty Agreements (which he can), Sellers retained the right to an award of reasonable attorneys' fees as a prevailing party in this litigation under the terms of the Purchase Contract. ECF No. 1-1 ¶ 18(K).

### iii. Fees Related to Action Initiated in Virginia

Lennar argues that the Sandler R&R improperly awards attorneys' fees for the action filed by Sellers against U.S. Home in the Eastern District of Virginia on December 6, 2007. *See* No. DKC-08-0267, ECF No. 1 (hereinafter the "initial action"). That case was transferred to this District and dismissed on March 19, 2009 for lack of subject matter jurisdiction. No. DKC-08-0267, ECF No. 97. On June 16, 2010, the United States Court of Appeals for the Fourth Circuit affirmed the dismissal. No. DKC-08-0267, ECF No. 105. In the interim, U.S. Home initiated the current action on July 17, 2008. No. PX-08-1863, ECF No. 1. Thus, for a period of time attorneys representing Sandler and Sellers worked on both cases.

Lennar contends that the R&R's recommended fees incorporate work performed for the initial action. Lennar more particularly objects to inclusion of such fees if for no other reason, the Sellers did not prevail because the initial action had been dismissed for "failure to articulate

an actual case or controversy that was ripe for adjudication at the time [the] complaint was filed." No. DKC-08-0267, ECF No. 97 at 13.

At the outset, it bears noting that this Court agrees with Lennar, as did the R&R, that Sandler is not entitled to attorneys' fees for the initial action. Sandler is entitled to reimbursement for fees associated with this case, even during the period of overlap with the initial action. This presented practical difficulties in arriving at a reasonable award. In this Court's view, and for the following reasons, the R&R achieved the right result.

First, Sandler did not seek reimbursement for any fees incurred before July 17, 2008, when the instant action was filed. Second, Sandler excluded $147,303 in fees that were clearly related to the initial action. ECF No. 786-1 ¶ 6(e). Third, the R&R did reduce the requested award by $53,000 (albeit not as deeply as Lennar requested),[3] to account for the time spent on the initial action. In so doing, the R&R correctly recognized the difficulty in determining "exactly which entries are exclusively related to the [initial action] and which are, if you will, a hybrid of both Actions." ECF No. 855 at 31. Where precision was impossible, the R&R granted such reduction to achieve "rough justice" by way of reasonably estimating the fees associated solely with the initial action. *See Christian v. Maternal-Fetal Med. Assocs. of Md., LLC*, 459 Md. 1, 39–40 (2018) (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)) ("It is the duty of a court to accomplish 'rough justice, not [ ] auditing perfection' when determining what attorney's fees to award under the circumstances."). Lennar's objection is overruled.

### iv. Clerical Error and Final Accounting

The parties jointly note a variance between the reductions set forth in the body of the Sandler R&R and the amount given in the final calculation. ECF No. 857. The R&R reduced

---

[3] Lennar contends that a reduction of $106,943.58 to account for the work performed on the initial action was supported by its forensic accounting expert who analyzed Sandler's block billing. ECF No. 823 at 8–9.

the billing rates of two Reed Smith attorneys by $1,952.50. ECF No. 855 at 19 n.12. The R&R then reduced the fee award by $53,000 to reflect work done exclusively in the initial action. *Id.* at 31. Thus, the appropriate total of Reed Smith attorneys' fees is $2,256,314.86.

Accordingly, Sandler's award is as follows:

<u>Costs and Expenses</u>:
| | |
|---|---|
| Reed Smith: | 52,223.30 |
| Joseph Greenwald & Laake: | 487.26 |
| Direct Paid Client Costs: | 5,566.45 |

<u>Fees</u>:
| | |
|---|---|
| Reed Smith: | 2,256,314.86 |
| Joseph Greenwald & Laake: | 54,784.00 |
| | |
| Total: | 2,369,375.87 |

**C. iStar's Petition for Attorneys' Fees**

    **i.    Billing Rates**

iStar objects to the 25% reduction in billing rates set out in the iStar R&R. The R&R recommended that the Court employ Maryland as the relevant market to establish attorney hourly billing rates. ECF No. 860 at 27. In the District of Maryland, evidence of the prevailing market rate is "embedded" in the Guidelines set out in this Court's Local Rules. *Manning*, 2014 WL 1418322, at *5 (citing *Gonzales v. Caron*, No. CBD–10–2188, 2011 WL 3886979, at *2 (D. Md. Sept. 2, 2011); *see also* L. R. Appendix B. However, the R&R also adopted billing rates that exceed Maryland's for key attorneys and in recognition of the protracted, complex nature of the litigation. The R&R also concluded that "[b]ecause the hourly rates of all the Katten and Sidley professionals consistently exceeded the Guidelines . . . an overall downward adjustment is needed." ECF No. 860 at 29. The R&R proposed a reduction of $4,000,000, which is approximately one quarter of the total fees requested by iStar.

14

The Court finds that the nature of this litigation warrants applying billable rates in excess of this District's presumptively reasonable rates. ECF No. 860 at 20. This is especially equitable given that previous attorneys' fees awards in favor of both Lennar and iStar employed prevailing market rates in the DC metro area. ECF No. 169; *see also* ECF No. 706 ¶ 4.[4] Accordingly, when considering "the fee customarily charged in the locality for similar legal services," the Court finds that DC market rates are a better measure.

However, using prior awards as an equitable guidepost, the Court agrees with the R&R that iStar's proposed hourly rates are excessive. In contrast to the requested rate for lead counsel of $650, this Court has awarded fees at the hourly rate of $594. ECF No. 706 at 3. The R&R increases the rate to $650 for comparable lead counsel, which this Court adopts for the reasons provided in the R&R. ECF No. 860 at 28. Further, a 25% across-the-board reduction accounts for a similar inflation in the actually-billed rates for all other counsel. *See* ECF No. 787-1 at 5–7; ECF No. 787-2 at 4; *see also United States ex rel. Kirchgessner v. James River Air Conditioning Co.*, No. 16-232, 2019 WL 413547, at *2 (E.D. Va. Feb. 1, 2019) (reducing fees across-the-board by 20% because party failed to demonstrate "the reasonableness of their rate in the Richmond market"); *Allen v. Enabling Techs. Corp.*, No. WMN-14-4033, 2017 WL 1344490, at *3 (D. Md. Apr. 12, 2017) (reducing attorneys' fees by 25% of what was requested); *Herron v. Anne Arundel Cty.*, No. WDQ-04-1977, 2004 WL 5501178, at *1 (D. Md. Dec. 23, 2004) (reducing attorneys' fees by 20% of what was requested). Accordingly, iStar's objection is overruled.

  ii. **Expert Witness Fees**

iStar next objects to the R&R's recommended denial of any recovery for costs associated

---

[4] The Court notes Lennar's clarification that its objections to Judge Connelly's Order (ECF No. 711) remain unresolved. ECF No. 865 at 7.

with its experts. On this point, this Court parts company with the R&R and will sustain iStar's objection.

The fee provision governing the award provides that the prevailing party "shall be entitled to recover . . . such party's costs, fees and expenses incurred in such litigation, including actual and reasonable attorneys' fees and court costs." ECF No. 1-1 ¶ 18(K). This Court agrees that contractual fee-shifting provisions "must be strictly construed to avoid inferring duties that the parties did not intend to create." *Bainbridge St. Elmo Bethesda Apartments, LLC v. White Flint Express Realty Grp. Ltd. P'ship, LLLP*, 454 Md. 475, 488 (2017) (internal marks and citation omitted); *see also Berkley Trace, LLC v. Food Lion, LLC*, No. RDB-11-03207, 2013 WL 5718867, at *10 (D. Md. Oct. 18, 2013) (expert fees not recoverable "[a]bsent explicit contractual or statutory authority"); ECF No. 860 at 24–25. Here, however, the fee-shifting provision plainly provides for recoupment of "costs, fees and expenses incurred in such litigation, *including* actual and reasonable attorneys' fees and court costs." ECF No. 1-1 ¶ 18(K) (emphasis added); *cf. Berkley Trace*, 2013 WL 5718867, at *7 ("reasonable attorneys' fees and costs"). By setting apart attorneys' fees as a subset of the universe of fees and expenses contemplated, the provision *does* explicitly provide for reimbursement of all other expenses related to the litigation. In that respect, the Court finds it telling that Lennar never challenged the inclusion of other fees and expenses—just expert costs, which in this expert driven trial, were substantial. *See* ECF No. 787 at 16 (iStar's motion documenting enumerated expenses); ECF No. 840 at 26 (Lennar solely challenging expert costs).

Further, expert expenses were clearly costs associated with, if not integral to, success at trial, and thus are "expenses incurred in such litigation." ECF No. 1-1 ¶ 18(K). At trial, expert testimony featured prominently in establishing the environmental conditions and methods of

testing on the Property, and as such, was central to the Court's finding that Sellers did not breach the Purchase Contract. ECF No. 707 at 33–63. Because the expert testimony, and the experts' preparation for such testimony was "essential" to the Court's ultimate determination, it is reasonable and allowable under the fee-shifting provision. *In re Mid-Atl. Toyota Antitrust Litig.*, 605 F. Supp. 440, 448 (D. Md. 1984) (allowing expert fees as litigation expense where expert opinion was "essential" to the Court's final decision). iStar's objection is sustained. The Court awards iStar the requested $656,002.12 in expert fees.[5]

### iii. Adjusted Accounting

Based on the foregoing, the total amount awarded to iStar will be:

| | |
|---|---|
| Costs and Expenses: | 553,712.56 |
| Expert Witness Fees: | 656,002.12 |
| Attorneys' Fees: | 10,848,353.84 |
| Total: | 12,058,068.52 |

## IV. Conclusion

The Court discerns no clear error in the portions of the R&Rs to which the parties have not lodged objections. For the foregoing reasons, the R&Rs (ECF Nos. 855, 860) are adopted in part and amended in part regarding awarding iStar's expert witness fees. A separate Order follows.

3/22/2019
Date

/S/
Paula Xinis
United States District Judge

---

[5] iStar also moved for leave to file a reply brief in support of its objections. ECF No. 866. Because the proposed reply brief (attached at ECF No. 866-1) merely restates the argument included in its motion for attorneys' fees, it will be denied. *See, e.g.*, ECF Nos. 787, 796.